## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

JOLT INITIATIVE, INC.,

     *Plaintiff*,

v.

KEN PAXTON, in his individual and official
capacity as Attorney General of Texas,

     *Defendant*.

Case No.: 1:25-001808

## COMPLAINT

1.     This case is brought to halt a campaign of unconstitutional intimidation targeting Plaintiff Jolt Initiative, Inc. (Jolt), a nonprofit organization that works to increase the civic participation of young Latinos in Texas, for exercising its freedom of speech and association and its right to petition the courts for the redress of grievances.

2.     More than a year ago, Defendant Attorney General Ken Paxton initiated this campaign against Jolt by issuing an intrusive and groundless document demand known as a Request to Examine (RTE), issued without any court finding that it was legally justified. The RTE demanded that Jolt disclose confidential information, including the identities of its volunteers and other associates.

3.     Providing the information that Defendant's RTE sought would have exposed Jolt, its Volunteer Deputy Registrars (VDRs), and the Texas voters with whom they engage, among other associates, to further intimidation and threats, and would have chilled their exercise of

1

fundamental expressive freedoms.  Accordingly, Jolt brought a federal lawsuit challenging the RTE under the First Amendment, among other claims, and seeking declaratory and injunctive relief.  *Jolt Initiative, Inc. v. Paxton*, 1:24-cv-1089-RP (W.D. Tex.).

4.      Rather than defend against Jolt's federal lawsuit, Defendant withdrew the RTE and secured Jolt's agreement to voluntarily dismiss the case based on written assurances that he would not serve a new RTE concerning the same subject matter.  The district court therefore issued an order closing Jolt's case on October 23, 2025.

5.      But Defendant's retaliatory campaign did not cease.  That same day, Defendant filed an action in the District Court of Tarrant County, Texas, seeking to revoke Jolt's corporate charter through a civil quo warranto proceeding based on the same groundless and unsubstantiated allegations on which he had attempted to justify the RTE.  *Texas v. Jolt Initiative, Inc.*, No. 352-371410-25 (D. Ct. Tarrant County, Tex.).

6.      Defendant's ongoing campaign against Jolt is in retaliation for the group's voter-registration activity—expression and association that is protected by the First Amendment.  In addition, Defendant initiated the quo warranto proceeding in retaliation for Jolt petitioning the government for redress of grievances by filing a federal lawsuit challenging Defendant's RTE.

7.      Defendant's attacks on Jolt also constitute impermissible intimidation under § 11(b) of the Voting Rights Act (VRA), which protects Plaintiff's right to "urg[e] or aid[] any person to vote or attempt to vote."  52 U.S.C. § 10307(b).

8.      Jolt therefore asks the Court to protect its First Amendment freedoms of speech, association, and petition, as well as its rights under the VRA.

2

## JURISDICTION AND VENUE

9.      Plaintiff's claims are brought under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution and under 52 U.S.C. § 10307(b).

10.     This Court has jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 52 U.S.C. § 10308(f).  The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

11.     Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts that gave rise to this lawsuit have occurred or will occur in this judicial district.  This District is also an appropriate venue under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## PARTIES

12.     Jolt Initiative, Inc., is a nonprofit organization that is incorporated in Texas and exempt from taxes under § 501(c)(3) of the Internal Revenue Code.  Jolt engages in a wide range of expressive and associative acts encouraging Texans to vote.

13.     Defendant Ken Paxton is the Attorney General of the State of Texas.

## FACTS

### A.  Jolt Initiative

14.     Jolt Initiative, and its sister organization Jolt Action, Inc., were founded to increase the civic participation of Latinos in Texas in order to build a stronger democracy and ensure that everyone's voice is heard.  Jolt Initiative and Jolt Action are separate organizations, with distinct boards of directors and separate bank accounts.

15.     Jolt is focused on mobilizing young Latino voters (those aged 18 to 32) in particular.

3

16.     In addition to voter registration drives, Jolt uses public education campaigns, leadership programming, and other measures to encourage eligible Latinos to vote.

