# EXHIBIT C

**TO THE COMPLAINT**

CAUSE NO. _____

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| | § | |
| JOLT INITIATIVE, INC., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

### STATE'S PETITION AND INFORMATION
### IN THE NATURE OF *QUO WARRANTO*

Votes matter only if elections are fair and honest. Defendant JOLT Initiative, Inc. ("JOLT") is a radical nonprofit corporation that commits criminal conduct pertaining to voter registration applications in Texas. JOLT and its Volunteer Deputy Registrars ("VDRs") are systematically subverting the election process and violating Texas election law by recruiting, training, and directing individuals to submit false, or otherwise unlawful, voter registration applications. These are not innocent mistakes, but rather criminal acts that can dilute legitimate votes undermining public confidence in election outcomes. JOLT falsely states to the public that its mission is nonpartisan. But it is not. JOLT has publicly declared its resentment for Republican and Conservative political ideology. And, to this end, JOLT's efforts are intended to unlawfully tilt elections against causes and candidates that they dislike.

Plaintiff State of Texas ("State") will not stand by while bad actors like JOLT compromise election integrity in Texas. The State therefore files this Petition and Information in the Nature of *Quo Warranto* pursuant to Tex. Const. art. IV, § 22, Tex. Civ. Prac. & Rem. Code § 66.001, Tex. Civ. Prac. § Rem. Code § 66.003, and offers the following in support:

Copy from re:SearchTX

## I.     DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.

## II.     THE PARTIES

2.      The Texas Attorney General brings this lawsuit in the name of the State of Texas.

3.      Plaintiff the State is a sovereign entity that "has an intrinsic right to enact, interpret, and enforce its own laws."[1]

4.      Defendant JOLT is a domestic nonprofit corporation organized under the laws of the State of Texas and may be served through its registered agent, Jacqueline Bastard, located at 241 N. Milby Street, Suite D, Houston, Texas 77003, or wherever the registered agent may be found. A citation is requested at this time.

## III.     STATEMENT OF RELIEF

5.      Pursuant to Tex. R. Civ. P. 47(c), the State seeks only non-monetary relief.

## IV.     JURISDICTION AND VENUE

6.      Venue is proper in Tarrant County because a substantial part of the events or omissions giving rise to the State's claims occurred in Tarrant County.[2]

7.      The State and Texas Attorney General are authorized by statute and the Texas Constitution to commence quo warranto proceedings against corporate entities, such as JOLT, for violations of the law. *See* Tex. Civ. Prac. & Rem. Code § 66.002(a)-(c); *see also* Tex. Const. art. IV, § 22.

---

[1] *See State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015).
[2] *See* Tex. Civ. Prac. & Rem. Code §§ 15.002(a)(1); *see also* Tex. Civ. Prac. & Rem. Code § 66.002(a).

Copy from re:SearchTX

8.    As described herein, JOLT systematically and repeatedly commits criminal violations regarding voter registration pursuant to the Texas Election Code. Consequently, the State and Texas Attorney General commence this quo warranto proceeding to prevent JOLT's systematic violations of the Texas Election Code, to prevent corporate illegality, and to terminate JOLT's right to conduct business in this State.

## V.    FACTUAL BACKGROUND

### A.    JOLT

9.    JOLT was founded in 2016 after the initial election of President Donald J. Trump.[3]

10.    JOLT describes its founding mission as "fight[ing] back against the politics of hate" regarding the election of President Donald J. Trump.[4]

11.    JOLT publicly proclaims that its purpose is to "mobilize[] young Latino voters" to become involved with politics and voting,[5] JOLT asserts that it "trains community members to conduct [purported] nonpartisan voter registration," and that it enables the "form[ation] [of] student chapters at" educational institutions.[6]

12.    JOLT asserts that its political organization is "nonpartisan," but yet it simultaneously and continually criticizes and demonizes the election of Republican and Conservative politicians, such as President Donald J. Trump.[7]

---

[3] *See JOLT HISTORY*, JOLT INITIATIVE, *available at* https://www.joltinitiative.org/jolt-history.
[4] *See id.*
[5] *See id.*
[6] *See ABOUT*, JOLT INITIATIVE, *available at* https://www.joltinitiative.org/about.
[7] *See JOLT History*, *supra*; *see also* JOLT INITIATIVE, 2024 ANNUAL REPORT, p. 3, *available at* https://www.joltinitiative.org/wp-content/uploads/2025/01/2024-Jolt-Initiative-GOTV-Report-mobile.pdf ("While the 2024 election results were disappointing, it is important that we understand the root frustrations that led to these shifts within the broader-working class bloc.").

3

Copy from re:SearchTX

13.     In addition to this divisive rhetoric, JOLT perpetrates criminal voting schemes to solicit and train VDRs how to instruct the public to (a) submit unlawful voter registration applications and (b) otherwise attempt to unlawfully register themselves and others to vote.

