# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

JOLT INITIATIVE, INC.,

      *Plaintiff,*

        v.

KEN PAXTON, in his individual and official capacity as Attorney General of Texas,

      *Defendant.*

CASE NO. 1:25-CV-001808

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ iii

Introduction ............................................................................................................................. 1

Background ............................................................................................................................. 2

    I.  The Texas Election Code and Volunteer Deputy Registrars .......................................... 2

    II.  Jolt Alleged Unlawful Voter Registration Scheme ...................................................... 3

    III. Prior and Parallel Proceedings ................................................................................ 4

Standard of Review ................................................................................................................ 5

Argument ............................................................................................................................... 6

    I.  The *Younger* abstention doctrine precludes the Court from issuing a preliminary
       injunction. ................................................................................................................ 6

        a.  Younger applies to Jolt's anti-suit injunction action .................................................. 6

        b.  No exception to Younger applies here. ...................................................................... 9

    II.  Jolt is unlikely to succeed on the merits of its claims. ................................................. 10

        a.  Jolt is unlikely to succeed on the merits of its First Amendment retaliation
           claims because the Attorney General did not retaliate against Jolt for engaging
           in protected activities. ............................................................................................. 10

           1.  Jolt was engaged in an unprotected activity—maintaining a suspected policy
               of accepting voter registration applications from illegal aliens. .......................... 11

           2.  Jolt has not shown that the Quo Warranto Action was substantially
               motivated by a retaliatory animus to Jolt's protected activity. ............................ 12

           3.  The but-for cause of the Quo Warranto Action was Jolt's suspected policy
               of accepting voter registration applications from noncitizens. ............................ 15

        b.  Jolt is unlikely to succeed on the merits of its § 11(b) claims because enforcing
           the State's election laws is not harassment or intimidation as defined under
           § 11(b). .................................................................................................................. 16

    III. The remaining preliminary injunction factors weigh in favor of denying preliminary
        relief. ....................................................................................................................... 17

Conclusion ............................................................................................................................ 18

Certificate of Service ............................................................................................................ 20

## Table of Authorities

Page

**Cases**

*AbbVie, Inc. v. Fitch,*
　152 F.4th 635 (5th Cir. 2025) ..................................................................................5

*Book People, Inc. v. Wong,*
　91 F.4th 318 (5th Cir. 2024) ..................................................................................18

*Crawford v. Marion Cnty. Election Bd.,*
　553 U.S. 181 (2008) ..............................................................................................18

*Cripps v. La. Dep't of Agric. and Forestry,*
　819 F.3d 221 (5th Cir. 2016) ..................................................................................13

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
　762 F.2d 464 (5th Cir. 1985) ....................................................................................5

*Finlan v. Dallas Indep. Sch. Dist.,*
　90 S.W.3d 395 (Tex. App.—Eastland 2002, pet. denied) ........................................ 8

*Giboney v. Empire Storage & Ice Co.,*
　336 U.S. 490 (1949) .............................................................................................. 11

*Google, Inc. v. Hood,*
　822 F.3d 212 (5th Cir. 2016) ................................................................................6, 9

*Hardin v. Houston Chron. Pub. Co.,*
　572 F.2d 1106 (5th Cir. 1978) (per curiam) ............................................................5

*Hartman v. Moore,*
　547 U.S. 250 (2006) ........................................................................................ 14, 15

*Hathorn v. Lovorn,*
　457 U.S. 255 (1982) ................................................................................................ 8

*Huffman v. Pursue, Ltd.,*
　420 U.S. 592 (1975) ............................................................................................6, 7

*Institutional Div. of Tex. Dep't of Crim. Justice v. Powell,*
　318 S.W.3d 889 (Tex. 2010) ................................................................................... 8

*Jones v. Tex. Dep't of Crim. Justice,*
　880 F.3d 756 (5th Cir. 2018) ............................................................................5, 17

*Keenan v. Tejeda,*
　290 F.3d 252 (5th Cir. 2002) ................................................................................10

*LULAC v. Pub. Int. Legal Found.,*
　No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524 (E.D. Va. Aug. 13, 2018) ..........16

*McNatt v. Texas,*
　No. 93-2925, 1994 U.S. App. LEXIS 41439 (5th Cir. 1994) ...................................... 9

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ................................................................................... 7, 8

*Mock v. Garland,*
  75 F.4th 563 (5th Cir. 2023) ........................................................................... 5

*Mt. Healthy City. Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977) ............................................................................... 11, 14

*Nat'l Coal. on Black Civic Participation v. Wohl,*
  498 F. Supp. 3d 457 (S.D.N.Y. 2020) ............................................................ 16

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) .................................................................................... 18

*Nieves v. Bartlett,*
  587 U.S. 391 (2019) ................................................................ 10, 11, 14, 16

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,*
  477 U.S. 619 (1986) ....................................................................................... 7

*Paxton v. Annunciation House, Inc.,*
  719 S.W.3d 555 (Tex. 2025) ......................................................................... 15

*Perez v. Ledesma,*
  401 U.S. 82 (1971) ......................................................................................... 9

*Rodriguez v. Beaumont Indep. Sch. Dist.,*
  413 S.W.3d 524(Tex. App.—Beaumont 2013, no pet.) .................................... 8

