# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| JOLT INITIATIVE, INC., | |
| *Plaintiff,* | |
| v. | CASE NO. 1:25-CV-001808 |
| KEN PAXTON, in his individual and official capacity as Attorney General of Texas, | |
| *Defendant.* | |

## DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................. iii

Introduction .............................................................................................................. 1

Background ............................................................................................................... 2

Legal Standards ........................................................................................................ 2

Argument .................................................................................................................. 3

I.    The Court should abstain from considering Jolt's claims for equitable and
      declaratory relief. ....................................................................................... 3

      A. *Younger* abstention bars Jolt's request for equitable and injunctive relief. ..................... 3

      B. Principles of comity and federalism bar Jolt's request for federal court
         intervention. ............................................................................................ 4

      C. *Burford* abstention bars Jolt's request for federal court intervention. ........................... 7

      D. *Pullman* abstention bars Jolt's request that federal courts resolve the scope of quo
         warranto authority vested in the Attorney General of Texas. ........................................ 9

II.   Sovereign immunity bars Jolt's request for monetary damages against the Attorney
      General in his official capacity. ................................................................. 11

III.  Qualified immunity bars Jolt's claims against the Attorney General in his individual
      capacity. ...................................................................................................... 12

      A. Qualified immunity bars Jolt's First Amendment retaliation claims against the
         Attorney General in his individual capacity. ..................................................... 13

      B. Qualified immunity bars Jolt's VRA § 11(b) claims against the Attorney General
         in his individual capacity. ........................................................................ 15

IV.   Jolt has not sufficiently alleged a voter was reasonably intimidated by the Quo
      Warranto Action. ..................................................................................... 18

V.    Absolute Immunity bars Jolt's claims for monetary damages against the Attorney
      General in his individual capacity. ............................................................ 19

Conclusion ............................................................................................................. 20

Certificate of Service ............................................................................................. 21

T<span style="font-size:smaller">ABLE OF</span> A<span style="font-size:smaller">UTHORITIES</span>

**Page**

**Cases**

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ...............................................................12, 14, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................3

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993)....................................................................20

*Burford v. Sun Oil Co.,*
319 U.S. 315 (1943)......................................................................7

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976) ...................................................................4

*Colson v. Grohman,*
174 F.3d 498 (5th Cir. 1999)..........................................................10

*Council on Am.-Islamic Relations—Minn. v. Atlas Aegis, LLC,*
497 F. Supp. 3d 371 (D. Minn. Oct. 29, 2020)....................................16, 17

*Crawford v. Marion Cnty. Election Bd.,*
553 U.S. 181 (2008) ...................................................................4

*D.C. Court of Appeals v. Feldman,*
460 U.S. 462 (1983) ...................................................................6

*Daves v. Dallas Cnty.,*
22 F.4th 522 (5th Cir. 2022) ..........................................................3

*Edelman v. Jordan,*
415 U.S. 651 (1974) ....................................................................11

*Giboney v. Empire Storage & Ice Co.,*
336 U.S. 490 (1949)....................................................................10

*Grisham v. Valenciano,*
No. 5:21-CV-00983, 2023 WL 367216 (W.D. Tex. Jan 20, 2023) .....................14, 15

*Hale v. Townley,*
45 F.3d 914 (5th Cir. 1995)............................................................14

*Harris Cnty. Comm'rs Ct. v. Moore,*
420 U.S. 77 (1975)......................................................................10

*Hathorn v. Lovorn,*
457 U.S. 255 (1982) ...................................................................4

*Hooks v. Landmark Indus.,*
797 F.3d 309 (5th Cir. 2015) ..........................................................2

*Horizon/CMS Healthcare Corp. v. Auld,*
    34 S.W.3d 887 (Tex. 2000) ................................................................. 6

*Imbler v. Pachtman,*
    424 U.S. 409 (1976) ........................................................................ 20

*Institutional Div. of Tex. Dep't of Crim. Justice v. Powell,*
    318 S.W.3d 889 (Tex. 2010) ............................................................. 4

*Johnson v. Fankell,*
    520 U.S. 911 (1997) .......................................................................... 6

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ........................................................................ 20

*Lane v. Franks,*
    573 U.S. 228 (2014) ............................................................ 12, 13, 14

*LULAC v. Pub. Int. Legal Found.,*
    No. 1:18-cv-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) .......... 16, 17

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982) .......................................................................... 4

*Nat'l Coal. on Black Civic Participation v. Wohl,*
    498 F. Supp. 3d 457 (S.D.N.Y. 2020) ............................................ 15, 16

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.,*
    283 F.3d 650 (5th Cir. 2002) ........................................................... 10

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
    491 U.S. 350 (1989) .......................................................................... 8

*Paxton v. Annunciation House, Inc.,*
    719 S.W.3d 555 (Tex. 2025) ..................................................... 5, 8, 11

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ........................................................................ 12

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ............................................................. 6

*Plotkin v. IP Axess Inc., Etc.,*
    407 F.3d 690 (5th Cir. 2005) ............................................................. 3

*Quern v. Jordan,*
    440 U.S. 332 (1979) ........................................................................ 12

*R.R. Comm'n of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941) .......................................................................... 9

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ............................................................. 2

*Reaves v. City of Corpus Christi,*
  518 S.W.3d 596 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) ..................................5

*Santander v. Salazar,*
  133 F.4th 471 (5th Cir. 2025) ......................................................................... passim

*Staples v. State,*
  245 S.W. 639 (Tex. 1922) ....................................................................................... 8

