# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOLT INITIATIVE, INC., <br><br>      *Plaintiff,* <br><br>      v. <br><br> KEN PAXTON, in his individual and official capacity as Attorney General of Texas, <br><br>      *Defendant.* | CASE NO. 1:25-CV-001808 |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

i

TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................... iii

I.    Abstention is proper in this case. ....................................................................1

II.    The Attorney General is entitled to qualified immunity.......................................3

    A. Jolt did not plead a viable First Amendment retaliation claim........................3

    B. Jolt failed to show that the Attorney General violated a constitutional right that was "clearly established beyond debate." ..................................................... 4

Conclusion ........................................................................................................................10

Certificate of Service.........................................................................................................11

<u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)........................................................................... 4

*Bailey v. Iles*,
87 F.4th 275 (5th Cir. 2023).....................................................................................10

*Cripps v. State Dep't of Agric. & Forestry*,
819 F.3d 221 (5th Cir. 2016)..................................................................................... 4

*Haw. Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984) ................................................................................................... 2

*Hope v. Pelzer*,
240 F.3d 975 (11th Cir. 2001) ...................................................................................5

*Hope v. Pelzer*,
536 U.S. 730 (2002) ...........................................................................................5, 6, 7

*Keenan v. Tejada*,
290 F.3d 252 (5th Cir. 2002) ...............................................................................4, 10

*Mullenix v. Luna*,
577 U.S. 7 (2015)....................................................................................................... 4

*Murray v. Earle*,
405 F.3d 278 (5th Cir. 2005)..................................................................................... 4

*Nat'l Rifle Ass'n of Am. v. Vullo*,
144 F.4th 376 (2d Cir. 2025), *cert. docketed*, No. 25-479 (U.S. Oct. 20, 2025) .......... 8

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ..........................................................................................8, 9, 10

*Netflix, Inc. v. Babin*,
88 F.4th 1080 (5th Cir. 2023) .................................................................................... 9

*New Ga. Project, Inc. v. AG*,
106 F.4th 1237 (11th Cir. 2024) ................................................................................ 2

*Pearson v. Callahan*,
555 U.S. 223 (2009) ................................................................................................... 4

*Porter v. Epps*,
659 F.3d 440 (5th Cir. 2011) ..................................................................................... 4

*Reaves v. City of Corpus Christi*,
518 S.W.3d 594 (Tex. App.—Corpus Christi—Edinburg 2017, no pet.) ................................1, 3

*Rivas-Villegas v. Cortesluna*,
595 U.S. 1 (2021)........................................................................................................7

*Santander v. Salazar*,
    133 F.4th 471 (5th Cir. 2025) ........................................................................... 4

*Taylor v. Riojas*,
    592 U.S. 7 (2020) ...........................................................................................6, 7

*Taylor v. Stevens*,
    946 F.3d 211 (5th Cir. 2019)........................................................................... 6

*Voting for Am., Inc. v. Steen*,
    732 F.3d 386 (5th Cir. 2013)........................................................................... 4

*Woods v. Smith*,
    60 F.3d 1161 (5th Cir. 1995) .........................................................................10

*Wyatt v. Fletcher*,
    718 F.3d 496 (5th Cir. 2013).........................................................................10

**Other Authorities**

Leading Case, *Qualified Immunity-Obviousness Standard- Taylor v. Riojas*, 135 Harv. L.
    Rev. 421 (2021) ...........................................................................................7

Plaintiff, Jolt Initiative, Inc. (Jolt), raises several points in its response (ECF 31) to the Attorney General's Motion to Dismiss (ECF 26). Many of these points are inaccurate or misguided, and so the Attorney General now addresses the most important points below.

## I.    Abstention is proper in this case.

Jolt spends the bulk of its response addressing whether abstention is warranted. ECF 31 at 4–11. But in doing so, Jolt deals in inaccurate absolutes and assumptions, as opposed to the facts on the ground. These points are easily defeated.