17.     Jolt and Jolt Action also speak out on matters of importance to Latinos in Texas, and Jolt Action is often critical of government institutions and politicians, including the Attorney General.

**B. Voter Registration Drives**

18.     A key part of Jolt's effort is registering eligible Texans to vote.  Jolt strives to encourage as many eligible Latinos in Texas to vote as possible.

19.     Jolt conducts voter registration drives in Texas, with a primary focus in Dallas, Harris, and Bexar Counties.  Because of Jolt's efforts, several thousand Texans have been added to the voter rolls in recent years.

20.     A vital part of Jolt's mission is ensuring that community members conduct nonpartisan voter registration in accordance with state law.

21.     To carry out its voter registration drives, Jolt uses Volunteer Deputy Registrars (VDRs), which may be paid members of their staff or organizational volunteers.

22.     VDRs are individuals who are appointed by county registrars and are "empowered to receive and deliver completed voter registration applications."  *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 385 (5th Cir. 2013).

23.     Texas created VDRs "[t]o encourage voter registration."  Tex. Elec. Code § 13.031(a); *see* Brief of Former Governor Mark White et al. as Amicus Curiae in Support of Appellee at 14–15, *Voting for America*, 732 F.3d 382, 2012 WL 5996185 ("The intent of the voter registration system was to open the doors as wide as possible to every single, eligible qualified

4

voter and not exclude anybody under any circumstance." (internal quotation marks and alteration omitted)).

24.     Any person who is 18 years old and eligible to vote in Texas—and not disqualified by virtue of certain criminal convictions—is entitled to become a VDR upon applying to do so in each county in which they wish to register voters.  Tex. Elec. Code §§ 13.031(d), 13.032.  Each VDR receives a Certificate of Appointment that contains the VDR's voter registration number and residential address.  *Id.* § 13.033.

25.     VDRs may provide blank voter registration forms to potential voters and must deliver completed forms to the county registrar within five days.  *See* Tex. Elec. Code § 13.042. VDRs review the information on registration forms for completeness, but they have no power to determine whether an applicant is actually eligible to vote.  Tex. Elec. Code § 13.039; *Volunteer Deputy Registrars*, Tex. Sec'y State, https://perma.cc/38F6-CED5?type=image.  A VDR is legally required to submit every completed voter registration form to the county registrar within five days. Tex. Elec. Code §§ 13.042, 13.043.  The county registrar then makes the determination whether the applicant is eligible to be added to the voter rolls.  *Id.* § 13.072.

26.     Upon receipt of a completed application, the VDR provides the applicant with a receipt.  State law provides that a duplicate of the receipt should be provided to the registrar, along with the applicant's voter registration form, unless an alternative system is prescribed.  Tex. Elec. Code § 13.040.

27.     Jolt VDRs are always properly appointed in the county in which they register voters.

28.     A typical Jolt voter registration drive involves a Jolt VDR being located in a place

with high foot traffic.  The VDR typically will have written materials about voting and registering to vote, as well as blank registration forms.  If a person wants to register to vote, a VDR will explain the eligibility requirements, answer any questions, and walk the person through the process of filling out a voter registration form.

29.     Jolt VDRs comply with all applicable laws.  Jolt undertakes rigorous training, supervision, and quality control protocols to ensure compliance with Texas's VDR scheme and to minimize error, including regular consultation with election-law counsel.

### C. Defendant's Baseless Investigation into Voter Registration Groups

30.     On August 18, 2024, a television personality with a history of promoting conspiracy theories posted on X that people who were ineligible to vote were being registered at locations in North Texas.  *See* Maria Bartiromo (@MariaBartiromo), X (Aug. 18, 2024, 9:56 AM), https://perma.cc/B7MD-PRKC; *see* Berenice Garcia, *A Fox News Host's Debunked Election Conspiracy Appears to Have Prompted a State Investigation*, Tex. Trib. (Aug. 26, 2024), https://perma.cc/9PM6-H9YS.