**B.     The State Learns of JOLT's Unlawful Election Interference Scheme**

14.     The State requires voter registration applications to set forth the Texas driver's license numbers and Texas personal identification numbers that DPS issues to the public. If an individual does not have the driver's license and personal identification numbers, then the last 4 digits of a social security number is acceptable.[8] The voter registration application sets forth an option for the applicant to state the lack of a Texas driver's license number, Texas personal identification number, and/or social security number.[9]

15.     In August 2024, Maria Bartimoro[10] publicly posted that Texas Department of Motor Vehicle ("DMV") locations "[h]ad … massive line[s] of immigrants getting licenses" and voter registration setups stationed outside of the DMV locations.[11]

16.     Following these reports, Texas Attorney General, Ken Paxton, initiated an investigation and dispatched an undercover investigator to a DMV location in Universal City,

---

[8] *See Texas Voter Registration Application*, ¶9, OFFICE OF THE SECRETARY OF STATE, *available at* https://www.sos.state.tx.us/elections/forms/vr-with-receipt.pdf.

[9] *See id.*; *see also* Tex. Elec. Code § 13.002(c)(8)(A)-(C).

[10] Maria Bartimoro is an award-winning journalist and prominent anchor for Fox Business News. *See generally Maria Bartimoro*, NATIONAL ITALIAN AMERICAN FOUNDATION, *available at* https://www.niaf.org/wallofhonor/maria-bartiromo (Maria Bartimoro received multiple Emmy awards); *see generally Legends Live @Citi: Maria Bartimoro*, CITI (Oct. 15, 2025), *available at* https://www.citigroup.com/global/news/perspective/2025/legends-live-citi-maria-bartiromo; *see generally Maria Bartimoro*, FOX BUSINESS, *available at* https://www.foxbusiness.com/person/b/maria-bartiromo.

[11] *See Maria Bartimoro*, X, *available at* https://x.com/MariaBartiromo/status/1825169849363972404?lang=en.

Copy from re:SearchTX

Texas, to determine whether unlawful voter registration efforts were taking place. *See* Exhibit A, ¶2.1. When the investigator arrived at the DMV location, he made contact with a JOLT VDR and represented himself as a father seeking to register his daughter, who was not with him. In spite of the absence of his daughter, the JOLT VDR instructed the undercover agent as to how the agent could submit a voter registration application on behalf of his fictitious daughter.

17.     After departing this encounter, the investigator reported to the State that JOLT's conduct at the voter registration location was unlawful pursuant to the Texas Election Code. *See* Exhibit A, ¶2.4.

18.     Importantly, JOLT does not dispute that it engages in this type of conduct at these types of locations. In fact, JOLT acknowledges that it regularly organizes voter registration drives in front of Texas DMV buildings and it engages in these same voter registration drives throughout the state."[12] *See* Exhibit B, ¶11-12, p. 3. Further, JOLT asserts that it has a "dedicated presence at hundreds of … local DMVs, and naturalization ceremonies" in the State.[13] To this end, the investigator's description of the JOLT voter registration setup is consistent with JOLT's description. *See* Exhibit A, ¶2.2; *see also* Exhibit B, ¶14, p. 3-4.

19.     JOLT's decision to conduct its voter registration efforts outside of DMV locations illuminates its unlawful motive too. This is because U.S. citizens can already register to vote at any DMV with proof of citizenship. Thus, there is no need for a VDR at such locations.

20.     But, because voter registration applications allow an individual to apply for registration without a state-issued ID or social security number, by simply stating that the applicant

---

[12] JOLT publicly filed the declaration of Jacqueline Bastard. *See* Exhibit B.
[13] JOLT INITIATIVE, *supra*, ¶3, p. 4.

Copy from re:SearchTX

has not been issued such an ID or social security number, there is room for illegal aliens to submit applications. Of course, they cannot do so at the DMV, however, because then they could not claim to lack an ID. So, instead, JOLT dispatches its VDRs to these locations for the purpose of allowing and soliciting illegal aliens to submit voter registration applications without IDs or social security numbers.

21.     In fact, JOLT admits that it does not attempt to determine the potential eligibility of the public to become registered voters under State law(s). *See* Exhibit B, ¶17, p. 4. Rather, JOLT conveniently shifts blame to the Texas Secretary of State "and county registrars" to vet the voting eligibility of the public. *See* Exhibit B, ¶17, p. 4.

22.     During one widely viewed encounter, a JOLT VDR informed an individual that illegal alien could submit a voter registration application "if they really wanted to," which directly contravenes State law[(s),14]

23.     JOLT misuses its corporation to recruit and train VDRs to assist the public with completing and submitting untruthful voter registration applications.

24.     JOLT is engaged in systematic violations of Texas election laws by enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in their voter registration applications.

---

[14] *See @hernandoarce*, X (Aug. 20, 2024, 12:53 p.m.), *available at* https://x.com/hernandoarce/status/1825954284858417608; *compare* Tex. Elec. Code § 13.002(c)(3); *compare Texas Law*, ELECTION ADVISORY NO. 2024-19, *available at* https://www.sos.state.tx.us/elections/laws/advisory2024-19.shtml#:~:text=The%20state%2Ddesigned%20and%20federally,at%20their%20last%2DDPS%20transaction.

Copy from re:SearchTX

25.     JOLT's criminal and devious actions undermine the efforts of the State to ensure the lawful administration of elections and election integrity as described herein.