*Salazar v. Buono,*
  559 U.S. 700 (2010) ..................................................................................... 18

*Sprint Communications, Inc. v. Jacobs,*
  571 U.S. 69 (2013) .................................................................................... 6, 7

*Trainor v. Hernandez,*
  431 U.S. 434 (1977) ....................................................................................... 7

*United States v. Armstrong,*
  517 U.S. 456 (1996) ..................................................................................... 16

*United States v. Tan Duc Nguyen,* 673 F.3d 1259 (9th Cir. 2012) .................................... 17

*Veasey v. Abbott,*
  870 F.3d 387 (5th Cir. 2017) (per curiam) .................................................... 18

*Voting for Am., Inc. v. Steen,*
  732 F.3d 382 (5th Cir. 2013) ................................................................... 7, 11

*Wightman v. Tex. Supreme Court,*
  84 F.3d 188 (5th Cir. 1996) ............................................................................ 9

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ......................................................................................... 17

iv

*Younger v. Harris*,
    401 U.S. 37 (1971) ............................................................................................... 6

**Statutes**

Tex. Civ. Prac. & Rem. Code § 66.002(d).....................................................9, 14

Tex. Elec. Code § 13.007 ..........................................................................4, 12

Tex. Elec. Code § 13.007(a)(2) .......................................................................3

Tex. Elec. Code § 13.031(a) ..........................................................................2

Tex. Elec. Code § 13.031(d) ..........................................................................2

Tex. Elec. Code § 13.031(e) ..........................................................................2

Tex. Elec. Code § 13.033(b)(6) ...................................................................2, 3

Tex. Elec. Code § 13.036(b).........................................................................12

Tex. Elec. Code § 13.038 ........................................................................ , 4

Tex. Elec. Code § 13.039 ..............................................................................4

Tex. Elec. Code § 13.039(a) ...........................................................................

Tex. Elec. Code § 13.042 .............................................................................12

Tex. Elec. Code § 13.047 ..............................................................................2

Tex. Elec. Code § 13.047(a) ..........................................................................2

Tex. Elec. Code § 276.018 ...........................................................................11

Tex. Transp. Code § 521.101 ..........................................................................3

**Federal Statutes**

52 U.S.C. § 10307(b)...................................................................................1

Defendant Ken Paxton, in his official capacity as Attorney General of Texas, hereby files this Response to Plaintiff's Motion for Preliminary Injunction.

<h2 align="center">INTRODUCTION</h2>

Plaintiff, Jolt initiative (Jolt), is a nonprofit organization that operates with the stated goal of "increase[ing] the civic participation of Latinos in Texas to build a stronger democracy." ECF 2 at 2. One of Jolt's main aims is to register new voters to vote in Texas. While the registration of *eligible* voters is a benign and noble task, Jolt has gone far beyond that. A recent video surfaced on X, where an employee of Jolt, who also happens to be a Volunteer Deputy Registrant (VDR), stated that he would be required to accept a voter registration application from an illegal immigrant and deliver it to the applicable county voter registrar. ECF 2-3. Based on this evidence, and the fact that Jolt tends to set up voter registration drives at redundant locations such as outside of Texas Department of Public Safety (DPS) offices, the Attorney General initiated an investigation against Jolt for potentially violating state election law.

Jolt was ultimately able to shut down that investigation via a settlement with Texas. But in an effort to ensure the integrity of Texas's elections, the Attorney General initiated quo warranto proceedings (the Quo Warranto Action) against Jolt seeking to revoke Jolt's corporate charter if Jolt indeed had been violating state election law. ECF 1-3; ECF 1-4. In response, Jolt filed this action in federal court alleging that the Attorney General engaged in retaliation for Jolt's exercise of its First Amendment rights and alleging that he also engaged in harassment offensive to § 11(b) of the Voting Rights Act by filing the Quo Warranto Action.

None of this is true. The Attorney General did not retaliate against Jolt for any protected speech or activity. Rather, the Attorney General has "probable grounds" to believe that Jolt violated applicable state election law and sought to investigate and sanction Jolt for these potential violations. Nor is the Quo Warranto action harassment as defined by § 11(b). *See* 52 U.S.C. § 10307(b). Enforcing state election law is not harassment—it is justice. What Jolt seeks to do here is hide behind its vague political affiliations to bring a retaliation claim while wielding this Court's power as a club against the state court of a sovereign state. The Court should not let this stand.

<u>**Background**</u>

**I.    The Texas Election Code and Volunteer Deputy Registrars**

To promote lawful voter registration, the Texas Election Code authorizes county registrars to appoint volunteer deputy registrars, otherwise known as VDRs. Tex. Elec. Code § 13.031(a). There are three requirements for a person to become a VDR: (1) the person must be 18 years of age or older; (2) the person must not have a disqualifying criminal conviction; and (3) the person must meet the requirements to be a qualified voter. *Id.* § 13.031(d). A prospective VDR must prepare a certificate of appointment which states, among other things, that the appointment "may terminate on the registrar's determination that the person failed to adequately review a registration application, intentionally destroyed or physically altered a registration application, or engaged in any other activity that conflicts with the responsibilities of a volunteer deputy registrar under this chapter." *Id.* § 13.033(b)(6). Before accepting another person's voter registration application, a volunteer deputy registrar must complete a training program developed by the Secretary of State. *Id.* § 13.031(e).