*Tafflin v. Levitt,*
  493 U.S. 455 (1990) ............................................................................................... 6

*Whatley v. City of Vidalia,*
  399 F.2d 521 (5th Cir. 1968) ................................................................................15

*Wightman v. Tex. Supreme Court,*
  84 F.3d 188 (5th Cir. 1996) ................................................................................... 4

*Will v. Mich. Dep't of State Police,*
  491 U.S. 58 (1989) ...............................................................................................11

*Younger v. Harris,*
  401 U.S. 37 (1971) .................................................................................................1

**Constitutional Provisions**

Tex. Const. art. IV, § 1 ................................................................................................. 20

Tex. Const. art. IV, § 22 .......................................................................................4, 5, 20

**Statutes**

Tex. Elec. Code § 1.012 ................................................................................................19

Tex. Elec. Code § 13.007(a)(2) ....................................................................................10

Tex. Elec. Code § 13.033 ........................................................................................10, 19

Tex. Elec. Code § 13.034 ..............................................................................................19

Tex. Elec. Code § 13.036 ..............................................................................................10

Tex. Gov't Code §§ 552.001–.407 ...............................................................................19

Tex. Gov't Code § 552.1175(a)(21) .............................................................................19

Tex. Gov't Code § 552.1175(b) ....................................................................................19

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 3

**Federal Statutes**

52 U.S.C. § 10307(b)....................................................................................................15

Defendant Ken Paxton, in his official capacity as Attorney General of Texas and in his individual capacity, (the Attorney General) hereby files this Motion to Dismiss and would show the Court as follows:

**INTRODUCTION**

The Court should dismiss Jolt's claims. Functionally, Jolt's ultimate goal in filing this action is to immunize itself from negative consequences stemming from its alleged unlawful voter registration activity. Put another way, Jolt shields itself from any repercussions by hiding behind its political preferences while simultaneously using this Court as a sword to wield against a perceived political opponent.

Occam's razor posits that, when faced with two different explanations for the same phenomenon, one should assume the simplest explanation is the truth. When you hear hoofbeats, think horses—not zebras. Here, Jolt would have the Court believe that the hoofbeats it hears herald a stampede of unicorns. The Attorney General believes that Jolt is violating state election law, plain and simple. *See* ECF 1 at 14 (screenshotting the Attorney General's post which states he initiated the Quo Warranto Action against Jolt "for unlawfully registering illegals to vote in Texas"). Because of that, he initiated an investigation. When that investigation was shut down, he initiated a state court action (the Quo Warranto Action) to revoke Jolt's corporate charter if the discovery in that action showed evidence of illegal activity.

At the outset, Jolt's claims for declaratory and injunctive relief should be dismissed wholesale under the precedent set in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, along with several other well-recognized abstention doctrines. The state court should have the opportunity to decide whether Jolt is violating election law, especially given that Jolt has the opportunity to raise its federal challenges in that forum. And Jolt's claims for damages should also be dismissed on theories of sovereign immunity and qualified immunity. Sovereign immunity bars any damages claims against Texas or any state officers operating in their official capacities. Qualified immunity, on the other hand, warrants dismissal of Jolt's individual capacity claims because they have not demonstrated that the Attorney General violated a clearly established right

by filing the Quo Warranto Action. If this Court were to determine that qualified immunity did not apply, it would severely limit the power of state law enforcement officials to enforce violations of state law.

### BACKGROUND

The Attorney General incorporates by reference the information set forth in the Background section of his response to Jolt's Motion for Preliminary Injunction. *See* ECF 24 at 7–10.

From a 10,000-foot view, Plaintiff Jolt is a nonprofit corporation that operates with the stated goal of boosting Latino participation in Texas's elections. ECF 1 at 3. One of the main civic activities in which Jolt engages is the running of voter registration drives. ECF 1 at 4. But after some disturbing reports that Jolt was potentially engaging in illicit activity, the Attorney General initiated an investigation into Jolt by sending a Request to Examine (RTE) some of Jolt's documents. ECF 24 at 9. Jolt fought the RTE tooth and nail by filing a federal lawsuit. Compl., *Jolt Initiative v. Ken Paxton*, No. 1:24-cv-1089 (W.D. Tex. filed Sept. 13, 2024) (*Jolt I*). That lawsuit was eventually settled, and the Attorney General agreed to rescind the RTE.

Shortly thereafter, still suspicious of Jolt's activities, the Attorney General filed a motion for leave to initiate a quo warranto action against Jolt (the Quo Warranto Action). *State of Texas v. Jolt Initiative, Inc.,* Cause No. 352-371410-25 (352nd Dist. Ct., Tarrant County, Tex., filed on Oct. 23, 2025) (*Jolt II*). Instead of countering the Quo Warranto Action in the proper venue—state court—Jolt immediately ran to the federal courthouse and filed this suit seeking declaratory, injunctive, and monetary relief. *See generally* ECF 1.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus.,* 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Qualified immunity can be asserted in a 12(b)(6) motion to dismiss. *See, e.g.*, *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

ARGUMENT

Given the similarities in the Attorney General's defenses, the Attorney General incorporates by reference the arguments made in his response to Jolt's motion for preliminary injunction (ECF 24) and would respectfully request that the Court consider those arguments in conjunction with the arguments set forth below.