*First*, Jolt argues that *Younger* abstention is unwarranted because the Quo Warranto Action is not akin to a criminal proceeding. ECF 31 at 4. Its main gripe is simply that the Attorney General used the phrase "investigate" in his opposition to Jolt's preliminary injunction motion and cites this as evidence that the Quo Warranto Action is not a similar to a criminal prosecution and thus subject to *Younger*. Jolt's argument is nothing more than a cop-out. Phrasing aside, the Attorney General has shown at length that the Quo Warranto Action meets the requirements to be considered akin to a criminal prosecution. *See* ECF 24 at 11–12 (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 60, 79–80 (2013)).

If that were not enough, Jolt's unnatural attachment to the use of the word "investigate" is belied by the unequivocal statement that "[t]he purpose of the Quo Warranto Action is to sanction Jolt for its unlawful voter registration scheme." ECF 24 at 12. And the Texas Constitution gives the Attorney General the power to sanction Jolt if, during the course of discovery and after probable grounds for leave to file the Quo Warranto Action have been found, the Attorney General has evidence linking Jolt to illegal activity. That the Attorney General may need to discern additional facts during discovery is immaterial—Texas employs a less stringent pleading standard than do federal courts, *see Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 599–600 (Tex. App.—Corpus Christi—Edinburg 2017, no pet.), and he is entirely within his rights to use the discovery process to prove the truth of his allegations.

*Second*, Jolt incorrectly contends that "proceedings of substance" have already taken place, and thus *Younger* abstention is not proper. ECF 31 at  4. In support of its contention, Jolt cites

1

*Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 (1984). But *Midkiff* is inapposite to this case. There, the Supreme Court held that the district court properly declined to exercise *Younger* abstention in part because a federal suit had been initiated prior to any state lawsuit. *Midkiff*, 467 U.S. 237–39. The same is not true here. While Jolt did initiate an action (*Jolt Initiative v. Ken Paxton*, No. 1:24-cv-1089 (W.D. Tex. filed Sept. 13, 2024) (*Jolt I*)) against the Attorney General in response to his Request to Examine (RTE), that is not a "proceeding of substance" as contemplated by *Midkiff*. In fact, it cannot be—one of Jolt's contentions is that the Quo Warranto Action is direct retaliation for *Jolt I*. *See* ECF 1 at 20 ("Defendant's quo warranto proceeding is expressly premised not only on Jolt's protected expression and association, but also on Jolt's efforts to challenge Defendant's invasive and unconstitutional RTE in federal court."). The original federal lawsuit cannot be a "proceeding of substance" relating to alleged acts of retaliation that had not even taken place at its filing, and thus, this argument fails.

Moreover, "in determining whether *Hicks*'s 'proceedings of substance on the merits' criterion is satisfied, [courts] look to 'the time that the district court has spent considering the case, any motions ruled on, any discovery, the number of conferences [or hearings] held, and any change in the parties' position as a result of the federal litigation.' " *New Ga. Project, Inc. v. AG*, 106 F.4th 1237, 1243 (11th Cir. 2024) (citing *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1272 (11th Cir. 2019) (alteration in original) (quotation marks omitted)). But in *Jolt I*, the Court issued no substantive orders on the merits; instead, the Parties filed a Joint Stipulation of Dismissal to conclude *Jolt I*. *See Joint Stipulation of Dismissal*, *Jolt I*, No. 1:24-cv-01089-RP (W.D. Tex. Oct. 22, 2025). There can then be no doubt that *Jolt I* was not a "proceeding of substance" that would require this Court to ignore *Younger*.

*Third*, Jolt maintains that the bad faith exception to *Younger* applies here. Why? Because it doesn't like the Quo Warranto Action. To reiterate, the bad faith exception only applies to cases which have "no hope" of succeeding. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1094–95 (5th Cir. 2023). That is clearly not the case here. If, in fact, Jolt is conducting some sort of illegal voter registration scheme, it is not only possible, but probable, that the Attorney General will achieve a favorable

2

result in the Quo Warranto Action. But the *only* way to make that determination is to allow the litigation process, including discovery, to play out in state court, the proper venue for the Quo Warranto Action. The merits of the Attorney General's claims should not be left up to this Court simply because Jolt disfavors the Quo Warranto suit and is suspicious of the Attorney General's motives.