31.     Both the Parker County Republican chair and election administrator said there was no evidence to support the charge.  *See* Garcia, *supra*; Brady Gray (@Brady_Gray), X (Aug. 19, 2024, 10:12 PM), https://x.com/Brady_Gray/status/1825717561054376102.

32.     The next day, Defendant sent an undercover investigator to a Texas Department of Public Safety (DPS) office in Universal City, Texas, in Bexar County, to investigate Jolt's voter-registration activities.  The investigator claimed to be a father seeking to register his daughter, who was not with him.

33.     In response to the investigator's questions, a Jolt VDR who no longer is employed

6

by the organization accurately conveyed to the investigator that Texas law allows a parent to register their eligible child to vote.  *See* Tex. Elec. Code § 13.003.

34.    Notwithstanding the fact that the former Jolt VDR did nothing more than accurately convey what Texas law permits, the investigator filed a report accusing the former Jolt VDR of violating Texas's election code.

35.    The next day, a self-described "citizen journalist" and "Alpha MAGA Male" posted a video on X in which he purported to confront a Jolt VDR outside of a Texas DPS office.  *See* hernando arce (@hernandoarce), X (Aug. 20, 2024, 1:53 PM), https://x.com/hernandoarce/status/1825954284858417608.  The post said, "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio," and it tagged @KenPaxtonTx, among others.  *Id.*

36.    The video depicts no illegal activity or evidence of wrongdoing.

37.    On August 20, 2024, the same day that the self-described "citizen journalist" posted about Jolt on X, the Attorney General's office executed a series of raids on the homes of people associated with the League of United Latin American Citizens (LULAC), another Latino-focused organization that encourages eligible Texans to register to vote.  *See* Fin Gómez & Nidia Cavazos, *Texas Attorney General Ken Paxton Raids Latino Democrats' Homes, Including Those of LULAC Members*, CBS News (Aug. 27, 2024), https://perma.cc/M7BL-W4Y7; Roman Palomares, *LULAC Fights Back: How We're Standing up to Texas's Voter Suppression*, https://lulac.org/texas_raids/ ("Paxton has been aggressively targeting and harassing Latino-led organizations, . . . as well as individual citizens.").

38.    One of the people targeted was Lidia Martinez, an 87-year-old retired educator in

San Antonio who is a member of LULAC.  *See* Edgar Sandoval, *Latino Civil Rights Group Demands Inquiry Into Texas Voter Fraud Raids*, N.Y. Times (Aug. 25, 2024), https://www.nytimes.com/2024/08/25/us/texas-latinos-democrats-raids-paxton.html.  Armed agents swept through her house before 6 a.m., rifling through her clothes, seizing her electronics, and questioning her for three hours.  *Id.* The event "scared' Martinez, who "still felt shaken" days later. *Id.*

39.    The following day, Defendant put out a press release announcing that he had "opened an investigation into reports that organizations operating in Texas may be unlawfully registering noncitizens to vote in violation of state and federal law."  Press Release, Tex. Office of Att'y Gen., *Attorney General Ken Paxton Launches Investigation into Reports That Organizations May Be Illegally Registering Noncitizens to Vote* (Aug. 21, 2024), https://perma.cc/EF4H-E6PP. The press release cites the existence of voter registration efforts taking place outside Texas DPS offices, speculating that "there is no obvious need to assist citizens to register to vote outside DPS offices," and "calling into question the motives of the nonprofit groups."  *Id*.  The press release promises that "[a]ny wrongdoing will be punished to the fullest extent of the law."  *Id.*

40.    Notwithstanding Defendant's pretextual reasons for the investigation into voter registration drives, "[e]very legitimate study ever done on the question shows that voting by noncitizens in state and federal elections is vanishingly rare."  Sean Morales-Doyle, *Noncitizens Are Not Voting in Federal or State Elections—Here's Why*, Brennan Ctr. for Just. (Apr. 12, 2024), https://perma.cc/WCX3-YKVC.  One recent study, which looked at 42 jurisdictions in the 2016 general election, found 30 incidents of suspected noncitizen voting among 23.5 million votes—a rate of 0.0001%.  *See id.*