**C.      The State Attempted Further Investigation and JOLT Sued to Prevent Such Efforts.**

26.     Following the State's undercover investigation, on August 30, 2024, the Attorney General's Consumer Protection Division served a Request to Examine ("RTE") upon JOLT demanding disclosure of certain statutorily-mandated certificates of appointment, documents, and completed voting registration receipts pertaining to JOLT's VDR.

27.     But rather than producing any documents or cooperating with the State's investigation in any respect, JOLT commenced a federal lawsuit to stall the investigation through the 2024 election.

28.     As of the time of this filing, however, the State and JOLT have filed a joint stipulation of dismissal in the federal lawsuit and the State has agreed that it will not re-issue another pre-suit administrative subpoena seeking the same documents that were the subject of the federal lawsuit.

29.     Instead, the State now commences this lawsuit to hold JOLT accountable for its underlying systematic and unlawful conduct and to revoke JOLT's right to transact business in Texas.

30.     The termination of JOLT's corporation is necessary to uphold public confidence and protect the legitimacy of the legal voting process.

## X.      LEGAL CLAIMS

**A.      *Quo Warranto***

31.     The State incorporates the foregoing allegations as if set forth fully herein.

Copy from re:SearchTX

32.    Generally, the Texas Attorney General is required to "seek a judicial forfeiture of a private corporation's charter if sufficient cause exists."[15]

33.    The Supreme Court of Texas recently clarified that "sufficient cause ... refers to [the Attorney General's] discretion under existing law without depending on specific determinations by the legislature, so long as the legislature has not clearly withdrawn a particular kind of action from *quo warranto's* reach."[16]

34.    The determination whether "sufficient cause" exists can be based upon evidence of criminal violations.[17]

35.    To this end, the Texas Attorney General has the constitutional power to pursue "charter revocation ... through quo warranto actions ...."[18]

36.    In the present case, the State and Texas Attorney General determined that "sufficient cause" exists to proceed with a quo warranto proceeding against JOLT because of the aforementioned circumstances and violations of the Texas Election Code.

37.    The State and Texas Attorney General acquired evidence about the unlawful voting registration activities based upon the undercover operation and other information learned during investigations.

---

[15] *See* Tex. Gov't Code § 402.023(a); *see also Paxton*, 2025 Tex. App. LEXIS 7796, at *4-5.
[16] *See Paxton v. Annunciation House, Inc.*, No. 24-0573, 2025 Tex. LEXIS 436, *35 (Tex. 2025).
[17] *Humble Oil*, 259 S.W.2d at 589-90; *Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479, 482 (Tex. App—Eastland 1959) ("violation of the usury laws would involve a violation of [the company's] rights and privileges and violations of statutes enacted for the purpose of controlling and regulating them"); *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 531 (Tex. 1975) ("unreasonably high—and hence unlawful—charges for [telephone] service by the people of Texas would be an abuse of [company's] corporate power" and Attorney General "is authorized to take action in the courts to enjoin this being done"); *Paxton*, No. 24-0573, 2025 Tex. LEXIS 436, at *39.
[18] *See Paxton v. FIEL Houston, Inc.*, 2025 Tex. App. LEXIS 7796, *4-5 (Tex. App.—Austin 2025); *see also* Tex. Const. art. IV, § 22.

Copy from re:SearchTX

38.     The State establishes "probable ground" to prosecute the quo warranto proceeding because of the allegations described herein and exhibits annexed hereto[19] pursuant to Tex. Civ. Prac. & Rem. Code § 66.002(d).

39.     JOLT operates near DPS and DMV facilities interacting with the public and JOLT sets forth false information about the ability of individuals to register as voters in the State violating the Texas Election Code.

40.     JOLT engages in partisan political efforts intending to undermine election integrity.

41.     JOLT's partisan misconduct attempts to circumvent the opportunity for Republican and Conservative political candidates to get elected in the State violating the principles of democracy and Texas Election Code.

42.     JOLT is engaged in systematic conduct that is unlawful and intended to interfere with Texas' elections and thwart the democratic process, by *inter alia*:

    a.     Enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in voter registration applications;[20]

    b.     Recruiting, training, and hiring VDRs to assist and encourage individuals with submitting false statements in voter registration applications;[21]

    c.     Systematically enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in voter registration applications;[22]

    d.     Recruiting, training, and hiring VDRs to assist individuals with submitting untruthful voter registration applications;[23]

---

[19] The State incorporates the statements throughout the attached exhibits into the petition by reference.
[20] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(1); *see also* Tex. Elec. Code § 13.007(1)(2).
[21] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(1); Tex. Elec. Code § 13.007(1)(2).
[22] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(4); *see also* Tex. Elec. Code § 13.007(1)(2).
[23] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(4).

Copy from re:SearchTX

    e.      Systematically enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in voter registration applications;[24]

    f.      Recruiting, training, and hiring VDRs to assist individuals with submitting false statements in voting registration applications;[25] and

    g.      Recruiting, training, and hiring VDRs to solicit and accept voter registration applications for individuals that are not present.

43.     This Court terminating JOLT's nonprofit corporation and granting the *quo warranto* relief is the most effective method to ensure the fairness of elections in the State.