The VDR stands in the shoes of the county voter registrar. In this capacity, the VDR acts as the registrar's authorized agent and is entrusted with carrying out specific, enumerated duties with strict compliance to the Election Code to ensure the lawful processing of voter registration materials.

The Secretary of State's training, made pursuant to Texas Election Code § 13.047, provides a standardized curriculum for VDRs throughout the state. *Id.* § 13.047(a) In these training materials, the Secretary of State again confirms that VDRs may be terminated if it is determined that a VDR (1) "failed to properly review a voter registration application"; (2) "intentionally destroyed or physically altered a registration application"; or (3) "engaged in any other activity that conflicts with your responsibilities as a volunteer deputy registrar." ECF 2-2 at 22.

The VDR is vested with the power to distribute voter registration applications, receive registration applications, accept those applications and transmit them to the registrar, and review registration applications for completeness. Tex. Elec. Code §§ 13.038, 13.039(a). In performance

of these duties, the volunteer deputy registrar may not, under Tex. Elec. Code § 13.033(b)(6), "engage[] in any activity that conflicts with the responsibilities of a volunteer deputy registrar . . . ." *Id.* § 13.033(b)(6). A volunteer deputy registrar commits an offense if the VDR knowingly or intentionally "requests, commands, coerces, or attempts to induce another person to make a false statement on a registration application." *Id.* § 13.007(a)(2).

## II.    Jolt Alleged Unlawful Voter Registration Scheme

After Jolt's VDRs completed the Secretary of State's required training and obtained their certificates of appointment, wherein they confirmed that they would take no actions that conflict with their responsibilities to serve as deputies of the county voter registrar, Jolt's VDRs engaged in activity that evidenced an intent to subvert and exploit the authority granted to them under the Election Code. This is evident by the fact that Jolt set up several voter registration drives outside of various DPS locations—places where eligible persons can already lawfully register to vote.

Voter registration applications allow an individual to apply for registration without a state-issued ID or social security number by simply stating that one has never been issued such an ID. At a DPS location such claims are rare because DPS has the authority to issue official state identification cards and driver's licenses to remedy the identification card gap if one is a lawful citizen. *See e.g.,* Tex. Transp. Code § 521.101 (authority to issue personal identification certificates). However, the unique positioning decisions of Jolt VDRs, mere steps outside of DPS locations, present an opportunity for a noncitizen who wishes to submit a voter registration application. The VDRs do not have access to identification databases; instead, they have paper applications. They are, therefore, entirely dependent on the information provided by the applicant and their application.

By placing themselves just outside of DPS locations, where non-citizens routinely appear for a variety of lawful services but cannot register to vote, Jolt's VDRs created a conduit through which non-citizens could submit applications without encountering the ordinary safeguards just inside. These circumstances, as well as statements by Jolt's VDRs that illegal aliens could submit voter registration applications "if they really wanted to," demonstrate a deliberate strategy to

exploit the parameters of VDR review in an attempt to induce false statements on registration applications. ECF 2-3.

### III.    Prior and Parallel Proceedings

After learning of Jolt's potentially unlawful conduct, namely that it may seek to treat the scope of powers granted under § 13.038 and § 13.039 as a conduit to remain willfully blind to illegal activity and facilitate the submission of false statements by non-citizens in violation of § 13.007, the Office of the Attorney General of Texas issued a Request to Examine ("RTE") on August 30, 2024. See Tex. Elec. Code §§ 13.038, .039, .007. The requested documents were the following: (1) Jolt's "volunteer deputy registrars' certificates of appointment"; (2) documents that "Jolt provides to [their] volunteer deputy registrars concerning the voter registration application process;" (3) documents that Jolt "provides to [their] volunteer deputy registrars concerning [Jolt's] role in the voter registration application process"; and (4) "completed registration receipts created pursuant to Texas Election Code § 13.040 and maintained by [Jolt]." ECF 1-2, at 7. Jolt responded by filing a federal lawsuit challenging the RTE. Complaint, *Jolt Initiative v. Ken Paxton*, No. 1:24-cv-1089 (W.D. Tex. filed Sept. 13, 2024) (*Jolt I*). The parties agreed to a joint stipulation of dismissal of Jolt's lawsuit. Joint Stipulation of Dismissal, *Jolt I*, No. 1:24-cv-1089, ECF 38 (W.D. Tex. filed Oct. 22, 2025).

Following the resolution of the federal court litigation regarding the RTE, the State of Texas filed a motion for leave to file the Quo Warranto Action. *State of Texas v. Jolt Initiative, Inc.*, Cause No. 352-371410-25 (352nd Dist. Ct., Tarrant County, Tex., filed on Oct. 23, 2025) (*Jolt II*). In the state court litigation, the State of Texas asks that the "Court revoke the corporate character and corporate registration for Jolt on the ground(s) that the nonprofit corporation systemically, knowingly, willfully, deliberately, and recklessly misuses individuals and Volunteer Deputy Registrars ("VDR") to acquire and submit unlawful voter registration applications that violate the Texas Election Code and undermine the State's democratic processes." *Id.* at 3. To date, Jolt's only substantive response in the state court litigation is to contest the applicability of venue in

Tarrant County. *See* Ex. 1 (Jolt's Motion to Transfer Venue in the Quo Warranto Action), Ex. 2 (Jolt's General Denial in the Quo Warranto Action).