## I. The Court should abstain from considering Jolt's claims for equitable and declaratory relief.

### A. *Younger* abstention bars Jolt's request for equitable and injunctive relief.

As outlined at length in the Attorney General's response to Jolt's motion for preliminary injunction, ECF 24 at 11–15, *Younger* and its progeny preclude the Court from granting Jolt's requested injunctive relief. The Attorney General incorporates by reference the arguments made in his response, and additionally would show the Court as follows:

The *Younger*-abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022). It precludes federal courts from interfering with ongoing, parallel state proceedings where there is an ongoing state court proceeding that implicates important state interests, and plaintiffs have an adequate opportunity to raise their

federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Each of these preconditions are present here. The Quo Warranto Action is ongoing. Election integrity is plainly an important state interest. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."). And Jolt can raise both its federal first amendment and statutory challenges in state court. It can undoubtedly raise its first amendment challenge in state court. *See, e.g., Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010). Jolt is not precluded from asserting its VRA challenge as a defense to the Quo Warranto Action. *Cf. Hathorn v. Lovorn*, 457 U.S. 255, 266 (1982) ("Most important for our purposes, even a finding of exclusive federal jurisdiction over claims arising under a federal statute usually 'will not prevent a state court from deciding a federal question collaterally.'" (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 452 U.S. 473, 483, n.12 (1981))).

Further, no exception to *Younger* applies because the Quo Warranto Action was not initiated in bad faith or to harass. The Fifth Circuit has unequivocally stated that "[t]he bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (citing *Hefner v. Alexander*, 779 F.2d 277 (5th Cir. 1985)). Instead, Texas, through the Attorney General, seeks to use the power with which it has been constitutionally entrusted to pursue a Quo Warranto Action against Jolt because sufficient cause exists based upon violations of the Texas Election Code. Tex. Const. art. IV, § 22.

## B. Principles of comity and federalism bar Jolt's request for federal court intervention.

In addition to *Younger*, principles of comity and federalism would require this Court to abstain from intervention. Jolt's action reflects an attempt to take advantage of a fundamental difference between the federal pleading standards invoked by Jolt and the governing standards applicable to the parallel Texas state-court Quo Warranto Action. Not all cases raising abstention issues fit neatly into established categories. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (recognizing that *Colorado River* itself did not fit within abstention

categories, but that consideration of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" justified declining duplicative proceedings).

Jolt's federal challenge appears to be, in part, to the initial pleadings in the Quo Warranto Action. It seeks to hold the Attorney General to the heightened federal standard rather than the applicable sufficiency-of-the-pleadings standard dictated by Texas law. *Paxton v. Annunciation House, Inc.,* 719 S.W.3d 555, 580 (Tex. 2025). Jolt complains that the allegations asserted in the Quo Warranto Action are conclusory, ECF 2 at 11–12, yet it avoids invoking the federal *Twombly/Iqbal* standard. Of course, this is intentional; that standard does not apply in Texas state court. *See Reaves v. City of Corpus Christi,* 518 S.W.3d 596, 610 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) ("Certain fundamental features of Texas law make it impracticable to incorporate *Iqbal's* standard into this state's pleading requirements.").

The quo warranto proceeding is a special one governed by the Texas Constitution, Tex. Const. art. IV, § 22, and the statutory requirements of Chapter 66. Texas law has drawn a distinction between the evidence needed for a ruling "simply to file an information" and the evidence needed for "the merits of the quo warranto action itself . . . ." *Annunciation House,* 719 S.W.3d at 580. The state court "need only find that the petition stated a cause of action to proceed." *Id.* (quoting *State v. City of Double Horn*, No. 03-19-00304-CV, 2019 WL 5582237, at *4 (Tex. App.—Austin Oct. 30, 2019, pet. denied)).

Jolt, rather than challenging the pleadings in state court, asserting affirmative defenses, or substantively engaging beyond a motion to transfer venue, filed a federal suit to litigate the merits of the case in the forum of its choosing. ECF 24-1; ECF 24-2. But Jolt's efforts to select a more favorable forum for pleadings underscore the fundamental mismatch with the current posture of the state litigation and federal intervention because "[a] motion for leave is [] not an opportunity to litigate the entire case before it is even filed." *Annunciation House*, 719 S.W.3d at 581. Indeed, if Jolt were truly interested in engaging with the pleadings in the state forum, it should have filed Special Exceptions. Its failure to do so requires that courts "construe the pleadings liberally in

favor of the pleader." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).

By initiating this federal suit rather than engaging in the already ongoing state court litigation, Jolt seeks to capitalize on differences between state and federal pleading regimes to obtain a more favorable forum. That strategy itself demonstrates why abstention is appropriate. The divergence between federal pleading doctrines and Texas's standards governing the sufficiency of pleadings is not a mere procedural technicality. It reflects a deliberate policy choice embedded in our dual system of government, that federal and state courts are entitled to establish their own procedural rules to govern proceedings within their respective jurisdictions. State courts are not inferior tribunals, and federal courts are not authorized to police the adequacy of state-court pleadings by reference to inapplicable federal standards. *Cf. Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[W]e begin with the axiom that, under our federal system, the States possess sovereignty *concurrent* with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause.").