*Last*, it should not be lost on the Court that much of this dispute boils down to a difference in pleading standards. Jolt's suit is an attempt to hold the Attorney General to the *federal* pleading standard in a *state* court suit. Whether the Quo Warranto would survive a *Twombly/Iqbal* challenge makes no difference. The state court's pleading standard governs in the Quo Warranto Action, *cf. Reaves*, 518 S.W.3d at 599–600, but Jolt incorrectly assumes that the Attorney General can only show that his motivations are righteous if he can provide concrete evidence of criminal activity. And while Jolt has stonewalled the Attorney General's attempts to gather evidence at every step, the Attorney General acted on a reasonable belief, instituted a suit based on that belief, and the state court litigation process will show whether he is correct. Jolt had fair notice of the claims against it and the relief sought and it is entitled to nothing more than that, no matter how much Jolt would like to litigate this case by federal standards. *Reaves*, 518 S.W.3d at 600.

## II.    The Attorney General is entitled to qualified immunity.

Jolt also fails to meet its burden to show that the Attorney General is not entitled to qualified immunity.

### A.  Jolt did not plead a viable First Amendment retaliation claim.

Jolt's allegation that the Attorney General "does not appear to contest . . . that Jolt has plausibly alleged First Amendment retaliation" is woefully misguided. *First*, under the qualified immunity standard, Jolt bears the burden of proof. *Second*, the Attorney General has repeatedly made this argument.[1] In short, it is uncontroverted that not all voter registration activities are

---

[1] Jolt states that it has met its burden for "the reasons explained in Jolt's motion for preliminary injunction." ECF 31 at 19. Similarly, the Attorney General has addressed these issues in both his *Motion to Dismiss* (ECF 26) and in his response to the preliminary injunction motion (ECF 24).

protected speech. *See, e.g.*, ECF 26 at 15, 17 (arguing if Jolt is engaging in unlawful activities, Jolt fails to state an actionable claim); *Voting for Am., Inc. v. Steen*, 732 F.3d 386, 388 (5th Cir. 2013). The Attorney General was motivated by his desire to prevent any unlawful voter registration activity, not any lawful activity. *See, e.g.*, ECF 26 at 7, 17 (making this argument and incorporating ECF 24 at 7-10); *Cripps v. State Dep't of Agric. & Forestry*, 819 F.3d 221, 230 (5th Cir. 2016); *Keenan v. Tejada*, 290 F.3d 252, 261 (5th Cir. 2002). And Jolt has failed to show that any of its alleged harms (e.g., loss of donations) are properly attributable to the Attorney General, not other actors. *See, e.g.*, ECF 26 at 18–19, 24; *Murray v. Earle*, 405 F.3d 278, 289–93 (5th Cir. 2005) (showing proximate cause required to overcome qualified immunity); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (requiring personal participation, or personal implementation of a policy, that was the moving force behind the injury).

### B. Jolt failed to show that the Attorney General violated a constitutional right that was "clearly established beyond debate."

Qualified immunity applies unless "the right was 'clearly established' at the time of the challenged conduct." *Pearson v. Callahan*, 555 U.S. 223, 243 (2009) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). And while a "case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To do this, Jolt must show that "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,'" where the identified "right may not be defined at a 'high level of generality.'" *Santander v. Salazar*, 133 F.4th 471, 480 (5th Cir. 2025) (first quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), then quoting *al-Kidd*, 563 U.S. at 742)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine how the Supreme Court has defined *when* the unlawfulness of the alleged conduct "should" have been apparent, or *when* is a question placed "beyond debate" by "existing precedent," it is useful to examine the cases upon which Jolt relies. *See* ECF 31 at 19. In *Hope*, an

4

inmate sued several prison guards, alleging that his Eighth Amendment rights were violated when he was handcuffed to a hitching post on two occasions. *Hope v. Pelzer*, 536 U.S. 730, 740–43 (2002). The inmate alleged that on one occasion he was handcuffed to the hitching post for seven hours, given water only once or twice, denied bathroom breaks, and was made to take off his shirt, so that the sun would burn his skin. *Id.* In addition, the inmate alleged that a guard taunted him about his thirst by giving water to some dogs, bringing the water cooler closer to the inmate, then kicking the cooler over to spill the water onto the ground. *Id.*