8

41.     Jolt and its associates reacted to news of Defendant's investigation with alarm.

42.     On August 23, 2024, Jolt Action sent out an email blast to thousands of supporters titled: "URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work."  In this email, Jolt Action accused the Attorney General of "suppress[ing] voter registration" and "attack[ing] Texans once again."

43.     Also on August 23, 2024, Jolt Action publicly criticized the Attorney General on its Facebook page, writing that "we won't stay quiet, and we are prepared to make our voices heard to ensure voting rights aren't infringed upon."  An image included with the post stated: "AG Investigation Disrupts Jolt Organizers' Important Work."

**D. Defendant's RTE to Jolt Initiative**

44.     Despite having no evidence (or even reasonable suspicion) of wrongdoing, the Attorney General promptly targeted Jolt.

45.     On August 31, 2024, Jolt Initiative received a Request to Examine (RTE) from the Office of the Attorney General.  A true and accurate copy of the RTE is attached as Exhibit A.

46.     The RTE instructed Jolt Initiative to provide, by September 19, 2024, four categories of documents:

> 1. Each of Your volunteer deputy registrars' certificates of appointment.
>
> 2. All Documents Jolt provides to your volunteer deputy registrars Concerning the voter registration application process.
>
> 3. All Documents Jolt provides to your volunteer deputy registrars Concerning Your role in the voter registration application process.
>
> 4. Each of the completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by You.

47.     Defendant did not identify any reason why he needed the documents.  He did not

accuse Jolt of any wrongdoing.  And he did not obtain permission or authority from a court to obtain these documents.

48.    Defendant purported to issue the RTE pursuant to Texas Business Organizations Code § 12.151, which allows the Attorney General to inspect corporate records "as the attorney general considers necessary in the performance of a power or duty of the attorney general, of any record of the entity."

49.    The RTE further threatened that if Jolt did not comply, the Attorney General could take action under Texas Business Organizations Code § 12.155, which provides that failure or refusal to permit the Attorney General to inspect records "forfeits the right of the entity to do business in this state, and the entity's registration or certificate of formation shall be revoked or terminated."

50.    It is also Class B misdemeanor to fail to or refuse to provide records requested by the Attorney General.  *See* Tex. Bus. Orgs. Code § 12.156.

51.    Jolt filed a lawsuit in federal court challenging the RTE under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, and under § 11(b) of the Voting Rights Act of 1964, 52 U.S.C. § 10307(b).  *Jolt Initiative, Inc. v. Paxton* (*Jolt I*), 1:24-cv-1089-RP (W.D. Tex.).  In that litigation, Jolt filed a motion for a preliminary injunction barring enforcement of the RTE.

52.    Because of developments in a case raising similar legal issues, the parties agreed to stay district court proceedings in *Jolt I* until the related case was resolved.  The parties further agreed that Jolt's obligation to respond to the RTE would be extended until after the stay was lifted.

53.     After the related case was resolved and the stay was lifted, Defendant voluntarily withdrew the RTE before the district court had ruled on Jolt's motion for a preliminary injunction. Counsel for Defendant later represented in writing that Defendant had no intention to re-issue an RTE concerning the same subject matter.  Based on that representation, the parties agreed on October 22, 2025, to voluntarily dismiss the case under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

54.     The district court issued an order the following day closing the case.

**E. Defendant's Quo Warranto Proceedings Against Jolt Initiative**

55.     On October 23, 2025—the same day that the district court closed the case challenging the RTE that Defendant had issued to Jolt—Defendant filed a motion for leave to file an original petition and information in the nature of quo warranto in the District Court of Tarrant County, Texas.  A true and correct copy of the quo warranto motion (Mot.) is attached as Exhibit B.  A true and correct copy of the proposed quo warranto petition (Pet.) is attached as Exhibit C.