## XI.    CORPORATE LIABILITY

44.     The State incorporates the foregoing allegations as if set forth fully herein.

45.     JOLT is liable for the acts and omissions alleged herein because its corporate acts and omissions were systemically, knowingly, willfully, deliberately, and recklessly tolerated by JOLT, JOLT Board of Directors, JOLT officers, JOLT agents, JOLT volunteers, and JOLT employees acting on behalf of the corporation and within the scope of their office, employment, agency, and representation.

## XII.    NOTICE OF LIEN

46.     Pursuant to Pursuant to Tex. Bus. Orgs. Code § 12.201, this filing of the suit operates as a notice of lien on all JOLT property in the State of Texas.

## XIII.    PRAYER

47.     The State incorporates by reference the preceding paragraphs as if fully set forth herein.

---

[24] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(5); *see also* Tex. Elec. Code § 13.007(1)(2).
[25] *See* Tex. Civ. Prac. & Remedies Code Section 66.001(5).

Copy from re:SearchTX

48.    As explained above, JOLT has performed or omitted corporate acts requiring surrender and/or forfeiture of its rights and privileges as a corporation registered to transact business in Texas pursuant to Tex. Gov't Code § 402.023 and Civ. Prac. & Rem. Code § 66.001.

49.    NOW THEREFORE, the State respectfully prays that the Court enter judgment in its favor and order the following:

a.    *quo warranto* relief is warranted;

b.    forfeiture of JOLT's rights and privileges as a registered corporation;

c.    dissolution of JOLT's corporate registration and corporate charter;

d.    appointment of a receiver to wind up JOLT's corporate affairs;

e.    payment of attorneys' fees, litigation expenses, and costs; and

f.    any and all further relief to which the State may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

*/s/ Ian Bergstrom*
IAN BERGSTROM
Assistant Attorney General

11

Copy from re:SearchTX

State Bar No. 24145952
Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Telephone No.: 512-475-3042
Facsimile No.: 512-473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

Copy from re:SearchTX

# Exhibit A

Copy from re:SearchTX

# Office of the Attorney General
## Law Enforcement Division

**Supplement**

Page **1**

PO Box 12548
Austin, TX 78711

| Incident # | **CX8629607278** |
|---|---|

| Title | |
|---|---|
| Reported **08/21/2024** | **13:48** **Wednesday** |

**2.1** On 8-19-2024 I was asked to proceed to Texas Department of Public Safety driver's license office located at 1633 Pat Booker Road, Universal City, Texas. I was notified that voter registration was possibly occurring in or about the area surrounding the driver's license office. I arrived at the location of the driver's license office and observed a table in close proximity to the front door and observed a young man sitting at a table in front of the driver's license building. After parking the vehicle, I removed my identifiers and approached the young man at the table.

**2.2** The white table length banner displayed the name JOLT in a logo and two QR codes, as I recall one QR code to volunteer the other QR code to give a donation. I approached and told the male I was wanting my daughter to register to vote and if I could have a form to take to her. He said that he could not let me have a form while he was opening a binder/folder that held a stack of voter registration cards. The stack of registration cards were rubberbanned with several areas highlighted and the name "████████████" at the bottom. These are cards I have encountered multiple times in the execution of my duties which I recognize to be voter registration cards. I observed additional loose forms within the storage area of the binder but I was not able to identify these cards because the binder/folder was open for no more than ten seconds. This action was done with his right hand and his forearm obscurring part of my vision into the folder/binder.

**2.3** I stated in a question format that I couldn't have one, and ████ replied that since I have her information, I could register her to vote, alluding to being a parent and that I had that right. This was inferreing that I could sign her voter registration card, and while ████ made this statement he overtly looked away.

**2.4** This is not only incorrect but illegal per election code. I next read the statements at the bottom of the card related to swearing and affirming the information on the card and I said it was best to bring her by and departed the table.

| Officer ID | | | Agency | Reviewed By | Date |
|---|---|---|---|---|---|
| ████████ | | ██ | **OAG** | **Stanley Roper, Lt.** | **09/27/2024** |

# Exhibit B

Copy from re:SearchTX

# DECLARATION OF JACQUELINE BASTARD

I, Jacqueline Bastard, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Deputy Director at Jolt Initiative. I have served in this role for 4 years. I am over the age of 18, have personal knowledge of the information in this declaration, and am otherwise competent to testify.

2.      I have worked at Jolt for five years. Before assuming my position as Deputy Director, I served as the Operations and Human Resources Director.

3.      Jolt Initiative is a nonprofit that is federally exempt from taxes as a charitable nonprofit under section 501(c)(3) of the Internal Revenue Code. A separate nonprofit organization, Jolt Action, is federally exempt from taxes under section 501(c)(4) of the Internal Revenue Code. The entities have separate boards and maintain separate bank accounts. Except as otherwise specified, I will use "Jolt" to refer to Jolt Initiative.

4.      I am excited to be part of Jolt because it is an organization that empowers, equips, and mobilizes individuals to speak up not only for themselves but for those who are afraid to do so for fear of reprisal.

## Jolt Overview

5.      Jolt Initiative and Jolt Action were founded in 2016 by Cristina Tzintzún Ramirez. Jolt Initiative was incorporated in 2017. Jolt Action was incorporated in 2016. A leading civil rights leader and former 2020 U.S. Senate candidate, she was named "Hero of the New South" by Southern Living Magazine. Her work in the Latino voter advocacy space has been featured on NPR, Vogue, The

Copy from re:SearchTX

Docusign Envelope ID: 560D014D-DEB5-4940-9A10-244574383B5D

New York Times, MTV, USA Today, Univision, and MSNBC's Up Late with Alec Baldwin, among others.