Rather than waiting for a venue ruling by the state court or raising their objections to the Quo Warranto Action in the state court, Jolt filed this case the next day and moved for a preliminary injunction. *Jolt Initiative, Inc., v. Ken Paxton,* 1:25-cv-01808 (W.D. Tex. filed Nov. 11, 2025) (*Jolt III*).

### Standard of Review

"[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025) (emphasis added). To obtain a preliminary injunction, it is the movant's burden to establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Jones v. Tex. Dep't of Crim. Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). The government's and the public's interests merge when the government is a party. *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). A preliminary injunction "must be the product of reasoned application of the four factors held to be necessary prerequisites." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Fla. Med. Ass'n v. H.E.W.*, 601 F.2d 199, 202 (5th Cir. 1979)). "The movant has the heavy burden of persuading the district court that all four elements are satisfied." *Hardin v. Houston Chron. Pub. Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978) (per curiam). "[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal." *Enter. Int'l, Inc.*, 762 F.2d at 472.

<u>A<small>RGUMENT</small></u>

I.   **The *Younger* abstention doctrine precludes the Court from issuing a preliminary injunction.**

The Court should abstain from ruling on Jolt's claims because the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), precludes the Court from taking action on Jolt's case. And since Jolt has not shown that their case falls within any of the narrow exceptions to the *Younger* doctrine, the Court cannot grant preliminary injunctive relief.

a.   **Younger applies to Jolt's anti-suit injunction action.**

In *Younger*, the Supreme Court "established that federal courts should not enjoin pending state criminal prosecutions unless the plaintiff shows 'bad faith, harassment, or any other unusual circumstances[.]'" *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Younger*, 401 U.S. at 53–54). *Younger* reinforces the principle that a federal court's interference with state judicial proceedings "prevents the state . . . from effectuating its substantive policies" and "results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1964)). The *Younger* doctrine applies in three "exceptional" circumstances: (1) when there are parallel state court criminal proceedings, (2) when there are parallel civil enforcement actions, and (3) when there are parallel "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotations omitted) (quoting *New Orléans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–38 (1989)).

Plaintiff's lawsuit falls squarely into the second category—a civil enforcement action. *Google Inc.*, 822 F.3d at 222. Importantly, the Supreme Court's "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 79 (quoting *Huffman*, 420 U.S. at 604). Civil enforcement cases subject to *Younger* tend to share a few characteristics. *First*, they are typically brought to sanction the federal plaintiff. *Id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden*

*State Bar Ass'n*, 457 U.S. 423, 433–34 (1982)). *Second*, the state is "routinely a party to the state proceeding and often initiates the action." *Id.* And a third telltale sign of civil enforcement actions subject to *Younger* is that investigations are often involved. *Id.* at 79–80.

Each of these signs are present here. The purpose of the Quo Warranto Action is to sanction Jolt for its unlawful voter registration scheme. ECF 1-4; *see, e.g., Middlesex*, 457 U.S. at 433–34 (state-initiated disciplinary action against a lawyer). The State also initiated the Quo Warranto Action in its sovereign capacity. ECF 1-3 at 2–3 (quoting *Paxton v. FIEL Houston, Inc.*, 2025 WL 2857332, at *2 (Tex. App.—Austin 2025, no pet.) (mem. op.)); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (suit brought by the state to recover money lost in welfare fraud scheme); *Huffman*, 420 U.S. at 505 (state-initiated proceeding to enforce obscenity laws). And last, there was an investigation leading to the Quo Warranto Action. ECF 1-2; *Middlesex*, 457 U.S. at 433 (noting an investigation followed by a civil complaint). There can be no doubt, therefore, that the Quo Warranto Action is one of the "civil enforcement proceedings akin to criminal prosecutions." *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 623–28 (1986). Plaintiffs concede as much. ECF 2 at 8 (comparing quo warranto actions to criminal proceedings).

If, as here, a federal court finds that a parallel state court proceeding falls into one of the three categories of cases, that federal court must next consider three factors "before invoking *Younger*." First, there must be an ongoing state court proceeding. *Middlesex*, 457 U.S. at 423. Second, the proceedings must "implicate important state interests." *Id.* And third, the federal plaintiffs must have had an "adequate opportunity in the state proceedings to raise constitutional challenges." *Id.*

Jolt's lawsuit meets each of these requirements. At present, the Quo Warranto Action is still pending in state court, thus making it an ongoing state judicial proceeding. *See id.* The Quo Warranto Action also implicates an important state interest. *See id.* The integrity of our elections is central to our republican system. "Any corruption in voter registration affects a state's paramount obligation to ensure the integrity of the voting process and threatens the public's right to democratic government." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 394 (5th Cir. 2013) (citing

*Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181, 196 (2008)). If Jolt-sponsored VDRs are accepting voter registration applications from individuals who are not eligible to vote and subsequently delivering them to county registrars, as is alleged in the Quo Warranto Action, this would threaten the integrity of Texas elections. There can therefore be little doubt that Texas's actions in the state court implicate the important state interest of protecting and maintaining the security of the electoral process. *See Middlesex*, 457 U.S. at 423.