Respect for that structural equality is particularly important in procedural matters. As the Supreme Court has explained, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). Although Jolt seeks interlocutory intervention rather than appellate review, the principle remains the same: federal courts ought not to intrude in ongoing state proceedings by re-evaluating state-law pleadings under federal procedural doctrine.[1] Under this recognized equality of the parallel judicial systems, federal courts may not treat divergence from federal pleading practice as evidence of inadequacy or defect. *Johnson v. Fankell*, 520 U.S. 911, 919 (1997) ("The general rule, 'bottomed deeply in belief in the importance of state control of state judicial

---

[1] While the Fifth Circuit has held that "upon removal, the federal pleading standards control," *Peña v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018), this is not a case that has been removed. Rather, this is an original filing seeking to hold pleadings filed in state court, on issues of state law, and filed in accordance with state procedure, to federal standards.

procedure, is that federal law takes the state courts as it finds them.'" (quoting *Howlett v. Rose,* 496 U.S. 356, 372 (1990))). Yet, this is precisely what Jolt invites this court to do. Jolt asks this court to intervene in active state litigation based on dissatisfaction with Texas's pleading framework.

That state and federal pleading standards are distinct does not create a cause of action, but it ought to give the Court pause when considering intervention in the Quo Warranto Action. The greater the disconnect between the legal standards invoked in federal court and those governing the parallel state proceedings, the stronger the case for abstention. Jolt's arguments depend entirely on importing federal pleading concepts into a forum where they do not belong. That purposeful mismatch is evidence that this dispute is not suited for federal adjudication but rather ought to remain in the court where it was initially brought, where the governing standards are readily understood and consistently applied.

For these reasons, abstention is warranted. Jolt's reliance on federal pleading concepts to attack pleadings that satisfy Texas's sufficiency-of-the-pleadings requirements demonstrates a fundamental misalignment between the forum in which the case is properly situated and the forum where Jolt would rather do battle. That misalignment, viewed through the lens of comity, confirms that the action properly belongs in state court and that this Court should decline to exercise jurisdiction.

## C. *Burford* abstention bars Jolt's request for federal court intervention.

Texas maintains a longstanding system for supervising its own civil-procedure framework, including the deliberate use of relaxed pleading standards and its procedural corollary, the "special exceptions" mechanism. This framework reflects a considered policy judgment by the State regarding how claims should be pled, refined, and adjudicated in Texas courts. Federal intervention, inserting federal pleading requirements into pleadings filed originally in Texas state courts, would disrupt Texas's carefully calibrated approach to civil litigation.

The Court should decline to exercise jurisdiction under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), because adjudicating this matter in federal court would disrupt Texas's coherent and longstanding system for supervising its own civil-procedure framework: specifically, the "special

exceptions" motion. Burford abstention is appropriate when asserted timely and when adequate state-court review is available and "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist.,* 424 U.S. at 814). Both concerns are implicated here.

The scope of quo warranto authority granted to the Attorney General by the Texas Constitution is a complex question of state law that is of paramount importance to the public and its import extends far beyond the controversy between the parties in this litigation. *See, e.g.*, *Annunciation House,* 719 S.W.3d at 571 ("[T]hose who framed and ratified our 1876 Constitution saw fit to elevate to a constitutional level the attorney general's twin powers to inquire into the misuse of charter rights and to file legal actions addressing such misuse"); *Staples v. State,* 245 S.W. 639, 640 (Tex. 1922). As such, the structure and application of Texas pleading standards for quo warranto proceedings are matters of state procedural policy entrusted to Texas courts, and federal intervention would disrupt that coherent policy. Intervention would be particularly disruptive to the constitutionally vested quo warranto power when such intervention is sought at the motion to leave stage where parties are "not [presented] an opportunity to litigate the entire case before it is even filed." *Annunciation House,* 719 S.W.3d at 581.

Texas's more relaxed pleading standards and its procedural corollary the "special exception" are essential components of the State's structured method for refining and clarifying claims before litigation proceeds. The special-exceptions procedure complements this standard by providing a structured method through which a party may challenge the clarity or legal sufficiency of an opponent's pleadings and require greater specificity where appropriate. The creation of the "Special Exception" reflects a policy choice by Texas to permit relaxed pleading standards, to the benefit of plaintiffs, while still obtaining the clarity benefits of more technical pleading standards

when deemed necessary by the courts, to the benefit of defendants. Indeed, Texas's maintenance of this balance reflects the state's efforts to establish a coherent policy with respect to a matter of the higher public concern: the administration of the state's judicial system. Because the relief obtainable through quo warranto actions is calibrated to the governing pleading standard, elevating that standard disrupts the State's underlying policy calculus.

However, Jolt wishes to short-circuit and exploit its lack of engagement in the state court litigation to bypass Texas's procedural safeguards by reframing state-law pleading disputes as federal sufficiency challenges. Given the original state-court proceeding, federal issuance of an anti-suit injunction would erode the state's ability to maintain its policy decision regarding the pace and proper flow of state-court civil litigation.

### D. *Pullman* abstention bars Jolt's request that federal courts resolve the scope of quo warranto authority vested in the Attorney General of Texas.

This Court should also abstain from exercising jurisdiction in this case on the basis of *Pullman* abstention. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention is warranted where (1) the case presents an unsettled question of state law, (2) resolution of that state-law question may obviate or materially alter the need to decide a federal constitutional question, and (3) the state-law issue implicates important state interests. All three elements are satisfied here.

At the core of this litigation is the scope of the Texas Attorney General's authority to invoke quo warranto proceedings under state law, particularly as applied in the context of alleged violations of the Texas Election Code. The absence of settled state-law guidance is dispositive.