Upon review, the Eleventh Circuit held that "the policy and practice of cuffing an inmate to a hitching post or similar stationary object for a period of time that surpasses that necessary to quell a threat or restore order is a violation of the Eighth Amendment." *Hope v. Pelzer*, 240 F.3d 975, 980–81 (11th Cir. 2001), *rev'd*, 536 U.S. 730 (2002). However, the Eleventh Circuit also held that qualified immunity is required when the facts of previous cases are not "materially similar" to the alleged conduct, and that the facts of previous cases in the Eleventh Circuit, while "analogous," were not similar enough to include hitching posts. *Id.* at 981–82 (distinguishing *Gates v. Collier*, 501 F.2d 1291, 1295 (5th Cir. 1974)). This was true even though the *Gates* Court had stated that it had "'no difficulty in reaching the conclusion that these forms of corporal punishment'"—"in regard to 'handcuffing inmates to the fence and to cells for long periods of time' and other such punishments"—"run afoul of the Eighth Amendment.'" *Id.* at 979 (quoting *Gates*, 501 F.2d at 1291, 1306).

The Supreme Court reversed, finding that in "light of *Gates*, the unlawfulness of the alleged conduct should have been apparent to the respondents." *Hope*, 536 U.S. at 743.[2] The Court rejected the Eleventh Circuit's formulation of its "materially similar" test, concluding that there was not "any reason to draw a constitutional distinction between a practice of handcuffing an inmate to a fence for prolonged periods and handcuffing him to a hitching post for seven hours." *Hope*, 536 U.S. at 741–42. It concluded, "[n]o reasonable officer could have concluded that the

---

[2] *See also Hope*, 536 U.S. at 742 ("Cases decided by the Court of Appeals for the Fifth Circuit before 1981 are binding precedent in the Eleventh Circuit today.").

constitutional holding of *Gates* turned on the fact that inmates were handcuffed to fences or the bars of cells, rather than a specially designed metal bar designated for shackling." *Id.* at 742–43.

The next case provided by Jolt is similarly instructive. In *Taylor*, an inmate alleged that, for six days in September, correctional officers confined him in a pair of shockingly unsanitary cells. *Taylor v. Riojas*, 592 U.S. 7 (2020). The first cell "was covered, nearly floor to ceiling, in 'massive amounts of feces': all over the floor, the ceiling, the window, the walls, and even 'packed inside the water faucet.'" *Id.* (quoting *Taylor v. Stevens*, 946 F.3d 211, 218 (5th Cir. 2019)). Fearing contamination, Taylor "did not eat or drink for nearly four days." *Id.* Correctional officers then moved Taylor to a second, "frigidly cold" cell, which only had a "clogged drain in the floor to dispose of bodily wastes." *Id.* Taylor alleged officers refused to take him to the bathroom, so he held his bladder for over twenty-four hours because he was concerned the drain would overflow if he urinated. *Stevens*, 946 F.3d at 223. Taylor then involuntarily urinated, which caused the drain to overflow and spill sewage across the floor. *Taylor*, 592 U.S. at 8. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was forced to sleep naked in sewage. *Id.*

On review, the Fifth Circuit found that qualified immunity was appropriate. The Court noted that "Taylor stayed in his extremely dirty cells for only six days." *Stevens*, 946 F.3d at 222. The Court then reasoned that "[t]hough the law was clear that prisoners couldn't be housed in cells teeming with human waste for months on end," it had not "previously held that a time period so short violated the Constitution." *Id.* (citing *Davis v. Scott*, 157 F.3d, 1003, 1005-06 (5th Cir. 1998), for the position that there was no violation because "defendant stayed in the cell for only three days").

The Supreme Court reversed in a short opinion, stating "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." *Taylor*, 592 U.S. at 8–9. This was the first time the Supreme Court applied the "obviousness standard"—where "'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question,'" *id.* at 9 (quoting

6

*Hope*, 536 U.S. at 741), first announced as dicta in *Hope*.[3] The Supreme Court then summarily distinguished *Davis*, finding it "too dissimilar, in terms of both conditions and duration of confinement, to create any doubt about the obviousness of Taylor's right." *Id.* at 9 n.2.