56.     Based on the same debunked factual allegations that triggered Defendant's RTE, the motion to file a quo warranto petition accuses Jolt of "systematically, knowingly, willfully, deliberately, and recklessly misus[ing] individuals and Volunteer Deputy Registrars ('VDR') to acquire and submit unlawful voter registration applications that violate the Texas Election Code and undermine the State's democratic processes."  Pet. 3.

57.     Defendant identified no allegation beyond the specious examples that it cited in support of the initial RTE that was the subject of earlier federal court proceedings. Even though nothing had changed, the allegations that Defendant previously claimed justified an investigation

now justified—according to Defendant—the ultimate corporate penalty.

58.    The wrongdoing alleged by Defendant occurred in Bexar County, and Jolt Initiative's principal office is in Harris County. Defendant has identified no allegation connecting any part of its quo warranto action to Tarrant County, raising concerns of attempted forum shopping.

59.    The proposed petition also condemns Jolt for bringing its previous lawsuit in this District challenging the legality of Defendant's RTE as demonstrating Jolt's refusal to "cooperat[e] with the State's investigation" and as aimed at "stall[ing] the investigation through the 2024 election."  Pet. 7.  Defendant forthrightly admits that he initiated the quo warranto proceeding "[i]nstead" of defending the legality of his RTE in the previous litigation. *Id.* at 7. And the petition states, in its section addressing Jolt's filing of the prior federal lawsuit, that Defendant "now commences this lawsuit to hold JOLT accountable for its underlying systematic and unlawful conduct and to revoke JOLT's right to transact business in Texas." *Id.*

60.    Neither the motion nor the proposed petition attached thereto identifies any wrongdoing by Jolt or any of its VDRs.

61.    Instead, the motion and proposed petition single out Jolt based on its perceived ideological motivation and its protected expression, with which Defendant personally disagrees. For example, Defendant's proposed petition complains (without factual support) that "JOLT engages in partisan political efforts intending to undermine election integrity," and "attempts to circumvent the opportunity for Republican and Conservative political candidates to get elected in the State violating the principles of democracy."  Pet. 9.  Defendant also points to examples of Jolt's purportedly "divisive rhetoric," which it characterizes as "criticiz[ism] and demoniz[ation]

[of] the election of Republican and Conservative politicians, such as President Donald J. Trump," *id.* at 3-4, and "resentment for Republican and Conservative political ideology," Mot. 1.

62.　The proposed quo warranto petition seeks forfeiture of Jolt's rights and privileges as a registered corporation; dissolution of Jolt's corporate registration and charter; and appointment of a receiver to wind up Jolt's corporate affairs.　Pet. 11.

63.　On November 11, 2025, Defendant issued a press release announcing the filing of the quo warranto action.　Press Release, Tex. Office of Att'y Gen., *Attorney General Ken Paxton Sues Radical Activist Organization for Unlawfully Registering Illegals to Vote in Texas* (Nov. 10, 2025), https://tinyurl.com/ye2tv7mk.　The press release falsely describes Jolt as a "radical open-borders group" and "a radical, partisan operation." *Id.*　It also falsely accuses Jolt of "orchestrating a systematic, unlawful voter registration scheme that is designed to sabotage Texas election integrity and allow illegals to vote," "knowingly attempt[ing] to corrupt our voter rolls and weaken the voice of lawful Texas voters," and "recruit[ing] and solicit[ing] individuals to submit unlawful voter registration applications, which could be designed to register illegal aliens who lack proper identification." *Id.*

64.     The inflammatory and false statements in Defendant's press release stoked further harassment of Jolt by third parties.  For example, an individual re-shared Defendant's post on X publicizing the press release and suggested that "Texas patriots" should "help Ken out and pay this [sic] people a visit."  Grumpy Old Bastart (@dougla16338), X.com (Nov. 10, 2025, 12:45 ET), https://x.com/dougla16338/status/1987939745314562151.  A true and correct copy of the post is set forth below.