6.     Jolt works to increase the civic participation of Latinos in Texas to build a stronger democracy and ensure that everyone's voice is heard. We are an organization centered around uplifting the power of young Latino voters in particular. Jolt mobilizes young Latino voters, particularly those between the ages of 18 and 32, with the goal of forging a democracy that works for everyone.

7.     Among Jolt's policy platforms is "Democracy for All." We believe that communities of color have immense power, and politicians know it. Texas's Latino population has grown by 2 million in the last decade and Latinos are projected to be the majority group in the state by 2030. We know that voting is a right, not a privilege; nonetheless, Texas has historically discriminated against voters of color and has continuously attempted to suppress their voting power. This is why we are building a movement of young Latinos ready to transform Texas.

8.     Jolt believes that Latinos are the future of Texas and that politicians should work for us, not just for the interests of corporations of a minority that refuses to see us as equal. We deserve to have power and respect, and that means our democracy should look like us, represent us, and value our voices.

9.     Jolt also works to build "Respect for Immigrant Families." Texas's diversity is its greatest strength, and as a state where one out of every six Texans is an immigrant, we wholeheartedly recognize that immigrants make this country better. The criminalization of undocumented immigrants and the demonization of

Copy from re:SearchTX

Case 2:24-cv-00889 Document 141 Filed 09/13/25 Page 19 of 36

those who come to this country seeking a better future must end. Jolt is mobilizing our young Latino community to stand in support of immigrants.

## Voter Registration Efforts

10.     Jolt exists to support the Latino community and to encourage our communities to get out and vote in record numbers. A vital part of that mission is training community members to conduct nonpartisan voter registration in accordance with state law.

11.     We conduct voter registration drives throughout the state, especially in Dallas, Harris, and Bexar Counties. Because of these drives, many thousands of eligible Texans have been registered to vote this year alone.

12.     Many of our employees and volunteers have been certified as Volunteer Deputy Registrars (VDRs) in one or more counties. Under state law, only VDRs may handle voter registration forms before they are submitted to the registrar.

13.     To maintain the high quality of its voter registration drives, it trains its VDRs carefully, closely monitors their work, and has several layers of quality control. We do all of our work in compliance with the letter and spirit of all laws.

14.     A typical voter registration drive involves a VDR setting up outside a place with high foot traffic, often with a table, a banner, and guidance about voter registration from the counties and the Secretary of State. For example, we sometimes will set up outside Department of Public Safety locations because of the high number of people coming and going to conduct business. Although some people at DPS locations have an opportunity to register to vote, not everybody does, such

Copy from re:SearchTX

as parents taking their children for driving tests.  And even for people who do register at DPS locations, Jolt provides information about how to participate in upcoming elections.

15.     At voter registration events, a Jolt VDR will answer questions from passersby who are interested in learning more about voting.  Jolt will typically have pamphlets providing information about voting, such as a map of polling locations and information about the times that precincts are open.  The VDR will also bring blank voter registration forms.

16.     If a person wants to register to vote, a VDR will explain the eligibility requirements, answer any questions, and walk them through the process of filling out a voter registration form.  When the person is finished, the VDR hands the applicant a receipt.  Within five days, the VDR will deposit the completed voter registration form with the county registrar.

17.     The determination whether someone is legally allowed to vote is made exclusively by the Secretary of State and county registrars.  A VDR simply collects the form and provides it to the appropriate government office for decision.  A VDR is not allowed to determine whether someone is actually eligible to vote, and is not legally permitted under Texas law to refuse to submit a completed application to the county registrar.

18.     Jolt also has a presence on college campuses, working to register college students.  For example, Jolt Action has on-campus student chapters that are led by student coordinators, who register as VDRs so that they can help their

4

Copy from re:SearchTX

Docusign Envelope ID: 560D014D-DEB6-4940-9A10-2467A3B3B5D

classmates register to vote.  Our students are part of a network of young Latinos across Texas working to make our state a better place for everyone.

19.    In addition to voter registration drives, Jolt encourages Latinos in Texas to vote through public education campaigns, leadership programming, and other measures.

20.    For example, Jolt has a presence in high schools, encouraging students to register when they turn 18, and building the foundation for a lifetime of engaged citizenship.  Jolt has also worked to put together the largest research study of Latino voters in Texas history.

21.    Jolt's leadership programs provide training to Latino youth on public speaking, advocacy, organizing, and mobilization so that they can be effective leaders in their community.  The programs also provide education on voting history and participation among Latinos in the United States.

### Other Public Expression

22.    Both Jolt and Jolt Action speak out on issues that matter to Latinos in Texas.  Both organizations use social media, speak to the press, and send out emails to supporters.

23.    Sometimes, these messages are critical of misuses of government power.

24.    For example, on August 10, 2024, Jolt Action posted a video on X in response to legislation in Texas curbing the rights of LBGTQ people.  The caption with the video read: "There's nothing scarier than Republican politicians grabbing

5

Copy from re:SearchTX

power to control us.  The only way to stop them?  Be a voter.
#OurFreedomsOurFutures."