Plaintiff can also raise its federal challenges in state court. *See id.* It can undoubtedly raise its first amendment challenge in state court. *See, e.g.*, *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 408 (Tex. App.—Eastland 2002, pet. denied) (affirming a lower court's decision to dismiss a first amendment retaliation claim because "no actual constitutional violation occurred"); *Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010) (adopting the Fifth Circuit test for a prisoner's first amendment retaliation claim). Plaintiff can also raise its VRA challenge in state court. While Texas courts have held that they lack jurisdiction to hear *claims* arising under the VRA, *see Rodriguez v. Beaumont Indep. Sch. Dist.*, 413 S.W.3d 524, 530 (Tex. App.—Beaumont 2013, no pet.) ("Under the Voting Rights Act, Congress gave federal courts jurisdiction to address the enforcement of the Act; it did not give state courts jurisdiction over Voting Rights Act claims."). Plaintiff is not precluded from asserting a defense that the VRA would defeat the Quo Warranto Action, either jurisdictionally or otherwise. *Cf. Hathorn v. Lovorn*, 457 U.S. 255, 266 (1982) ("Most important for our purposes, even a finding of exclusive federal jurisdiction over claims arising under a federal statute usually 'will not prevent a state court from deciding a federal question collaterally.'"). And this makes sense. If Plaintiff raises a defense at the state court level that § 11(b) of the VRA would defeat the Quo Warranto Action, the Court would need to decide that issue in determining whether to dispose of the Quo Warranto Action. And so

while Plaintiff cannot bring an affirmative claim for the enforcement of § 11(b) in state court, it can nonetheless have its VRA defense adequately addressed by the state court.[1]

### b. No exception to *Younger* applies here.

Nor can Plaintiff avoid *Younger* by invoking one of the narrow exceptions to the doctrine. "*Younger* established that federal courts should not enjoin pending state criminal prosecutions unless the plaintiff shows 'bad faith, harassment, or any other unusual circumstances that would call for equitable relief,' such as a 'flagrantly and patently' unconstitutional state statute." *Google*, 822 F.3d at 222 (quoting *Younger*, 401 U.S. at 53–54). The Fifth Circuit has unequivocally stated that "the bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (citing *Hefner v. Alexander*, 779 F.2d 277 (5th Cir. 1985)). This exception "applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions." *McNatt v. Texas*, No. 93-2925, 1994 U.S. App. LEXIS 41439, at *3 (5th Cir. 1994) (citing *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Ballard v. Wilson*, 856 F.2d 1568, 1570–71 (5th Cir. 1988)).

The Attorney General did not initiate the Quo Warranto Action in bad faith or to harass Jolt. Rather, he sought revocation of Jolt's corporate charter because the circumstantial evidence gave him "probable grounds" to initiate the action. Tex. Civ. Prac. & Rem. Code § 66.002(d); *see also infra* at pp.14–15. And because there are probable grounds for the Quo Warranto Action, the Attorney General, by definition, did not bring this suit "without hope" of succeeding on his claims to revoke Jolt's corporate charter. *Perez*, 401 U.S. at 85. There is, at minimum, the chance that the Attorney General will succeed on the Quo Warranto Action, and thus it cannot have been brought in bad faith to harass Jolt. *See id.* Instead, Texas, through the Attorney General, simply seeks to sanction Jolt if the discovery in the Quo Warranto Action confirms the Attorney General's well-

---

[1] Importantly, Jolt has not even attempted to bring these challenges in State Court, instead opting to run to this Court at its first opportunity. *See* Ex. 1 (General Denial filed in the Quo Warranto Action).

grounded suspicions that Jolt is, indeed, violating election law to the detriment of Texas's election integrity.

## II.    Jolt is unlikely to succeed on the merits of its claims.

The Attorney General initiated the Quo Warranto Action against Jolt on the grounds that Jolt misuses its employees and volunteers, including Volunteer Deputy Registrars ("VDRs"), to accept and submit unlawfully submitted voter registration applications to the county registrars in violation of the Texas Election Code. ECF 1-3 at 4. Jolt alleges the Quo Warranto Action is First Amendment retaliation for (1) Jolt's protected voter registration activity and (2) Jolt's prior lawsuit challenging Defendant's RTE. ECF 2 at 6. Jolt also alleges the Quo Warranto Action constitutes impermissible intimidation under section 11(b) of the Voting Rights Act. ECF 2 at 19. Jolt's allegations are erroneous, and Jolt is simply using allegations of partisanship and the fact that it is registering voters and participating in elections as a shield to keep Texas from uncovering wrongdoing. Jolt is unlikely to succeed on the merits of these claims and Jolt's request for a preliminary injunction should be denied.

### a.   Jolt is unlikely to succeed on the merits of its First Amendment retaliation claims because the Attorney General did not retaliate against Jolt for engaging in protected activities.

The Attorney General initiated the Quo Warranto Action because of Jolt's suspected illegal registration of voters—*not* in retaliation for Jolt's protected activities. To establish a First Amendment retaliation claim, a plaintiff must show (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001)). To do this, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Once the plaintiff does so, the burden shifts to the defendant to show it would have engaged in the

same conduct in the absence of the protected conduct. *Mt. Healthy City. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the protected conduct was not the but-for cause of the defendant's action, then the plaintiff's claim fails. *Nieves v. Bartlett*, 587 U.S. at 399.