One of the two unsettled issues in this case turns upon the proper construction of several provisions of the Texas Election Code governing volunteer deputy registrars. In particular, Election Code sections 13.007(a)(2) (prohibition against inducing another to make a false statement a registration application), 13.033 (denoting required certificate recognizing prohibition of "any other activity that conflicts with the responsibilities of a volunteer deputy registrar"), and 13.036 (establishing grounds for termination of a volunteer deputy registrar), have never been

interpreted by Texas courts. Tex. Elec. Code §§ 13.007(a)(2), .033, .036. Whether the conduct alleged in the Quo Warranto Action constitutes a violation of the Texas Election Code and whether Jolt's conduct constitutes a protected activity are both dependent upon state interpretation of the Texas Election Code. If the underlying conduct of Jolt's VDRs is unlawful, then Jolt's claims are groundless. *Cf. Colson v. Grohman,* 174 F.3d 498, 508 (5th Cir. 1999) (failure to establish First Amendment protection results in a failure to state an actionable claim for First Amendment retaliation); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). As such, resolution of the statutory ambiguity is dispositive as to whether Jolt states a claim and therefore whether federal jurisdiction is properly invoked.

Federal courts are not burdened with the obligation to interpret important issues of state law prior to the pronouncement of the state courts on the meaning of the state's law. Rather, where, as here, state law is uncertain or ambiguous, abstention is appropriate. *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.,* 283 F.3d 650, 653 (5th Cir. 2002) ("[F]or *Pullman* abstention to be appropriate in this case, it must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question."). Proceeding to adjudicate the federal claims now would require this Court to presume an interpretation of Texas election law that the state courts have not adopted, and risk duplicative litigation which may be later recognized, based upon the resolution of the underlying state litigation, as beyond the jurisdiction of the federal courts. *Pullman* abstention exists precisely to avoid such premature rulings based on uncertain state-law. *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975) ("[T]he federal court should stay its hand in order to provide the state courts an [o]pportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.").

Further, the legitimacy of the federal claims asserted in this case are similarly contingent upon a threshold determination of the proper scope of the Attorney General's power to initiate the Quo Warranto Action. If the Attorney General may initiate quo warranto proceedings on the basis of alleged violations of the Texas Election Code, then the federal claims posed by Jolt would be

mooted entirely or substantially narrowed. *See, e.g.*, *Annunciation House,* 719 S.W.3d at 575 (recognizing that which criminal acts may be a predicate for the invocation of the Attorney General's authority to file a quo warranto is a difficult and unresolved question of state law). This is the precise circumstance *Pullman* abstention is designed to address: where a definitive state-court construction of state law may avoid the necessity for a federal constitutional ruling. The availability and scope of quo warranto relief, and the authority of the Attorney General to invoke it based upon alleged violations of the Texas Election Code, implicate fundamental questions of state sovereignty, separation of powers, and the internal allocation of enforcement authority under Texas law. These are matters of substantial public importance that the Texas courts are uniquely positioned to resolve authoritatively.

Federal adjudication of these issues would intrude upon an area of law reserved to the state courts, undermine federalism principles, and run against the interests of judicial economy that *Pullman* abstention is intended to protect. Because this case presents a quintessential state law question of first impression, because resolution of that question may obviate the need for any federal constitutional adjudication, and because the issues implicate vital state interests, the Court should abstain under *Pullman* and dismiss or stay this action pending authoritative resolution of the core state law issues at the heart of this case.

## II.    Sovereign immunity bars Jolt's request for monetary damages against the Attorney General in his official capacity.

Sovereign immunity bars claims for monetary damages against the Attorney General in his official capacity. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Suits against a state official in his official capacity are not suits against the official but rather suits against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). These suits are "no different from a suit against the State itself." *Id.* Even if the Attorney General's sovereign immunity from suit is waived pursuant to *Ex parte Young*, the Supreme Court has consistently held that in a § 1983 action, "'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the

payment of funds from the state treasury.'" *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (quoting *Edelman v. Jordan*, 415 U.S. at 677 (citing *Ford Motor Co v. Department of Treasury of State of Indiana*, 323 U.S. 459 (1945))). Here, to the extent Jolt seeks "compensatory and punitive damages under 42 U.S.C. § 1983," ECF 1 at 22, from the Attorney General in his official capacity, such claims are barred by sovereign immunity and should be dismissed.

III. **Qualified immunity bars Jolt's claims against the Attorney General in his individual capacity.**

Qualified immunity bars Jolt's claims against the Attorney General in his individual capacity as well. "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 573 U.S. 228, 246 (2014) (unanimous) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted)). This doctrine prevents courts from awarding damages against a government official in his personal capacity unless: (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Id.* at 243 (quoting *al-Kidd*, 563 U.S. at 735). The question of whether the right was "clearly established" must be "beyond debate" at the time of the government official's action. *Id.* at 246 (quoting *al-Kidd*, 563 U.S. at 741). While a "case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* at 735.

Furthermore, a "right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Santander v. Salazar*, 133 F.4th 471, 480 (5th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "The right may not be defined at a 'high level of generality' because the question is 'whether the violative

nature of particular conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Courts must "carefully scrutinize" a plaintiff's complaint prior to subjecting public officials to the burdens of discovery. *Id.* at 478 (quoting *Longoria Next friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)). "It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate at the motion to dismiss stage." *Id.* at 478 (5th Cir. 2025) (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023)) (cleaned up).

### A. Qualified immunity bars Jolt's First Amendment retaliation claims against the Attorney General in his individual capacity.