Finally, Jolt gives the example of *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021). ECF 31 at 19. In that case, "[w]hile Rivas-Villegas and another officer were in the process of removing the knife and handcuffing [the plaintiff], Rivas-Villegas briefly placed his knee on the left side of Cortesluna's back." *Rivas-Villegas*, 595 U.S. at 2. Cortesluna then sued under § 1983, alleging that Rivas-Villegas used excessive force. *Id.* at 1–5. The Ninth Circuit found qualified immunity was inappropriate, reasoning "'[b]oth [a previous case] and this case involve suspects who were lying face-down on the ground and were not resisting either physically or verbally, on whose back the defendant officer leaned with a knee, causing allegedly significant injury.'" *Id.* at 5 (quoting *Cortesluna v. Leon*, 979 F.3d 645, 654 (9th Cir. 2020)).

The Supreme Court reversed. *Id.* at 5–6. In its discussion, it first acknowledged the "obviousness standard" announced in *Hope*—"'[i]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (then citing *Hope*, 526 U.S. at 738)). But because the Court found "this is not an obvious case . . . Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful." *Id.* at 6. The Court ultimately concluded that Cortesluna had "not done so" because he had not "identified any Supreme Court case that *addresses facts* like the ones at issue here." *Id.* (emphasis added).

Jolt's case suffers from the same defect. The "obviousness standard" clearly does not apply—this case is not like *Taylor*—and it is certainly not obvious that the Attorney General must have sufficient evidence to satisfy his ultimate burden of proof on the merits, without any

---

[3] *See Hope*, 536 U.S. at 741 ("Arguably, the violation was so obvious that our own Eighth Amendment cases gave respondents fair warning that their conduct violated the Constitution. *Regardless*, in light of binding Eleventh Circuit precedent . . . ."). For a balanced and helpful analysis of the state of qualified immunity law after *Taylor* and *Hope*, *see* Leading Case, *Qualified Immunity-Obviousness Standard- Taylor v. Riojas*, 135 Harv. L. Rev. 421 (2021).

discovery, before he can file a quo warranto proceeding. Therefore, the traditional test applies. *See* ECF 26 at 17–20 (describing and applying the traditional test to the present case).

The precedents provided by Jolt fail to satisfy the traditional qualified immunity test. In *Vullo*, the National Rifle Association (NRA) had engaged in activities that were "conceded violations of New York insurance law." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024).[4] In response, Vullo, the superintendent of the New York Department of Financial Services (DFS), met with senior executives at insurance firms, where "speaking on behalf of DFS and then-Governor Andrew Cuomo, [she] presented their views on gun control and their desire to leverage their powers to combat the availability of firearms, including specifically by weakening the NRA." *Vullo*, 602 U.S. at 183 (cleaned up). Vullo then offered insurance firms like Lloyd's a quid pro quo: a firm "'could avoid liability for [unrelated] infractions' if it 'aided DFS's campaign against gun groups' by terminating its business relationships with them." *Id.* at 192–93 (substitution in *Vullo*).

This viewpoint discrimination is what made Vullo's actions unlawful. While "Vullo can pursue violations of state insurance law, she cannot do so *in order to* punish or suppress the NRA's protected expression," and "her actions were aimed at punishing or suppressing speech." *Id.* at 196 (emphasis added). There is no quid pro quo in the present case. The Attorney General is not engaged in viewpoint discrimination by offering to overlook illegal behavior by third parties if they cut ties with Jolt, or by offering to overlook any illegal behavior by Jolt if it stops engaging in protected speech. The Attorney General has not even asked Jolt to stop its voter registration activity. Instead, the Attorney General seeks to determine whether Jolt, a corporate entity engaging in a regulated activity, is engaging in any illegal activity. And regulated entities do not have "'a right to absolute immunity from [government] investigation,' or a 'right to disregard [state or federal laws].'" *Id.* at 198 (substitution in *Vullo*) (quoting *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)).

---

[4] On remand, the Second Circuit held that Vullo was entitled to qualified immunity. *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 388–95 (2d Cir. 2025), *cert. docketed*, No. 25-479 (U.S. Oct. 20, 2025).