### F.     Defendant's Ongoing Campaign Is Irreparably Harming Jolt

65.     Jolt has felt the effects of the Attorney General's intimidation campaign in multiple ways.  The campaign has harmed Jolt's reputation, diverted its resources away from its voter-registration activities, forced Jolt to incur additional costs, and reduced its fundraising, which in

turn has forced Jolt to lay off staff, resulting in a significant reduction in the number of voters that Jolt registers.

66.    Without identifying any law that Jolt or its VDRs have violated, Defendant baselessly accuses Jolt of "commit[ing] criminal conduct pertaining to voter registration applications" and of "systematically subverting the election process and violating Texas election law by recruiting, training, and directing individuals to submit false, or otherwise unlawful, voter registration applications." Pet. 1.

67.    By accusing Jolt of criminal wrongdoing—without identifying any alleged violation of law, let alone any evidence of wrongdoing—Defendant has and continues to sully Jolt's reputation. As the Texas Supreme Court has recognized, "[a]ccusing someone of a crime" is "so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *In re Lipsky*, 460 S.W. 3d 579, 596 (Tex. 2015).

68.    The misinformation that the Defendant has broadcasted about Jolt in his court filings and public statements also has harmed Jolt's reputation with peer organizations and partners. Some events with peer organizations have been cancelled because of Jolt's partners' fears of being associated with Jolt and targeted for similar harassment by Defendant.

69.    At a voting-rights convening, some potential new partners have been familiar with Jolt not because of its work to increase civic participation among Latinos but because of the misinformation that Defendant has disseminated about the organization through his public statements and court filings, requiring Jolt staff to correct the record.

70.    To counteract the misinformation that Defendant is spreading, Jolt has been forced to hire a crisis communications firm at a cost ranging from $8,500 to $10,000 per month.

71.    Jolt has always taken great care to ensure that its VDRs are well-trained on Texas election law and that all voter registration forms that it gathers are completely and legibly filled out.  But Jolt has instituted new administrative tasks that go well beyond what Texas law or best practices require in response to the Attorney General's unjustified and invasive scrutiny of Jolt's activities so that it can defend itself against any spurious accusations of wrongdoing. As a result, Jolt staff who in the past typically spent five to six hours in the field per day now spend around four hours per day in the field, with the remainder of the time undertaking redundant and unnecessary documentation of their activities.

72.     Defendant's publicity around the RTE investigation resulted in threats of violence toward Jolt and VDRs.  Because of staff concerns about harassment by Defendant and his supporters, Jolt also has instituted ongoing training on safety and on how to deescalate situations in the field.  These trainings have diverted staff time and resources away from voter-registration work.

73.    In response to concerns about reprisals by Defendant, Jolt also has upgraded its insurance policy to cover staff, increasing its premium from $9,388 to $12,238 per year.

74.    Defendant's retaliatory campaign also has forced Jolt to hire counsel.  Similar attacks on another group that does voter-registration work, Powered by People, resulted in legal fees of more than $400,000 over the span of only six weeks.  Elanor Klibanoff, *Ken Paxton's Legal Crusade Against Beto O'Rourke Is Faltering Before an All-Republican Appeals Court*, Tex. Trib. (Sept. 17, 2025), https://tinyurl.com/33fzexd7.

75.    Jolt's fundraising also has suffered because of Defendant's ongoing retaliatory campaign.  At the beginning of the year, Jolt Initiative projected that it would raise $2.1 million overall, including $1 million for its voter-registration and civic-education efforts specifically.

Instead, it has raised only $407,722 for general operations, with none of those funds earmarked for the voter-registration and civic-education efforts that are the heart of Jolt's mission.