25.    On August 13, 2024, Jolt Action posted a video on X fact-checking
former President Donald Trump's false claims about immigrants, including his false
claim that widespread illegal voting by noncitizens undermined the results of the
2020 presidential election.  Along with the video, the X post said: "The
misinformation is on a different level these days & we're here to do some (simple,
easy-to-google) fact-checking from everyone's least favorite Presidential nominee.
Make sure you are registered to vote against anti-immigrant rhetoric this
November!  #JoltTheVote."

26.    On August 23, 2024, shortly after the Texas Attorney General raided
the homes of six people affiliated with the League of United Latin American
Citizens (LULAC), Jolt Action sent out an email blast to thousands of supporters
titled: "URGENT: Paxton Investigation Disrupts Jolt Organizers' Important Work."
In this email, Jolt Action accused the Attorney General of "suppress[ing] voter
registration" and "attack[ing] Texans once again."  A true and accurate copy of this
email is attached as Exhibit A.

27.    Also on August 23, 2024, Jolt Action made the following public post on
its Facebook page, declaring "we won't stay quiet, and we are prepared to make our
voices heard to ensure voting rights aren't infringed upon."  A true and accurate
depiction of this post is below:

Copy from re:SearchTX



**Social Media Attack in August 2024**

28.     On August 20, 2024, a X user named "@hernandoarce" posted a video of someone confronting a Jolt VDR.  The user wrote "we have Marxist non profit organizations like @JoltAction infiltrating Texas @TxDPS locations in San Antonio." The user tagged our Jolt Action X account and @KenPaxtonTx, among others.  The post was seen tens of thousands of times, and was reshared by more than 800 people as of the date of this declaration.

29.     Jolt leadership immediately became concerned for the safety of all of its employees and VDRs, and shared safety tips on how to handle potentially threatening situations.

Copy from re:SearchTX

30.     One day after this post, on August 21, 2024, the Attorney General issued a press release announcing an investigation into Texas nonprofits that conduct voter registration drives, with a focus on those that do so at DPS locations.

## Request to Examine

31.     Jolt Initiative received a Request to Examine (RTE), dated August 30, 2024, from the Office of the Attorney General.  A true and correct copy of the Request to Examine is attached as Exhibit B.

32.     The RTE was given to Jolt's former executive director on August 31, 2024, who then forwarded it to Jolt.

33.     The RTE instructed Jolt Initiative to provide, by September 19, 2024, four categories of documents:

1. Each of Your volunteer deputy registrars' certificates of appointment.

2. All Documents Jolt provides to your volunteer deputy registrars Concerning the voter registration application process.

3. All Documents Jolt provides to your volunteer deputy registrars Concerning Your role in the voter registration application process.

4. Each of the completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by You.

34.     The RTE further provided that failure to comply could lead the Attorney General to seek forfeiture of Jolt's registration.

## Fear of Reprisal

35.     Jolt leadership discussed the RTE with board members, who were shaken, upset, and frustrated that Jolt was being unfairly targeted with this demand.  The board concluded that it could not comply with the RTE without

Copy from re:SearchTX

Docusign Envelope ID: 560D014D-DEB5-4940-9A10-2445743B3B5D

jeopardizing the safety of its VDRs and the confidence of its partners and the Latino community. If Jolt were to provide the documents requested, it would make it more difficult for Jolt to fulfill its mission of encouraging Latinos to become more politically active.

36. The RTE demands confidential information, such as the identities of all people who serve with us as VDRs. We do not publicly share the identities of all of our VDRs. Although the identities of some of Jolt Action's staff is public, there are many VDRs whose work with Jolt is not public knowledge.

37. The RTE demands the certificates of appointment for every VDR associated with Jolt. Certificates of appointment contain additional private information such as the VDR's address and date of birth. We do not publicly share this information about any of our VDRs. Our VDRs would consider our sharing their private information to be a serious breach of trust.

38. Other than submitting their voter registration forms to the appropriate county registrar, we do not publicly share names or other information about the people who we have helped register to vote.

39. If we were forced to provide confidential information about our VDRs to the Attorney General, we fear that he would target our VDRs for baseless intimidation and harassment, as he has done with others.

40. Similarly, if we were forced to disclose the identities of people who we have successfully helped register to vote, we fear that the Attorney General would try to intimidate or scare them and try to deter them from exercising their right to

Copy from re:SearchTX

Docusign Envelope ID: 560D014D-DEB6-4940-9410-344E7A3B8B5D

vote. People who fill out a voter registration form at one of our booths are entrusting us to faithfully deposit their form with the county registrar.

41. Moreover, if we were forced to disclose voters' personally identifying information, we would be betraying the trust that we have carefully earned from the Texas Latino community. Our partners would likely not want to work with us as closely, and it would jeopardize our collaboration with other groups, including donors.

42. Although they have done nothing wrong, people associated with Jolt have every reason to fear the Attorney General's scrutiny. He may go after their friends or family members or try to interfere with their employment. Simply being forced to answer questions or having law enforcement come to your home is intimidating, when all you are trying to do is vote or help others do so.