Jolt is unable to carry its initial burden of establishing a substantial causal connection between the Attorney General's alleged retaliatory animus and the Quo Warranto Action. A preliminary injunction should be denied on this basis alone. However, even assuming *arguendo* that Jolt carried its initial burden, the preliminary injunction should be denied because Jolt's protected activities were not the but-for cause for the Quo Warranto Action.

### 1. Jolt was engaged in an unprotected activity—maintaining a suspected policy of accepting voter registration applications from illegal aliens.

First Amendment protection ends where criminal activity begins. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now."). It is axiomatic in American law that some voter registration activities involve constitutionally protected speech, such as "'urging' citizens to register; 'distributing' voter registration forms; 'helping' voters fill out their forms; and 'asking' for information to verify that registrations were processed successfully." *Voting for America, Inc. v. Steen*, 732 F.3d at 389. But this does not mean *all* voter registration activities are protected speech or that the protected activities are untouchable by law. *Id.*, 732 F.3d at 388 ("[W]e are unpersuaded that the smorgasbord of activities comprising voter registration drives involves expressive conduct or conduct so inextricably intertwined with speech as to require First Amendment scrutiny."). The Supreme Court "has repeatedly explained that non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves expressive speech." *Id.*, 732 F.3d at 389 (citing *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 297–98 (1984)). For example, the Texas Election Code prohibits knowingly or intentionally making a false statement on a voter registration application. Tex. Elec. Code § 276.018. And it is a criminal offense for a person to request, command, coerce, or attempt

11

to induce another person to make a false statement on a registration application. Tex. Elec. Code § 13.007. No reasonable person (or court) could interpret either of these actions to be protected First Amendment activity. While VDRs are required to submit completed voter registration applications to the deputy voter registrar, Tex. Elec. Code § 13.042, that duty ends when so doing would facilitate or constitute a crime. *See e.g.*, Tex. Elec. Code § 13.036(b) ("The registrar may terminate the appointment of a volunteer deputy registrar on a determination by the registrar that the volunteer deputy . . . engaged in any other activity that conflicts with the responsibilities of a volunteer deputy registrar under this chapter."). Here, the Attorney General initiated the Quo Warranto Action based on evidence of potential illegal voter registration activity. By representing to a member of the public that he would have to accept and submit a voter registration application from someone he knew to be an illegal immigrant, a Jolt VDR gave the Attorney General probable grounds to believe that Jolt is engaged in unprotected activity alongside its protected activities. Evidence of this potential unprotected activity is what motivated the Quo Warranto Action.

### 2. Jolt has not shown that the Quo Warranto Action was substantially motivated by a retaliatory animus to Jolt's protected activity.

The Quo Warranto Action was not substantially motivated by a retaliatory animus to Jolt's protected activity. Jolt claims it is "retaliatory on its face," ECF 2 at 11, based on cherry-picked statements from the Quo Warranto petition. In context, the statements illustrate the Quo Warranto Action was initiated due to Jolt's potential illegal activity and the State's need to investigate the same.

*First*, the Quo Warranto Action is not retaliation for Jolt's prior lawsuit. Jolt infers a retaliatory animus from the Quo Warranto petition's admission that Jolt's prior lawsuit affected the decision to file the Quo Warranto Action. This is incorrect. The Quo Warranto petition explains that the Quo Warranto Action was necessary to preserve the integrity of Texas elections vis-á-vis Jolt because Texas was left with no other option after the parties settled in relation to the RTE. In other words, the State filed the Quo Warranto Action to investigate Jolt's potential illegal

activities because the agreement borne out of Jolt's prior suit left the State with no alternative avenue for discovery and investigation. This is not a *retaliatory* motive. It is a practical one.

*Second*, the Quo Warranto petition's references to Jolt's protected activities do not represent a retaliatory animus but instead are included to illustrate a motive for Jolt's potentially unlawful actions. Jolt claims "[t]he only logical inference is that Defendant included these partisan smears in the quo warranto petition to broadcast his retaliatory animus toward Jolt." ECF 2 at 12. But when read in context, the references to Jolt's partisan preferences merely illustrate the potential motive behind Jolt's potential illegal voter registration efforts—"to unlawfully tilt elections against causes and candidates that they dislike." ECF 1-4 at 1. Stated another way, the petition includes references to Jolt's partisan preferences to show *why* Jolt might engage in illegal voter registration—they are not the but-for cause of the Quo Warranto Action.

Nor does the sequence of events leading up to the Quo Warranto Action immunize Jolt from suit in state court. Jolt argues that the "sequence of events" "strongly suggests" the Quo Warranto Action was motivated by political disagreement with Jolt's protected voter registration activity. ECF 2 at 13. However, mere temporal proximity between the protected activity and the adverse action is insufficient to show a claim of First Amendment retaliation on the merits. *See Cripps v. La. Dep't of Agric. and Forestry*, 819 F.3d 221, 230 (5th Cir. 2016) (holding that reliance on temporal proximity "is insufficient to show First Amendment retaliation," particularly when the challenged action is "a byproduct of the general procedure" followed in these types of actions). This is common sense. If the Attorney General believed that Jolt was engaging in unlawful activity, he would need to move quickly to curb that activity—an entirely plausible alternative to Jolt's theory. In light of this and the alternative interpretations of the petition's statements, Jolt has not shown the Attorney General maintained a retaliatory animus that substantially motivated the Quo Warranto Action, much less shown that "Jolt's protected activity was a but-for cause of the quo warranto proceeding." ECF 2 at 13.