The Supreme Court's explanation of qualified immunity in *Lane* is especially relevant to the present case. In that case, Edward Lane, previously an employee at Central Alabama Community College (CACC), brought a First Amendment retaliation claim under § 1983 against Steve Franks, the president of CACC, in his individual capacity. *Lane*, 573 U.S. at 232–34. There, Lane fired state representative Suzanne Schmitz, who was eventually indited and convicted of mail fraud and theft concerning a program receiving federal funds. *Id.* Lane, compelled by a subpoena, testified at Schmitz's trial and Lane alleged that Franks fired him for his testimony against Schmitz. *Id.*

The Supreme Court, in a unanimous opinion, found that Lane's testimony was entitled to First Amendment protection, but also that Franks was entitled to qualified immunity "because the question was not 'beyond debate' at the time Franks acted." *Id.* at 246 (quoting *al-Kidd*, 563 U.S. at 741). This was true even though previous cases had held that subpoenaed testimony was protected speech and that the "relevant constitutional rules were so clearly established at the time that qualified immunity did not apply." *Id.* at 244–45 (first citing *Martinez v. Opa-Locka*, 971 F.2d 708 (11th Cir. 1992) (per curiam); and then citing *Tindal v. Montgomery Cty. Comm'n*, 32 F.3d 1535 (11th Cir. 1994)). The Supreme Court noted that in a previous case, the Eleventh Circuit had found that a plaintiff's testimony was unprotected speech because "the plaintiff's decision to testify was

motivated solely by his desire to comply with a subpoena." *Id.* at 245 (discussing *Morris v. Crow*, 142 F.3d 1379 (11th Cir. 1998) (per curiam)). The Supreme Court explained that the debate about what case was controlling "only highlights the dispositive point: At the time of Lane's termination, Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection." *Id.* at 245.

Here, unlike in *Lane*, there is no "existing precedent" that clearly establishes "beyond debate" that a lawsuit filed by a state Attorney General to remedy a suspected violation of a state's election laws violates the First Amendment. *See al-Kidd*, 563 U.S. at 741. It is certainly not true that "every reasonable official would have understood" the Attorney General's actions violated the First Amendment. *Santander*, 133 F.4th at 480 (quoting *Mullenix*, 577 U.S. at 11).

On the contrary, the most analogous case has explicitly held that "the constitutional tort of retaliation against an individual for having filed and won a lawsuit was not so clearly established that a reasonable official would understand that actions taken with this intent violated the First Amendment" and therefore qualified immunity was appropriate. *Hale v. Townley*, 45 F.3d 914, 919–20 (5th Cir. 1995) (*Hale II*); *accord Grisham v. Valenciano*, 5:21-CV-00983, 2023 WL 367216, at *6 (W.D. Tex. Jan 20, 2023) (finding no subsequent authority after *Hale II* established broader rights). In *Hale II*, the plaintiff previously filed a successful § 1983 lawsuit against state and federal law enforcement officers. *Hale II*, 45 F.3d at 916 (citing *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990) (*Hale I*)). Afterwards, the plaintiff alleged that he was the target of investigations, harassment, and entrapment campaigns by officers from different agencies, that law enforcement officers accosted him with excessive force, and that various officers "made statements that Hale was the target of these activities because of his prior lawsuit." *Hale II*, 45 F.3d at 916–917. In *Hale II*, the plaintiff brought a § 1983 action "alleging conspiracy to retaliate for Hale's exercise of his right of access to the courts." *Id.* at 916. However, the Fifth Circuit explained that the right of access to the courts, as it was clearly established at the time of the alleged state conduct, was a "facilitative right to institute a suit without official resistance, blocks, or delay to filing." *Id.* at 919. And subsequent

14

cases have not identified any caselaw that have "clearly established" the constitutional tort of First Amendment retaliation is broader than what the Fifth Circuit described in *Hale II. See, e.g.*, *Grisham v. Valenciano*, 2023 WL 367216, at *6. Therefore, Jolt cannot meet its burden to show, beyond debate, that all reasonable officials in the Attorney General's circumstances would believe that a lawsuit filed by a state attorney general to prevent a suspected violation of a state's election laws violates the First Amendment.

###    B.    Qualified immunity bars Jolt's VRA § 11(b) claims against the Attorney General in his individual capacity.

The Attorney General is likewise entitled to qualified immunity from Jolt's § 11(b) claims against him in his individual capacity because the Attorney General did not engage in behavior that violated Jolt's clearly established § 11(b) rights.[2] *See Santander*, 133 F.4th at 480. This is because even assuming *arguendo* that Jolt sufficiently pled a violation of § 11(b), rights under § 11(b) are not clearly established. *See id.* Jolt's rights under § 11(b) are not clearly established because (1) the standard assessing § 11(b) claims is nascent and actively evolving and (2) it is not clear that every reasonable official would understand that filing the Quo Warranto Action violates § 11(b). *See id.*

Case law on § 11(b) is sparse. While it is generally agreed that § 11(b) protects against intimidating, threatening, and coercing voters (or attempting to do so), 52 U.S.C. § 10307(b), what actions constitute violations of § 11(b) and what standard courts should use to assess such claims are still unclear. For example, Courts have not conclusively established what level of intent, if any, is necessary to prove a violation of § 11(b). Some district courts have not required the plaintiff to show the defendant's subjective intent to intimidate, threaten, or coerce. *See, e.g.*, *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 476–77 (S.D.N.Y. 2020); *LULAC v. Pub.*

---

[2] Reliance on *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968), is misplaced for two reasons. First, unlike here, *Whatley* involves a case where law enforcement officers arrested minorities for helping people register to vote and brought unrelated charges that could stand on their own. Here, by contrast, the Attorney General has alleged that *some* activity undertaken by Jolt is illegal, and his Quo Warranto Action would be able to sufficiently decide that. This is unlike *Whatley*, where even if the plaintiffs engaged only in protected voting activity, they could still be convicted on trumped up ancillary charges. And second, *Whatley* addressed the sufficiency of removal pleadings rather than whether the defendants violated § 11(b) for purposes of damages under the VRA.