Nor do the other cases provided by Jolt satisfy the traditional qualified immunity test. In *Netflix*, a prosecutor brought a criminal indictment charging Netflix with the "promotion of lewd visual material depicting [a] child" under Texas Penal Code § 43.262. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1086 (5th Cir. 2023) (addition in *Netflix*). At the time, the prosecutor told Netflix that the "'gravamen' of the indictment was the 'suggestive way' in which the younger girls danced" and not a portion of the film where an adult access "flashes her breast for a fraction of a second." *Id.* at 1086–87. Netflix offered evidence to prove the adult actress was over eighteen years of age, which the prosecutor declined. *Id.* at 1087. After a year of inactivity in the case, a court found § 43.262 facially invalid, and Netflix filed a pretrial habeas petition to dismiss the indictment. *Id.* at 1087, 1092. In response, the prosecutor brought four new indictments under Texas Penal Code § 43.25(d), which prohibits the promotion of "sexual conduct by a child younger than 18 years of age." *Id.* at 1087. Three of the new indictments concerned clothed minor girls and their dances, and the fourth concerned the adult actress whose breast was briefly exposed.

The present case is not analogous. Here, the Attorney General, upon suspicion of possible unlawful voter registration activity, has only "sought leave," ECF 31 at 20, to access the powers provided by a quo warranto action. Then, if leave is granted, the Attorney General can take enforcement action to prevent any unlawful activity. This stands in stark contrast to *Netflix*, where the prosecutor was inactive for over a year, refused to consider evidence offered by Netflix that would have definitively proven its innocence, and brought charges that sought to penalize lawful expression, like clothed children dancing, under laws that were "clearly inapplicable." *Id.* at 1094–95 (internal citations and quotations omitted). The Attorney General does not seek to punish or discourage Jolt from engaging in any *lawful* voter registration activity, nor has the Attorney General asked Jolt to cease such activity. In fact, the Attorney General supports the registration of all those legally eligible to vote. But instead of quickly proving its innocence, like Netflix, Jolt has sought immunity from any accountability. And no corporation that operates in a regulated area has the right to be free from governmental investigation. *See Vullo*, 602 U.S. at 198.

9

Jolt's other cited precedents are similarly inapposite. In *Keenan*, two former reserve deputy constables observed unlawful police practices, resigned their positions, and reported the practices to the Bexar County district attorney and a local television station. *Keenan*, 290 F.3d at 256. In response, plaintiffs alleged that affected police officers detained the whistleblowers at gunpoint at multiple instances and heard police radio communications suggesting targeted action against plaintiffs. *Id.* at 256–57. And in *Bailey*, numerous deputies arrested Bailey at his house, without seeking an arrest warrant, even though it was well established that "under the Fourth Amendment a warrantless arrest must be based on probable case," which was clearly not met in that case. *Bailey v. Iles*, 87 F.4th 275, 280–86 (5th Cir. 2023). And in *Woods*, a prisoner was issued disciplinary charges and was sentenced to "four weeks loss of canteen, ten days isolation, and a change in quarters" because he wrote a letter to the judge overseeing the pending prison litigation notifying the judge a corrections officer warned him if he did not become an informant, "bad things would happen to him." *Woods v. Smith*, 60 F.3d 1161, 1162–64 (5th Cir. 1995).

Ultimately, Jolt cannot analogize from the cases it provided, which predominantly concern prisoners, criminal prosecutions, the Eighth Amendment, and the Fourth Amendment, to the present case, without defining a right at a higher level of generality permitted by the traditional qualified immunity test. Nor are Jolt's perfunctory citations to caselaw from other circuits sufficient to clearly explain a "robust consensus of pervasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)).

### CONCLUSION

For these reasons, the Court should grant the Attorney General's Motion to Dismiss and dismiss Jolt's claims in their entirety.

Dated: January 5, 2026

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

**BRIAN B. TUNG**
Assistant Attorney General
Texas State Bar No. 24145179
Brian.tung@oag.texas.gov

**GREY W. JOHNSTON**
Special Counsel
Texas State Bar No. 24149107
grey.johnston@oag.texas.gov

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR STATE DEFENDANT**

### CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on January 5, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel

11