76.    Jolt's deteriorating financial situation has required it to lay off staff.  This in turn has negatively affected Jolt's ability to register voters.  In a typical year without statewide or federal elections, Jolt usually registers over 12,000 voters.  In 2025, Jolt has registered only 3,586 voters.

77.    Defendant has also stated that he intends to seek discovery as part of the quo warranto proceeding.  Pet. 2.  Jolt reasonably anticipates that such discovery requests will be similar if not identical to the invasive RTE that Defendant previously issued.

78.    After being served with the RTE, Jolt leadership promptly discussed it with board members, who were shaken, upset, and frustrated that Jolt was being unfairly targeted with this unreasonable demand.

79.    The board concluded that it could not comply with the RTE without jeopardizing the safety of its VDRs or the confidences of its partners and the Latino community.  If Jolt were to provide the documents requested, it would make it more difficult for Jolt to fulfill its mission of encouraging Latinos to become more politically active.

80.    Latinos in Texas have particular reason to fear the Attorney General, given his open efforts to intimidate groups and people with whom he disagrees and his ongoing targeting of immigration-related nonprofits.  *See* J. David Goodman, *A Legal Blizzard in Texas Targets Democrats and Promotes Ken Paxton*, N.Y. Times (Oct. 31, 2025), https://tinyurl.com/mtmezt42; Alejandro Serrano & Vianna Davila, *Attorney General Ken Paxton Targets El Paso Nonprofit that Offers Legal Services to Migrants*, Texas Trib. (Sept. 26, 2024), https://tinyurl.com/yx2928hb

(noting that Defendant investigated at least five Texas nonprofits in 2024 whose work focuses on immigration issues).  No one wants to be the next person the Attorney General attacks with a frivolous threat of prosecution or unjustified law enforcement raid.

81.     Some Latinos in Texas have friends or family members who are undocumented, and they fear that if they draw attention to themselves, they may place their friends or family at risk. Other Latinos may be going through the process of becoming citizens, and they may worry that if they criticize the government or are associated with a controversial stand, they will jeopardize their immigration status.

82.     Jolt is particularly concerned about public disclosure of personal identifying information of its VDRs and the voters they help register.  Such disclosure may subject VDRs and voters to threats and harassing communications, and may even place them at risk of violence from extremists who believe the Attorney General's false accusations that organizations like Jolt are helping ineligible people register to vote.  Jolt's concern for their safety is particularly acute given the numerous violent and threatening comments on social media targeting Jolt and other voter registration groups.

83.     If Jolt were forced to disclose confidential information to the Attorney General, it would be considered a betrayal of the trust that Jolt has earned from the Texas Latino community. It would make it more difficult for Jolt to associate with others and carry out its mission effectively, and it would likely put Jolt employees and others associated with the organization in danger.

84.     The quo warranto proceeding against Jolt poses an existential threat.  If Defendant succeeds in revoking Jolt's charter, Jolt will no longer be able to operate, extinguishing its efforts to promote civic engagement in the state of Texas.

## CAUSES OF ACTION

### Count I

### First Amendment – Retaliation (42 U.S.C. § 1983)

85.     Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

86.     The Constitution prohibits the government from taking adverse action against a person for the exercise of their First Amendment rights.  *E.g., Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

87.     To state a claim for retaliation, plaintiffs "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

88.     Jolt engages in a large amount of constitutionally protected expression and association, including by conducting voter registration drives, urging Texans to vote, and speaking out on issues of importance to Latinos in Texas.

89.     The targeting of Jolt with quo warranto proceeding has an objective chilling effect.  As described above, Defendant is engaged in an intimidation campaign against individuals and organizations—like Jolt—that seek to promote civic involvement among Latinos in Texas.  A

person of ordinary firmness would be discouraged from promoting voter registration and civic engagement under these circumstances.

90.     The quo warranto proceeding is substantially motivated by Plaintiff's First Amendment activities, specifically its organization of Latino community members and encouragement of voter registration.

91.     Defendant has targeted Jolt precisely because Jolt encourages people to register and has repeatedly spoken out about issues related to civic engagement in Texas.