43. One reason Jolt does its work to increase political power in the community is that many Texans fear reprisal if they are vocal on controversial matters. This concern is especially acute in the Latino community. Many Latinos have friends or family members who are undocumented, and they fear that if they draw attention to themselves, they may place their friends or family at risk. Other Latinos may be going through the process of becoming a citizen, and worry that if they criticize the government or take a controversial stand, they will jeopardize their immigration status.

44. Jolt is particularly concerned about public disclosure of personal identifying information about its employee and volunteer VDRs, as well as personal

10

Copy from re:SearchTX

identifying information about the voters those VDRs help to register. Such
disclosure may subject those people to threats, harassing communications, or even
place them at risk of violence from extremists who believe the Attorney General's
false accusations that organizations like ours are helping ineligible people register
to vote.

45.     In fact, after the Attorney General's announcement targeting Jolt,
some of our partners have been less willing to collaborate with us publicly. Despite
the RTE, we continue to do our voter registration work every day. But the number
of voters who our VDRs have registered has declined noticeably. If we were to
provide confidential information to the Attorney General, we would struggle to have
productive relationships with other voter engagement groups, and the number of
voters and VDRs willing to associate with us would likely drop dramatically.


I declare under penalty of perjury that this declaration is true and correct.


Executed on September 13, 2024.

Signed by:

_____
91E9AFE8DD004A6...
Jacqueline Bastard

11

Copy from re:SearchTX

# Exhibit C

Copy from re:SearchTX

**DECLARATION OF A.R.**

I, A.R., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have reviewed Exhibit A (the "Report") to the Attorney General's Motion to Dismiss and Response to Plaintiff's Request for Preliminary Injunction. Based on the information contained in the Report, including the date and Department of Public Safety ("DPS") location described, I understand myself to be the individual Volunteer Deputy Registrar ("VDR") discussed in it.

2. I was at the time of the Report employed by Jolt Action and Jolt Initiative (collectively, "Jolt") as a Canvasser. I began working for Jolt in June 2024.

3. I began my work as a Jolt Canvasser in Houston, Texas. In order to become a VDR, I had to successfully complete a training and certification process with the county. The training was approximately one-hour long. I then completed a written test, took an oath in which I swore to comply with Texas registration laws, and then received certification from Harris County.

4. Before acting as a VDR on my own, I shadowed other Jolt VDRs for approximately one week in order to learn the proper protocols to ensure that I knew how to do everything in compliance with Texas law.

5. I also completed a VDR certification test in Hays County, Texas, on or around July 23, 2024.

6. On or around July 23, 2024, I obtained reciprocal certification as a VDR in Bexar County, Texas, based on my Hays County certification. I went in person to the Bexar County office, presented my Hays County certification, and took the VDR oath.

1

Copy from re:SearchTX

7.  I am currently a certified VDR in Harris County, Hays County, and Bexar County.

8.  As part of my activities helping individuals register to vote, I went to many different busy public places, including college campuses, public events, and government offices.

9.  Before DPS made an announcement prohibiting voter registration outside of their offices, I at times registered voters at the Universal City DPS location described in the Report.  There, I regularly encountered a variety of people, including individuals new to Texas and many members of the armed forces, as San Antonio has a strong military presence.  Although some of them were there to obtain drivers licenses, the DPS staff did not usually explain to them that they could register to vote or give any information on registration and elections in Texas.  Other individuals were there for services other than drivers licenses or were accompanying somebody there.

10.  I had a good relationship with the Universal City DPS office, and the workers there would occasionally come out to ask questions about voter registration, election information, or to offer me water.  The workers expressed to me that they appreciated my presence because I could help answer people's questions about voter registration and elections in Texas.

11.  When registering voters outside DPS, I would often receive questions about the voter registration process or a person's voter registration status.  Some individuals expressed hesitation about registering to vote, and I would emphasize the

2

Copy from re:SearchTX

positive aspects of participating and explain that they should be on the rolls in case they change their minds about voting later. There were many individuals who did not register to vote inside the office or were unsure if they were registered and wanted me to check their status or help them register.

12. In these interactions, I would also provide information about upcoming election dates and where to find polling locations, often referring people to the Bexar County election office website.

13. On August 20, 2024, an individual posted a video online, which included footage of me acting as a VDR. I am aware that there were comments made about the video and that it was portrayed as if I had somehow given misinformation about registering to vote.

14. In the video, I accurately told the individual that I had never encountered anybody trying to register to vote illegally or trying to vote illegally, which was and is true to the best of my knowledge. In our interaction, I understood the individual to be asking whether VDRs have any way of ultimately preventing an ineligible person from attempting to register to vote if they are really intent on trying to do so. I attempted to explain that, as VDRs, by law, we are merely the messengers for voter registration, and it is the county's responsibility to verify eligibility. We are not in a position to verify anybody's eligibility. Although I always explain the legal requirements for eligibility to anybody seeking to register to vote, that it is a crime to register illegally, and highlight important requirements on the form, as a VDR I ultimately have no way of knowing if somebody is providing false information—just

3

Copy from re:SearchTX

as there is nothing to prevent them from using the State mail-in registration form on their own to provide false information if they are intent on doing so. I was in no way expressing to the person recording the video that it was legal or advisable for an ineligible person to register, but merely that VDRs do not ultimately have a way to determine somebody's eligibility or know if they are lying.