Moreover, there are probable grounds for the Quo Warranto Action. As Jolt explained, in certain types of retaliation cases, like retaliatory prosecution and arrest cases, the plaintiff has the

burden of pleading and proving a lack of probable cause. *Nieves v. Bartlett*, 587 U.S. at 400–02 (citing *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006)). Proof of probable cause suggests that the prosecution would have occurred even without a retaliatory motive. *Hartman*, 547 U.S. at 261. On the other, hand, in the more common civil retaliation cases, such as employment retaliation, the plaintiff is not required to plead and prove a lack of probable cause, and instead the burden is on the employer to show that the adverse employment action would have occurred regardless of the protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.at 287. Quo Warranto actions are quasi-criminal civil enforcement proceedings, more similar to a prosecution than a civil employment suit, and while the distinctions made in *Nieves* and *Hartman* may not be present in this particular action, Quo Warranto actions still require a showing of probable grounds prior to the state court granting leave for the Quo Warranto Action to proceed. Tex. Civ. Prac. & Rem Code § 66.002(d). Due to the probative value of a showing of probable grounds, or lack thereof, Jolt must plead and prove a lack of probable grounds. *Cf. Hartman*, 547 U.S. at 261 (emphasizing the powerful evidentiary significance of probable cause). However, should the Court apply the *Mt. Healthy* standard instead, the Court should still consider the existence of probable grounds powerful evidence against a finding of a likelihood of success on Jolt's First Amendment retaliation claim. *See id.*

Here, the Quo Warranto Action is justified by the Attorney General's allegations that (1) Jolt sets up voter registration drives outside DPS locations where lawful voters are already offered a registration opportunity, ECF 1-4 at 5–6; (2) a Jolt VDR admitted that he would accept and submit voter registration applications from illegal aliens, ECF 1-4 at 7 n.14; (3) Jolt engages in

these same behaviors in front of Texas DPS locations statewide, ECF 1-4 at 6.[2] This information is sufficient to show probable grounds that Jolt is violating the Texas Election Code. These probable grounds are evidence the Quo Warranto Action would have been filed regardless of Jolt's protected activities. *See Hartman*, 547 U.S. at 261. In arguing that there are not probable grounds, Jolt claims the "substance" of the allegations against it were "debunked" and cites to an article from the Texas Tribune. *See e.g.,* ECF 2 at 15. But the Attorney General is unable to confirm this absent discovery, and at this early stage in the Quo Warranto Action, the facts in the petition are to be taken as true. *Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 580–81 (Tex. 2025). For these reasons, Jolt failed to carry its burden to show a likelihood that retaliatory animus motivated the Quo Warranto Action, and Jolt's request for a preliminary injunction should be denied.

### 3. The but-for cause of the Quo Warranto Action was Jolt's suspected policy of accepting voter registration applications from noncitizens.

The but-for cause of the Quo Warranto Action is not the fact that Jolt participates in *some* protected activities, but rather that the Attorney General has reason to believe that Jolt is violating Texas election law. If the Attorney General had no evidence of Jolt's potential illegal voter registration activity, he would not have brought the Quo Warranto Action. "Filing the action merely opens the door to the litigation process" which allows the Attorney General to seek discovery regarding its allegations against Jolt. *Annunciation House, Inc.*, 719 S.W.3d at 581. To determine if Jolt is, in fact, engaging in untoward voter registration activity, as it is suspected of doing, the Attorney General needs, among other things, the training materials provided to Jolt's VDRs, answers to interrogatories regarding Jolt's voter registration activities, and a corporate

---

[2] Jolt argues the quo warranto petition is also facially defective because the petition alleges no facts establishing proper venue. ECF 2 at 15 n.3. The petition does allege a substantial portion of the events or omissions giving rise to the State's claims occurred in Tarrant County. ECF 1-4 at 2. Even if this and the remaining allegations in the petition are insufficient to establish venue, it is not grounds to deny the Motion for Leave to file the *quo warranto* petition because the general venue statute is not an "unambiguous venue requirement" contemplated by *Annunciation House. See Annunciation House Inc.,* 719 S.W.3d at 581.

representative deposition.[3] If the discovery reveals no wrongdoing on behalf of Jolt, the Quo Warranto Action will fail.

This directly contradicts Plaintiff's contention that their protected First Amendment activities were the but-for cause of the Quo Warranto Action. If they were, the Attorney General would maintain the action even if he could not find any evidence of wrongdoing. *Cf. United States v. Armstrong*, 517 U.S. 456, 464 (1996) (recognizing that "courts presume that [Attorneys General] have properly discharged their official duties" in their decisions to bring enforcement actions). This cannot be the case; if there is no evidence of wrongdoing, the Quo Warranto Action will be dismissed. And so, because the but-for cause of the proceeding is not retaliatory animus for Jolt's protected activity, Jolt's First Amendment retaliation claim cannot succeed, and Jolt's request for a preliminary injunction should be denied. *See Nieves*, 587 U.S. at 399.