*Int. Legal Found.*, No. 1:18-cv-00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018). But at least one district court stated that § 11(b) requires a showing that the defendant intended to intimidate a voter and declined to address the argument that no showing of intent was necessary because the plaintiffs had shown intent. *See Council on Am.-Islamic Relations—Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 378 n.6 (D. Minn. Oct. 29, 2020). Importantly, the Fifth Circuit has not addressed this issue. *See U.S. v. Leflore Cnty.*, 371 F.2d 368, 372 n.4 (5th Cir. 1967) (stating a defendant's actions only constituted an attempt to intimidate or coerce in violation of 1971(b) if defendants were motivated by a purpose to constrain voting rights, but expressing "no view as to whether the burden placed on the Government would differ, and if so in what respects, under § 11 of the Voting Rights Act"). This split among district courts, combined with the Fifth Circuit's silence on the issue, illustrates that the standard for assessing violations of § 11(b) is not settled. Because the standard for assessing violations of § 11(b) is under debate, Jolt's rights under § 11(b) are not clearly established. *See Santander*, 133 F.4th at 480 (stating rights are clearly established when existing precedent places the statutory or constitutional question "beyond debate"). On this ground alone, the Court should find qualified immunity bars Jolt's § 11(b) claims against the Attorney General in his individual capacity.

Additionally, cases where courts *have* found violations of § 11(b) concern very different conduct than at issue here, i.e., attempting to enforce unchallenged provisions of the Texas Election Code. *See al-Kidd*, 563 U.S. at 741 (quoting *Anderson*, 483 U.S. at 640). For example, in *Nat'l Coal. on Black Civic Participation v. Wohl*, a New York district court found plaintiffs were substantially likely to prevail on their claim that a robocall scheme violated § 11(b). 498 F. Supp. 3d at 482. There, the robocall scheme was intricate and facially discriminatory—it involved recording false statements telling voters if they voted by mail their private information would be shared with the CDC to enforce mandatory COVID-19 vaccinations, debt collectors to collect outstanding debts, and local law enforcement to execute outstanding warrants. *Id.* at 482. Likewise, in *LULAC v. Pub. Int. Legal Found.*, a district court in Virgina found plaintiffs' complaint survived a motion to dismiss when the plaintiffs alleged the defendants linked the plaintiffs' personal

information to a report condemning felonious voter registration in an effort to subject the plaintiffs to public opprobrium. 2018 WL 3848404, at *4. And in *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC*, a Minnesota district court found the plaintiffs had a likelihood of success on the merits when the defendant sent private armed guards to polling locations to "protect" the polls from voters of specific political orientations. 497 F. Supp. 3d at 378–79.

Here, on the other hand, Jolt has not alleged the Attorney General engaged in any of the conduct found to violate § 11(b) such as posting armed guards outside polling locations, threatening to reveal private voter information to the public on a demeaning list, or engaging in a fraudulent robocall scheme. To the contrary, the sole act Jolt alleges is the filing of the Quo Warranto Action. ECF 1 at 21–22.

There can be no doubt that at least one reasonable government official could believe the filing of the Quo Warranto Action does not violate § 11(b). If the Attorney General cannot enforce his own state's voting laws, then who can? And as long as one reasonable government official could believe the Quo Warranto Action was not a violation of § 11(b), the Attorney General is entitled to qualified immunity. *Santander*, 133 F.4th at 480 (quoting *Mullenix*, 577 U.S. at 11). To the extent the Court concludes that lawsuits generally cannot be brought in bad faith, this general principle does not demand a waiver of qualified immunity here. This is particularly true because, in its Complaint, Jolt cites direct evidence of the Attorney General's *lawful* motive for filing the Quo Warranto Action. ECF 1 at 14. Specifically, the Attorney General stated he was suing Jolt "for unlawfully registering illegals to vote in Texas." ECF 1 at 14. It is lawful for the Attorney General to enforce the state's election laws, including those against registering illegal voters. Jolt's emphasis on the sequence of events and inferences from circumstantial evidence and insistence that the Attorney General's allegations are incorrect do not move the needle on the question of whether the Attorney General *knew* he was allegedly violating Jolt's § 11(b) rights when he filed the Quo Warranto Action. With § 11(b) case law so sparse and a constitutional imperative to enforce the State's voting rights laws—by quo warranto proceeding if necessary—it is *un*reasonable to conclude that every reasonable official knew the filing of the Quo Warranto Action

was a violation of Jolt's § 11(b) rights. It is Jolt's burden to plead facts, which, if proved, would defeat a claim of qualified immunity. *Santander*, 133 F.4th at 478. While Jolt's Complaint is rife with legal conclusions, it suffers from a dearth of *facts* showing the filing of the Quo Warranto Action violated clearly established law. *Id.* (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)) (requiring a complaint rest "on more than conclusions alone").