92.     On August 21, 2024, Defendant announced in a press release that he was opening an investigation into whether nonprofit groups where "registering noncitizens to vote in violation of state and federal law."  Press Release, Tex. Office of Att'y Gen., *Attorney General Ken Paxton Launches Investigation into Reports That Organizations May Be Illegally Registering Noncitizens to Vote* (Aug. 21, 2024), https://perma.cc/EF4H-E6PP.

93.     Jolt Action subsequently criticized Defendant for his attempts to intimidate those involved in registering people to vote.

94.     One week after Jolt Action's criticism of Defendant, Defendant sent Jolt the RTE, leading to Jolt's federal lawsuit challenging the RTE.

95.     One day after Jolt agreed to voluntarily dismiss its lawsuit based on Defendant's withdrawal of the RTE and his assurances that he would not serve another regarding the same subject matter, Defendant initiated the quo warranto proceeding.

96.     Defendant's quo warranto proceeding is expressly premised not only on Jolt's protected expression and association, but also on Jolt's efforts to challenge Defendant's invasive and unconstitutional RTE in federal court.

20

97.     Defendant initiated the quo warranto proceedings "[i]nstead" of defending the legality of the RTE in federal court because he views Jolt's efforts to challenge the constitutionality of the RTE as a refusal to "cooperat[e] with the State's investigation in any respect" and an effort "to stall the investigation."

98.     Therefore, Defendant's quo warranto proceeding unconstitutionally retaliates against Plaintiff for its constitutionally protected expression and association and its petitioning the government for redress of grievances.

### Count II

### Voting Rights Act – Intimidation (52 U.S.C. § 10307(b))

99.     Plaintiff incorporates by reference every allegation in the preceding paragraphs as if set forth fully herein.

100.     Section 11(b) of the Voting Rights Act provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote."  52 U.S.C. § 10307(b).

101.     Section 11(b) protects those "assisting . . . others in registering to vote" from "official acts of harassment."  *Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968).

102.     Through its voter registration drives and voter education campaigns, Jolt "urg[es]" and "aid[s]" eligible Texans to vote.

103.     Defendant's quo warranto proceeding targets Jolt and its associates as a result of their civic engagement and voter registration efforts.

104.    The quo warranto proceeding has the purpose and effect of intimidating, or attempting to intimidate, Jolt and its associates from engaging in these federally protected activities.

105.    Therefore, the RTE violates § 11(b) of the Voting Rights Act.

## JURY TRIAL DEMANDED

106.    Jolt demands a jury trial on each and every claim related to which a jury trial is available.

## REQUEST FOR RELIEF

Jolt respectfully requests that this Court enter judgment in its favor and:

1) Declare that the Attorney General's has engaged in an unconstitutional campaign of retaliation against Jolt, including his filing a quo warranto action against the organization;

2) Issue a preliminary and permanent injunction enjoining the Attorney General—including his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction—from pursuing quo warranto relief against Jolt in retaliation for Jolt's First Amendment activities;

3) Award Jolt compensatory and punitive damages under 42 U.S.C. § 1983;

4) Award Jolt reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

5) Grant Jolt such other relief the Court deems just and proper.


Respectfully submitted this November 11th, 2025,

*/s/Mimi Marziani*
Mimi Marziani
Texas Bar No. 24091906
mmarziani@msgpllc.com
Joaquin Gonzalez
Texas Bar No. 24109935
jgonzalez@msgpllc.com
MARZIANI, STEVENS &
GONZALEZ PLLC

500 W. 2nd Street
Suite 1900
Austin, TX 78701
Phone: (210) 343-5604

Mary McCord*
Jonathan Backer*
Joseph Mead*
William Powell*
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9042
mbm7@georgetown.edu
jb2845@georgetown.edu
jm3468@georgetown.edu
william.powell@georgetown.edu

*Attorneys for Plaintiff*

*Application for admission pro hac vice forthcoming