15. As a VDR, I have a legal responsibility to turn in every completed registration form to the county. It would be a violation of the law for me to not turn in a completed form, with potential criminal penalties. The county and the state then have the duty to verify eligibility.

16. I know the Texas voter registration eligibility requirements, including that a person registering must be at least 17 years and 10 months old and turning 18 by Election Day, and a United States citizen. I always inform individuals that they must meet these requirements in order to be eligible to vote. On the registration forms that I use, I highlight in yellow highlighter the question "Are you a United States Citizen?" to make sure that the voter pays attention to this important legal requirement.

17. On the date described in the Report, I was at the Universal City DPS registering voters and providing information on registration and elections. I do not specifically recall the interaction described in the Report. Again, it was commonplace for individuals to ask me questions about the voter registration rules.

18. I typically carry a red clipboard that is attached atop a container, which opens. I keep the highlighted voter registration forms on top and place completed

4

Copy from re:SearchTX

forms inside the container. This is my normal practice. I need to have a way to keep blank and filled out forms organized separately and to have a surface for the individuals registering to fill out the forms. I do not have a folder or binder, but the Report may mistakenly be referring to my clipboard container as a folder or binder.

19. The VDR forms I use to register voters have my VDR information on the legally required receipt portion of the form. Therefore, I cannot just hand out these forms to somebody who asks because it would be illegal for that person to use them to register a voter. Sometimes I have standard, blank mail-in registration forms that voters can take with them, but I often run out of these forms. If someone asks for a form to take with them and I am out of mail-in forms, I would not give them one of the VDR forms with my VDR information on it because that would be illegal. Attached as Exhibit A is a copy of a sample VDR form with certain important fields highlighted to make sure the voter fills them out correctly. In addition to me explaining the legal requirements to register to vote, the fields are highlighted so that the individuals do not miss any important information or unwittingly provide false information.

20. Under Texas law, certain individuals, such as a parent, child, or spouse, can act as an agent for their child/parents/spouse to register them to vote, as long as they have permission. This information is clearly referred to on the voter registration form where it says "Signature of Applicant *or Agent and Relationship to Applicant*."

21. I learned this law as part of my VDR training. The training presentation I reviewed was substantially the same as the one attached to this declaration as

5

Copy from re:SearchTX

Exhibit B.  Specifically, the presentation explains on page 21 that an agent must sign the application as "agent," state their relationship to the applicant, and have permission to complete the form.  It says clearly:

> You may allow another registered voter (or anyone who has submitted a registration application) to fill out and sign an application for his/her spouse, parent or child.  That person must sign the application as "agent" and state the relationship to the applicant on the application. The "agent" must have the permission of the applicant to do this.

22.  Since the DPS announcement in August prohibiting voter registration outside of their offices, I have not registered any voters outside any DPS location.

23.  I do not wish to be publicly identified.  I worked as a Canvasser for Jolt because I believe it is important for everybody to register to vote, and in particular that there are low voter registration rates in Latino communities that need to be addressed.  Unfortunately, sometimes people want to try to make this into a controversial issue, make false accusations about what we are doing, and prevent us from encouraging registration and voting.  Especially in the media and on social media there have been many stories spread—I believe falsely, based on my knowledge and experience—about ineligible individuals registering to vote.  Some people try to blame VDRs, who are just following the law, for this.  I do not wish to be the subject of any harassment, scrutiny, or investigation and worry that I will be if my information is released, especially after seeing the comments section of the video of me described above.

24.  In the coming weeks, I plan to complete the process of enlisting in the United States Air Force and start boot camp.  That is another reason I do not wish to be

6

Copy from re:SearchTX

publicly identified at this time. Any harassment, scrutiny, or investigation that could come from being identified might distract me from this important next step in my career, in which I hope to serve our country.

25. Based on the redacted Report, I do not know if the Attorney General or anyone in his office has my complete identifying information. To the extent they do not, I do not want my information released to them by an employer. The Report mistakenly claims that I did something illegal even though I did not do anything wrong and referred correctly to Texas laws as shown in the Secretary of State's own VDR training materials. I do not want myself or any of my colleagues to be the subject of any sort of unwarranted investigation. I would be less likely to work for or volunteer for an organization if I knew that a law enforcement agency was requiring them to turn over information on volunteers, voters, and employees, when there was no legitimate reason for requiring them to do so.


I declare under penalty of perjury that this declaration is true and correct.

Executed on October 10, 2024.

            /s/A.R.                                 
            A.R.

            Signed copy maintained by Plaintiff's counsel.

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Ian Bergstrom
Bar No. 24145952
pauline.sisson@oag.texas.gov
Envelope ID: 107237465
Filing Code Description: Petition
Filing Description: 20251023 State's Mtn for Leave to File Quo Warranto Petition w Ex A
Status as of 10/24/2025 9:09 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 10/23/2025 6:54:41 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 10/23/2025 6:54:41 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 10/23/2025 6:54:41 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 10/23/2025 6:54:41 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 10/23/2025 6:54:41 PM | SENT |

Copy from re:SearchTX