### b. Jolt is unlikely to succeed on the merits of its § 11(b) claims because enforcing the State's election laws is not harassment or intimidation as defined under § 11(b).

The Quo Warranto Action also does not constitute harassment or intimidation under § 11(b). While threats of legal action *can* constitute harassment under § 11(b), legitimate attempts to enforce election law are not harassment. Jolt's cited precedent is not inapposite to this principle. For example, in *Nat'l Coal. on Black Civic Participation v. Wohl*, a New York district court found plaintiffs likely to prevail under § 11(b) when the defendants orchestrated a robocall scheme stating voters' personal information would be disclosed to creditors, the CDC, and law enforcement if they voted by mail. 498 F. Supp. 3d 457, 482 (S.D.N.Y. 2020). In *LULAC v. Pub. Int. Legal Found.*, the court found the plaintiffs sufficiently pled that the defendants' actions violated § 11(b) when alleging defendants linked the plaintiffs' "names and personal information to a report condemning felonious voter registration in a clear effort to subject the named individuals to public opprobrium." No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524, at *10 (E.D. Va. Aug. 13, 2018) (*LULAC*). And *United States v. Tan Duc Nguyen* illustrates how courts have interpreted what

---

[3] Such information would be helpful in this litigation as well, and Defendant intends to move for initial discovery prior to any hearing on Jolt's requested preliminary injunction.

constitutes voter intimidation in other statutes. 673 F.3d 1259, 1265 (9th Cir. 2012). There, the court found sufficient evidence of a fair probability that a mass mailout of letters to immigrant voters which stated if they voted in the upcoming election their information would be collected and potentially shared with organizations that are against immigration violated a California law prohibiting voter intimidation. *Id.*

These schemes are distinct from the Quo Warranto Action. The fact patterns in *Wohl*, *LULAC*, and *Nguyen* involved deliberate, elaborate schemes designed to prevent certain individuals from participating in the electoral process. Not so here. The Attorney General initiating a civil proceeding against a singular organization for alleged illegal activity is not harassment; instead, it is a narrowly tailored enforcement action to investigate and sanction wrongdoing. It does not seek to prevent otherwise eligible people from accessing the franchise. The Quo Warranto Action actually accomplishes the opposite goal—it seeks to hold Jolt accountable for potentially registering ineligible individuals to vote, because doing so would dilute or otherwise diminish the right of eligible voters to participate in the electoral process. This is not harassment. It is a public servant doing his duty to protect the integrity of Texas's elections.

Based on the foregoing, Jolt has not shown a likelihood of success on its § 11(b) claim and Jolt's request for a preliminary injunction should be denied.

## III. The remaining preliminary injunction factors weigh in favor of denying preliminary relief.

The remaining factors that the Court should consider when deciding Jolt's motion, irreparable harm, the balance of harm, and the potential injunction's impact on public interest, *Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018), weigh in favor of the Attorney General. Most notably, Jolt's alleged harm does not outweigh the harm an injunction might cause. *Jones*, 880 F.3d at 759. When deciding whether to issue a preliminary injunction, courts "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). Here, Plaintiffs allegedly

suffer the harms of enforcement of the Texas Election Code, but Texas will certainly suffer irreparable harm in the event the State is precluded from enforcing its laws. *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J. in chambers); *see also Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).

If the Court were to enjoin Texas from using the Quo Warranto Action to enforce its election laws, it would severely harm Texas in two ways. First, and more wholistically, it would hamstring Texas's abilities to enforce election laws statewide. *Veasey*, 870 F.3d at 391. This is even more evident when an organization such as Jolt can use partisan arguments to shield itself from investigation or accountability. Second, and more practically, Texas would experience harm because, due to Jolt's alleged activity, there is a probability that ineligible persons are registering to vote on Jolt's watch. This harms the important state interest in election integrity, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008), and harms individual voters who will have the power of their votes diluted by otherwise ineligible voters. For those same reasons, the public interest would also not be served by the grant of a preliminary injunction. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010).

## Conclusion

For the foregoing reasons, the Attorney General respectfully requests that the Court deny Jolt's motion for preliminary injunction.

Dated: December 9, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

*/s/ Zachary L. Rhines*
ZACHARY L. RHINES
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
Brian.tung@oag.texas.gov

GREY W. JOHNSTON
Assistant Attorney General
Texas State Bar No. 24149107
grey.johnston@oag.texas.gov

COUNSEL FOR STATE DEFENDANT

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on December 9, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

MIMI MARZIANI
Texas Bar No. 24091906
mmarziani@msgpllc.com

JOAQUIN GONZALEZ
Texas Bar No. 24109935
jgonzalez@msgpllc.com

MARZIANI, STEVENS & GONZALEZ PLLC
500 W. 2nd Street
Suite 1900
Austin, TX 78701
Phone: (5604-210) 343

MARY MCCORD*
JONATHAN BACKER*
JOSEPH MEAD*
WILLIAM POWELL*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9042
mbm7@georgetown.edu
jb2845@georgetown.edu
jm3468@georgetown.edu
william.powell@georgetown.edu

/s/ Zachary L. Rhines
ZACHARY L. RHINES
Special Counsel