Moreover, it is most certainly not conclusively established that any lawsuit which has the *effect* of making a voter feel intimidated is unlawful regardless of the official's motive when initiating suit. To the contrary, whether a lawsuit is unlawful usually turns heavily on the intent of the official bringing it. *See, e.g.*, *Santander*, 133 F.4th at 482 (requiring a showing of malice for malicious prosecutions). Were it otherwise, states would never be able to enforce their voting laws as all lawsuits generally result in some feeling of intimidation or coercion. Perhaps such a rule is the best outcome for Jolt, but it is not the best outcome for the rule of law. Finding the Attorney General entitled to qualified immunity in this instance does not bar the development of case law on this topic. It does, however, maintain the integrity of the doctrine of qualified immunity. And for these reasons, the Court should find the Attorney General is entitled to qualified immunity from Jolt's § 11(b) claims against him in his individual capacity and dismiss them.

## IV.    Jolt has not sufficiently alleged a voter was reasonably intimidated by the Quo Warranto Action.

Jolt has not sufficiently alleged facts showing a plausible § 11(b) claim because Jolt has not alleged facts showing a voter was reasonably intimidated from voting or helping others register to vote because of the Quo Warranto Action. To plead a cause of action under § 11(b), a plaintiff must at least plead facts showing a voter was intimidated from voting or helping others register to vote by an action taken by the defendant. *See* 52 U.S.C. § 10307(b). This court should also require Jolt to plead facts showing the defendant's purpose was to intimidate, threaten, or coerce voters for helping others to register to vote because absent a consideration of the defendant's intent, good faith law enforcement actions would violate § 11(b). However, even if the Court proceeds on a purely effects-based analysis, Jolt has still failed to carry its burden because it has not pled facts

showing a causal connection between the Quo Warranto Action and reasonable intimidation of a voter.

Jolt's main, non-speculative and non-conclusory factual allegations supporting its claim of intimidation do not show that a voter was reasonably intimidated by the Quo Warranto Action. It alleges: (1) fear of disclosure of VDR certificates of appointment and voter registration cards to the public, ECF 1 at 18, ECF 1-4 at 24–27, 34–35., and (2) a deteriorating financial situation which led to a decline in registered voters, ECF 1 at 16–17. Taking each in turn, Jolt's fear of public disclosure is not reasonable because local governments already have access to this information, and it is available to the public. *See, e.g.*, Tex. Gov't Code §§ 552.001–.407. (all government records are public unless specific exception exists); *id.* at § 552.1175(a)(21),(b) (identities are public information, while VDRs may opt to keep certain information private); Tex. Elec. Code §§ 1.012, 13.033-.034. Additionally, the Request to Examine did not contain a threat or indication that the information the Attorney General reviewed would be released to the public. ECF 1-2. Any such allegation is mere speculation.

Next, Jolt has not alleged facts showing that its loss of donations and decline in number of registered voters were caused by feelings of intimidation, coercion, or threat due to the Quo Warranto Action. ECF 1 at 16–17. To the contrary, Jolt alleges its financial situation "required it to lay off staff" and "[t]his in turn has negatively affected Jolt's ability to register voters." ECF 1 at 17. This is not the same as alleging that the Quo Warranto Action intimidated a voter from helping others register to vote. Jolt's allegation that its deteriorating financial situation is a result of "Defendant's ongoing retaliatory campaign" does not explain any deficiency because Jolt still does not allege facts showing a causal connection between any alleged intimidation due to the Quo Warranto Action and the decline in donations. ECF 1 at 16–17. As such, Jolt has not adequately alleged a plausible cause of action under § 11(b) and Jolt's claims should be dismissed.

## V.    Absolute Immunity bars Jolt's claims for monetary damages against the Attorney General in his individual capacity.

The Attorney General is also entitled to absolute immunity. *See Kentucky v. Graham*, 473

U.S. 159, 166–67 (1985). It is well established that advocates are entitled to absolute immunity when their challenged activities are an "integral part of the judicial process" and when "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). "In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a 'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it . . . .'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70 (1993) (cleaned up).

Here, the Quo Warranto Action is an "integral part of the judicial process" like "initiating a prosecution." *Imbler*, 424 U.S. at 430–31. In fact, the Texas Constitution explicitly states that the "Attorney General . . . shall especially inquire into the charter rights of all private corporations," and "shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters." Tex. Const. art. IV, § 22. The federal constitution vests "[t]he executive Power" in the President, U.S. Const. art. II, § 1, while the Texas Constitution vests the executive power in the Governor, Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and the Attorney General. Tex. Const. art. IV, § 1. The Attorney General, to fulfill his constitutional duties and to exercise the State of Texas' sovereign powers, files lawsuits in court. This function, like how individual prosecutors file lawsuits in court, is subject to absolute immunity.

## CONCLUSION

For these reasons, the Court should grant the Attorney General's Motion to Dismiss and dismiss Jolt's claims in their entirety.

20

Dated: December 15, 2024

Respectfully submitted,

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

**Ralph Molina**
Deputy First Assistant Attorney General

**Ryan D. Walters**
Deputy Attorney General for Legal Strategy

**Ryan G. Kercher**
Chief, Special Litigation Division

*/s/ Zachary L. Rhines*
**Zachary L. Rhines**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

**Ali M. Thorburn**
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

**Brian B. Tung**
Assistant Attorney General
Texas State Bar No. 24145179
Brian.tung@oag.texas.gov

**Grey W. Johnston**
Assistant Attorney General
Texas State Bar No. 24149107
grey.johnston@oag.texas.gov

Office of the
Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**Counsel for State Defendant**

### Certificate of Service

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on December 15, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Zachary L. Rhines*
**Zachary L. Rhines**
Special Counsel