## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOLT INITIATIVE, INC., <br><br>       *Plaintiff*, <br><br>       v. <br><br> KEN PAXTON, in his individual and official capacity as Attorney General of Texas, <br><br>       *Defendant*. | CASE NO. 1:25-cv-001808 |

## DEFENDANT'S AMENDED MOTION TO DISMISS

## Table of Contents

Table of Authorities ................................................................................................... iii

Introduction ...................................................................................................................1

Background ................................................................................................................... 2

Legal Standard ...............................................................................................................3

Argument .......................................................................................................................3

    I.   *Younger* abstention bars Jolt's claims for declaratory and injunctive relief. ........................ 4

    II.  Sovereign Immunity bars any claim for money damages against the Attorney General in his official capacity. .............................................................................. 11

    III. Qualified Immunity bars Jolt's claims for damages against the Attorney General in his individual capacity. ............................................................................... 11

        a.  Qualified Immunity bars Plaintiff's retaliation claims because the right is not clearly established. .............................................................................13

        b.  Qualified immunity bars Plaintiff's claims of harms not properly attributable to the Attorney General. ...............................................................................14

        c.  Qualified immunity bars Plaintiff's First Amendment Association claims.................15

    IV. Jolt has not sufficiently alleged a violation of § 11(b) of the Voting Rights Act...................17

Conclusion ................................................................................................................... 20

Certificate of Service......................................................................................................21

TABLE OF AUTHORITIES

### CASES

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ..................................................................................................16

*Ariz. Democratic Party v. Ariz. Republican Party*,
  2016 WL 8669978 (D. Ariz. Nov. 4, 2016) ...............................................................19

*Ashcroft v. al–Kidd,*
  563 U.S. 731 (2011) ................................................................................11, 12, 13, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 20

*Council on American-Islamic Relations—Minn. v. Atlas Aegis, LLC*,
  497 F. Supp. 3d 371 (D. Minn. Oct. 29, 2020) ........................................................18

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) ................................................................................................4, 16

*Daves v. Dallas Cnty.*,
  22 F.4th 522 (5th Cir. 2022)....................................................................................... 4

*Edelman v. Jordan*,
  415 U.S. 651 (1974) .................................................................................................. 11

*Gomillion v. Lightfoot*, 364 U.S. 339 (1960).................................................................17

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016)......................................................................................10

*Grisham v. Valenciano*,
  2023 WL 367216 (W.D. Tex. Jan. 20, 2023) ............................................................14

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ....................................................................17

*Hale v. Townley*,
  45 F.3d 914 (5th Cir. 1995) ........................................................................................13

*Hathorn v. Lovorn*,
  457 U.S. 255 (1982) .................................................................................................... 4

*Hicks v. Miranda*,
  422 U.S. 332 (1975) ............................................................................................6, 7, 8

*Hooks v. Landmark Indus.*,
  797 F.3d 309 (5th Cir. 2015).......................................................................................3

*Hoye v. City of Oakland,*
  653 F.3d 835 (9th Cir. 2011) ........................................................................................ 8

*In re Bay Area Citizens Against Lawsuit Abuse,*
  982 S.W.2d 371 (Tex. 1998) ........................................................................................10

*Institutional Div. of Tex. Dep't of Crim. Justice v. Powell,*
  318 S.W.3d 889 (Tex. 2010) ......................................................................................... 4

*Jolt Initiative v. Paxton,*
  No. 1:24-cv-1089 (W.D. Tex. filed Sept. 13, 2024)..............................................2, 7

*Kugler v. Helfant,*
  421 U.S. 117 (1975) ......................................................................................................10

*Lane v. Franks,*
  573 U.S. 228 (2014) ........................................................................................ 11, 12, 13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ......................................................................................................15

*LULAC v. Public Interest Legal Found.,*
  No. 1:18-cv-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018).......................18

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ....................................................................................................... 4

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977) ......................................................................................................15

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ..........................................................................................................11

*Murray v. Earle,*
  405 F.3d 278 (5th Cir. 2005) ......................................................................................14

*NAACP v. Ala. ex rel. Patterson,*
  357 U.S. 449 (1958) ......................................................................................................15

*Nat'l Coal. on Black Civic Participation v. Wohl,*
  498 F. Supp. 3d 457 (S.D.N.Y. 2020) ......................................................................18

*Nat'l Coal. on Black Civic Participation v. Wohl,*
  512 F.Supp.3d 500 (S.D.N.Y. 2021) .................................................................. 18, 19

*Nat'l Coal. on Black Civic Participation v. Wohl,*
  661 F.Supp.3d 78 (S.D.N.Y. 2023) ...........................................................................19

*Nat'l Rifle Ass'n of Am. v. Vullo,*
  602 U.S. 175, 183 (2024) ...................................................................................... 10, 16

*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) ......................................................................................... 8

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023) ................................................................................... 8, 9, 10

*New Ga. Project, Inc. v. AG*,
  106 F.4th 1237 (11th Cir. 2024) ..................................................................................... 7

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989) ....................................................................................................... 5

*Paxton v. Annunciation House, Inc.*,
  719 S.W.3d 555 (Tex. 2025) .......................................................................................... 9

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ...................................................................................................... 12

*Plotkin v. IP Axess Inc., Etc.*,
  407 F.3d 690 (5th Cir. 2005) .......................................................................................... 3

*Porter v. Epps*,
  659 F.3d 440 (5th Cir. 2011) ......................................................................................... 14

*Quern v. Jordan*,
  440 U.S. 332 (1979) ...................................................................................................... 11

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) .......................................................................................... 3

*Rivas-Villegas v. Cortesluna*,
  595 U.S. 1 (2021) ..................................................................................................... 14, 17

*Santander v. Salazar*,
  133 F.4th 471 (5th Cir. 2025) ................................................................................ 3, 12, 13

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) ...................................................................................................... 5, 6

*State of Texas v. Jolt Initiative, Inc.*,
  Cause No. 352-371410-25 (352nd Dist. Ct., Tarrant Cnty., Tex., filed Oct. 23, 2025) .............. 2

*Taylor v. Riojas*,
  592 U.S. 7 (2020) .......................................................................................................... 14

*Wightman v. Tex. Supreme Court*,
  84 F.3d 188 (5th Cir. 1996) ............................................................................................ 4

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ........................................................................................................ 11

## CONSTITUTIONAL PROVISIONS

Tex. Const. art. IV, § 22 ........................................................................................5

## STATUTES

52 U.S.C. § 10307(b) ...............................................................................17, 18, 20

Tex. Civ. Prac. & Rem. Code § 66.002(a) .............................................................5

## RULES & REGULATIONS

Fed. R. Civ. P. 12(b)(1) ..........................................................................................3

Fed. R. Civ. P. 12(b)(6) ..........................................................................................3

Defendant, Ken Paxton, in both his individual capacity and his official capacity as Attorney General of Texas, files this Amended Motion to Dismiss and respectfully asks this Court to dismiss all claims against him in this matter.

### Introduction

Behind the smoke and mirrors, this case is a simple one: Plaintiff Jolt Initiative, Inc. seeks to immunize itself from accountability. Despite the Attorney General having reason to believe that Jolt is engaging in practices violative of the Texas Election Code, Jolt has brought this suit to try and neuter the Attorney General's ability to enforce Texas law. The reason? Jolt does not like the Attorney General, and it has made this known. It has criticized the Attorney General's practices on several occasions, both publicly and to its members/supporters. ECF 39 at ¶¶ 43–44. To be clear, the Attorney General, as a public figure, receives criticism daily. In a world where inflammatory rhetoric is the norm, statements like Jolt's are commonplace.

And so, what is the purpose of these comments? The answer is simple. They provide cover for Jolt to allege that the Attorney General's investigation and subsequent Quo Warranto Action against Jolt are motivated by retaliatory animus and a desire to suppress voter registration. But this could not be further from the truth. The Attorney General believes that our political system works best when all eligible voters can have their voices heard at the ballot box. Irrespective of Jolt's comments, the Attorney General began an investigation and other legal proceedings, including the Quo Warranto Action, against Jolt because he has reason to believe that Jolt is actively attempting to subvert Texas elections by instructing its Volunteer Deputy Registrars (VDRs) to look the other way when they know or have reason to know that an ineligible individual is attempting to register to vote.

The Attorney General's valid motives notwithstanding, Jolt still believes that it can be insulated from any accountability, and asks this Court to agree with it. But it should not. The Court should dismiss Jolt's claims for several reasons. Chief among those is that a judgment by this Court on Jolt's claims for injunctive and declaratory relief would run afoul of *Younger* by interfering in a

state judicial proceeding. In addition, all of Jolt's claims for money damages are barred by qualified immunity.

## BACKGROUND

The Attorney General incorporates by reference the information set forth in the Background section of his response to Jolt's Motion for Preliminary Injunction. *See* ECF 24 at 7–10.

Jolt is a nonprofit corporation that operates with the stated goal of boosting Latino participation in Texas's elections. ECF 1 at 3. One of the main civic activities in which Jolt engages is the running of voter registration drives. ECF 1 at 4. But after some disturbing reports that Jolt was potentially engaging in illicit activity, the Attorney General initiated an investigation into Jolt by sending a Request to Examine (RTE) some of Jolt's documents. ECF 24 at 9. Jolt fought the RTE tooth and nail by filing a federal lawsuit. Compl., *Jolt Initiative v. Paxton*, No. 1:24-cv-1089 (W.D. Tex. filed Sept. 13, 2024) (*Jolt I*). That lawsuit was eventually settled, and the Attorney General agreed to rescind the RTE.

Shortly thereafter, still suspicious of Jolt's activities, the Attorney General filed a motion for leave to initiate a quo warranto action against Jolt (the Quo Warranto Action). *State of Texas v. Jolt Initiative, Inc.*, Cause No. 352-371410-25 (352nd Dist. Ct., Tarrant Cnty., Tex., filed Oct. 23, 2025) (*Jolt II*). Instead of countering the Quo Warranto Action in the proper venue—state court— Jolt immediately ran to the federal courthouse and filed this suit seeking declaratory, injunctive, and monetary relief. *See generally* ECF 1.

The Quo Warranto Action is currently stalled as the Parties argue over venue. To that end, the State, by and through the Attorney General, served limited discovery requests on Jolt to determine whether venue was proper in Tarrant County. ECF 39-5 at 9–15. One such request sought the identity of each Volunteer Deputy Registrar (VDR) dispatched by Jolt to conduct a voter registration drive. ECF 39-5 at 12. This spurred Jolt to amend its complaint. The amended complaint, ECF 39, accuses the Attorney General of attempting to violate Jolt's right to freedom of association.

2

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus.,* 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Qualified immunity can be asserted in a 12(b)(6) motion to dismiss. *See, e.g.*, *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

## ARGUMENT

The Court should dismiss Jolt's claims for four reasons. *First*, the *Younger* abstention doctrine requires this Court to allow the Quo Warranto Action to continue apace. *Second*, sovereign immunity bars any claims for money damages, to the extent Jolt brings them against the Attorney General in his official capacity. *Third*, qualified immunity precludes Jolt's individual capacity claims against the Attorney General. And *finally*, Jolt has failed to plausibly state a claim under § 11(b) of the Voting Rights Act.[1]

---

[1] The Attorney General incorporates by reference all of the facts addressed and arguments made in his response to Jolt's motion for preliminary injunction. *See generally* ECF 24.

### I.    *Younger* abstention bars Jolt's claims for declaratory and injunctive relief.

As outlined at length in the Attorney General's response to Jolt's motion for preliminary injunction, ECF 24 at 11–15, *Younger* and its progeny preclude the Court from granting Jolt's requested injunctive relief. The Attorney General incorporates by reference the arguments made in his response, and additionally would show the Court as follows:

The *Younger*-abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022) (citing *Younger v. Harris,* 401 U.S. 37,43–44, 53–54 (1971)). It precludes federal courts from interfering with ongoing, parallel state proceedings where there is an ongoing state court proceeding that implicates important state interests, and plaintiffs have an adequate opportunity to raise their federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Each of these preconditions are present here. The Quo Warranto Action is ongoing. Election integrity is plainly an important state interest. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."). And Jolt can raise both its federal first amendment and statutory challenges in state court. It can undoubtedly raise its first amendment challenge in state court. *See, e.g., Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010). Jolt is not precluded from asserting its VRA challenge as a defense to the Quo Warranto Action. *Cf. Hathorn v. Lovorn*, 457 U.S. 255, 266 (1982) ("Most important for our purposes, even a finding of exclusive federal jurisdiction over claims arising under a federal statute usually 'will not prevent a state court from deciding a federal question collaterally.'" (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 452 U.S. 473, 483, n.12 (1981)).

Further, no exception to *Younger* applies because the Quo Warranto Action was not initiated in bad faith or to harass Jolt. The Fifth Circuit has unequivocally stated that "[t]he bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (citing *Hefner v. Alexander*, 779 F.2d 277 (5th Cir. 1985)). Instead, Texas, through the Attorney General, seeks to use the power with which it has been constitutionally

entrusted to pursue a Quo Warranto Action against Jolt because sufficient cause exists based upon violations of the Texas Election Code. Tex. Const. art. IV, § 22.

There is no dispute that the State has initiated and is actively prosecuting the Quo Warranto Action against Plaintiff in Texas state court. ECF 1-3, 1-4. The Quo Warranto Action is a judicial proceeding, authorized by Texas law and long recognized in common law, brought in the name of the Texas to determine whether an entity has unlawfully exercised its vested powers, exceeded its lawful authority, or otherwise acted ultra vires. Tex. Const. art. IV, § 22 ("The Attorney General shall . . . inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law."); *see also* Tex. Civ. Prac. & Rem. Code § 66.002(a). Jolt has thus far made three arguments as to why *Younger* should not apply; all three lack merit.

**1.** Jolt first argues that the Quo Warranto Action does not fall into one of the categories of cases to which Younger applies. ECF 27 at 11. In *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, the Supreme Court outlined three different classes of cases to which *Younger* applies. 491 U.S. 350, 367–68 (1989) (*NOPSI*). As discussed at length in the Attorney General's response to Jolt's motion for preliminary injunction, ECF 24 at 11–14, the Quo Warranto Action is a "civil enforcement proceeding" that is "akin to a criminal prosecution" and thus requires federal abstention. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013) (first quoting *NOPSI,* 491 U.S. at 368, and then quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Jolt has attempted to counter by relying on its erroneous and selective reading of a single statement in the Attorney General's response to Jolt's motion for preliminary injunction that asserts the Quo Warranto Action was initiated to "investigate Jolt's potential illegal activities." ECF 27 at 4. That investigation and enforcement go hand-in-hand should be obvious, and the implication that any reference to investigation, somehow, voids Texas's prayer upon a finding of violations of the election code to "dissol[ve] . . . JOLT's corporate registration and corporate charter" makes little sense. ECF 27-2 at 19.

5

Indeed, the ultimate goal of the Quo Warranto Action—to sanction Jolt for illegal activity—is the reason for its initiation. This should be self-explanatory. But if there were any doubt, civil enforcement cases subject to *Younger* tend to share a few characteristics. *First*, they are typically brought to sanction the federal plaintiff. *Sprint*, 571 U.S. at 79 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 433–34 (1982)). *Second*, the state is "routinely a party to the state proceeding and often initiates the action." *Id*. And a third telltale sign of civil enforcement actions subject to *Younger* is that investigations are often involved. *Id*. at 79–80. Each of these three characteristics are present here, *see* ECF 24 at 12 (applying the facts of this case to those factors), and therefore, the Quo Warranto Action is a civil proceeding akin to criminal prosecution and is entitled to *Younger* abstention.

**2.** Jolt's assertion that "proceedings of substance" had already occurred in federal court, thus precluding *Younger* abstention, is likewise demonstrably incorrect. *See* ECF 27 at 3–4. It rests on a fundamental mischaracterization of both the procedural posture of this litigation and Jolt's own pleadings. A "proceeding of substance" refers to a stage of federal litigation at which the court has meaningfully engaged the merits of the dispute, such that federal adjudication has progressed beyond preliminary filings and has begun to resolve the parties' substantive rights. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975). At that point, *Younger* abstention does not apply because rather than federal court intervention in ongoing state proceedings, the reverse is true—the state court proceeding would interfere with an earlier federal one. Jolt is wrong for a few reasons.

*First*, Jolt alleges that the Quo Warranto Action was initiated because of its lawsuit in opposition to the State's enforcement efforts, specifically the RTE. ECF 39 at ¶ 115. As such, Plaintiff's theory of events forecloses any reliance upon litigation in *Jolt I* as a basis for a finding of "proceedings of substance" sufficient to defeat *Younger* abstention. Plaintiff cannot simultaneously maintain both that (1) the Quo Warranto action is an act of retaliation in response to the RTE and the termination of *Jolt I*, and (2) that federal proceedings related to the RTE constitute "proceedings of substance" as they relate to this case. Those positions are irreconcilable. If Jolt's

filing of *Jolt I*, in part, forms the basis for its claim, *Jolt I* cannot logically be a proceeding of substance that forecloses *Younger*.

Proceedings in a prior, completed lawsuit are not "proceedings of substance" where the alleged injury arose only after the earlier litigation ended. If, as Plaintiff alleges, the Quo Warranto Action was retaliatory, then it necessarily post-dates the federal litigation that Plaintiff identifies as the protected activity. As a matter of chronological coherence, a court cannot have engaged in "proceedings of substance" concerning a claim before the conduct giving rise to that claim exists.

*Second*, and separate from this chronological disconnect, "proceedings of substance" had not yet occurred. "In determining whether *Hick*'s 'proceedings of substance on the merits' criterion is satisfied, [courts] look to 'the time that the district court has spent considering the case, any motions ruled on, any discovery, the number of conferences [or hearings] held, and any change in the parties' position as a result of the federal litigation.'" *New Ga. Project, Inc. v. AG*, 106 F.4th 1237, 1243 (11th Cir. 2024) (second alteration in original) (quotation marks omitted) (citing *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1272 (11th Cir. 2019)). Whether proceedings of substance have occurred is not a formalistic inquiry, but rather an inquiry into how far the *federal courts* have "meaningfully engaged the merits" of the dispute *See id* at 1244. In *Jolt I*, the federal court has had no substantive engagement to the merits of the dispute because did not issue any substantive orders on the merits. *See id.* Instead, the Parties filed a Joint Stipulation of Dismissal to conclude based on a settlement agreement. *See Joint Stipulation of Dismissal, Jolt I*, No. 1:24-cv-01089-RP (W.D. Tex. Oct. 22, 2025).

There can be no doubt that in *Jolt I,* the federal court had engaged in no proceedings of substance such that would require this Court to ignore *Younger. See Hicks,* 422 U.S. at 349 ("[W]e now hold that where state criminal proceedings are begun against federal plaintiffs after [a] federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."). The "no proceedings of substance" requirement articulated by *Hicks* stands for the proposition that where there has been an actual investment of federal judicial authority in the matter, that federal abstention would be

7

improper as it would allow the state court to essentially treat the federal resolution of these important questions as an advisory opinion. *See Hoye v. City of Oakland,* 653 F.3d 835, 844 (9th Cir. 2011) ("The commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an 'embryonic stage.'" (quoting *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929 (1975))); *Nationwide Biweekly Admin., Inc. v. Owen,* 873 F.3d 716, 728 (9th Cir. 2017) ("[D]enial of a temporary restraining order is not a proceeding of substance on the merits" (first citing *Hicks,* 422 U.S. at 337; and then citing *Fresh Int'l Corp. v. Agric. Labor Relations Bd.,* 805 F.2d 1353, 1358 n.5 (9th Cir. 1986))). However, as here, where there have been no proceedings of substance by the federal court, failure to dismiss the federal complaint would "trivialize the principles of *Younger v. Harris.*" *Hicks,* 422 U.S. at 350. The court continued that unless the complaint were dismissed, these principles would be trivialized "absent satisfactory proof of those extraordinary circumstances calling into play one of the limited exceptions" such as bad faith or harassment. *Id.* Therefore, unless plaintiffs demonstrate satisfactory proof of bad faith or harassment, the federal complaint must be dismissed.

**3.** Despite claiming that the Quo Warranto Action was initiated in bad faith, Jolt has failed to provide evidence of bad faith or harassment sufficient to support a finding of the extraordinary circumstances necessary to compel this Court to depart from *Younger.* To begin, courts should never be "eager to find bad faith, particularly of public servants." *Netflix, Inc. v. Babin,* 88 F.4th 1080, 1091 (5th Cir. 2023). "The Supreme Court has recognized the 'longstanding presumption of regularity accorded to prosecutorial decisionmaking,' and has similarly observed that 'the Government retains broad discretion as to whom to prosecute.' Consistent with those principles, we have made clear that 'the "bad faith" exception [to *Younger* abstention] is narrow and should be granted parsimoniously.'" *Id.* (citation modified). To that end, Jolt's argument fails because it relies on a circular argument that the Quo Warranto Action was initiated in bad faith: it asserts that the quo warranto petition constitutes bad faith because the quo warranto is retaliatory, ECF 27 at 7 ("Defendant's retaliatory campaign reflects other indicia of bad faith"), and that the Quo Warranto

Action is retaliatory because it is in bad faith ECF 2 at 17 ("Defendant's bad faith allegations . . . underscores his retaliatory intent.").

In addition to this circular reasoning, Plaintiff again mischaracterizes the pleading standards and their interplay with the Attorney General's burden as evidence of bad faith: Jolt incorrectly assumes that the Attorney General can only show that his motivations are righteous if he can provide concrete evidence of criminal activity in the initial stage of pleadings: the motion for leave. ECF 27 at 8, 9; *cf. Paxton v. Annunciation House, Inc.,* 719 S.W.3d 555, 581 (Tex. 2025), reh'g denied (Sept. 26, 2025) ("A motion for leave is therefore not an opportunity to litigate the entire case before it is even filed."). To analogize, the fact that a grand jury indictment is not as thorough or conclusive as a full criminal trial is not evidence that the indictment was sought in bad faith, because the trial itself is the forum in which the State must marshal evidence and prove its case. The same principle applies here. Therefore, the mere assertion that the Motion for Leave and the petition itself, standing alone, do not satisfy the ultimate burden of proof does not transform the initiation of those proceedings into bad faith, rather, it is reflective of the ordinary sequence of adjudication under Texas law.

Further, the bad faith exception only applies to cases which have "no hope" of succeeding. *Netflix,* 88 F.4th at 1094–95. That is clearly not the case here. To illustrate, in *Netflix,* a prosecutor brought criminal charges against Netflix for promoting lewd visual material depicting a child under Texas Penal Code § 42.262. *Id.* at 1086. After a year of prosecutorial inactivity, a court declared § 42.262 facially invalid, prompting Netflix to seek habeas relief. *Id.* at 1087, 1092. The prosecutor then filed four new indictments under a different statute, laws which the Fifth Circuit deemed "clearly inapplicable." *Id.* at 1095.

This case bears no resemblance to the bad faith displayed in *Netflix.* Here, upon suspicion of unlawful voter-registration activity, the Attorney General has sought leave to proceed via Quo Warranto. Only if leave is granted may the Attorney General pursue enforcement, and only to prevent unlawful conduct. The Attorney General seeks only to determine whether Jolt is engaging in unlawful conduct. Regulated entities, such as corporations, possess no "right to absolute

immunity from [government] investigation," nor a "right to disregard [state or federal law]." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 183, 198 (2024) (alteration in original) (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958) (*NAACP*)). Unlike *Netflix,* there has been no prolonged inaction, no refusal to consider exculpatory evidence, and no effort to penalize expressive activity under laws that were "clearly inapplicable." *Netflix,* 88 F.4th at 1095. In fact, the Attorney General supports the registration of all those legally eligible to vote.

The *Younger* bad-faith exception is not satisfied here. The fact that an RTE was issued and, following its dismissal, the Attorney General continued with other enforcement proceedings does not demonstrate bad faith. Attorneys General regularly employ multiple investigative and enforcement tools, including CIDs and RTEs, and the use of one tool after the use of another does not, without more, evidence any improper motive. *See Kugler v. Helfant*, 421 U.S. 117, 124–25, 126 n.6 (1975) (noting that "bad faith" requires that the proceedings "were brought without a reasonable expectation of obtaining a valid conviction"); *Google, Inc. v. Hood*, 822 F.3d 212, 224 (5th Cir. 2016) ("CIDs are simply part of an executive branch investigation." (quoting *Major League Baseball v. Butterworth*, 181 F.Supp.2d 1316, 1321 n. 2 (N.D.Fla.2001), aff'd sub nom. *Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir.2003))).

If Jolt is conducting an illegal voter registration scheme, it is not only possible, but probable, that the Attorney General will achieve a favorable result in the Quo Warranto Action. But the only way to make that determination is to allow the litigation process, including discovery, to play out in state court, the proper venue for the Quo Warranto Action.

**4.** Last, it should be noted that Jolt can raise any of its substantive arguments at the state court level. *See Sprint*, 571 U.S. at 73 (noting that *Younger* abstention requires the federal plaintiff to be able to raise its arguments at the state court level). While this has been discussed at length in the Attorney General's response to Jolt's motion for preliminary injunction, ECF 24 at 13–14 (incorporated herein by reference), it is critical to point out that Jolt's new argument that the Attorney General has violated its associational rights can be argued before the state court as well. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375–76 (Tex. 1998) (finding that

10

a district court order violated a nonprofit organization's first amendment right to freedom of association).

For these reasons, and those incorporated by reference, Plaintiff is barred from declaratory and injunctive relief on the basis of *Younger* abstention.

## II.    Sovereign Immunity bars any claim for money damages against the Attorney General in his official capacity.

Sovereign immunity bars claims for monetary damages against the Attorney General in his official capacity. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Suits against a state official in his official capacity are not suits against the official but rather suits against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). These suits are "no different from a suit against the State itself." *Id.* Even if the Attorney General's sovereign immunity from suit is waived pursuant to *Ex parte Young*, the Supreme Court has consistently held that in a § 1983 action, "'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury.'" *Quern v. Jordan*, 440 U.S. 332, 338 (1979) (quoting *Edelman*, 415 U.S. at 677). Here, to the extent Jolt seeks "compensatory and punitive damages under 42 U.S.C. § 1983," ECF 39 at 31, from the Attorney General in his official capacity, such claims are barred by sovereign immunity and should be dismissed.

## III.    Qualified Immunity bars Jolt's claims for damages against the Attorney General in his individual capacity.

Qualified immunity bars Jolt's claims against the Attorney General in his individual capacity and requires dismissal at the pleading stage. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743 (2011); *Lane v. Franks*, 573 U.S. 228, 243 (2014) (unanimous) (quoting *al-Kidd*, 563 U.S. at 743)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Because qualified immunity is 'an immunity

11

from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted)).

A plaintiff seeking to overcome qualified immunity at the motion to dismiss stage will fail unless they plead facts showing (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Lane*, 573 U.S. at 243 (quoting *al-Kidd*, 563 U.S. at 735). Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735.

The Attorney General has not engaged in a "clearly established" violation of law. To be "clearly established" the law must place the constitutional or statutory question "beyond debate" at the time of the government official's action. *See al-Kidd*, 563 U.S. at 741. While a "case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The right may not be defined at a 'high level of generality' because the question is 'whether the violative nature of particular conduct is clearly established.'" *Santander*, 133 F.4th at 480 (quoting *al-Kidd*, 563 U.S. at 742).

The Fifth Circuit has emphasized that qualified immunity applies unless it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Mullenix*, 577 U.S. at 11). Courts, therefore, must "carefully scrutinize" a plaintiff's complaint prior to subjecting public officials to the burdens of discovery. *Id.* at 478 (quoting *Longoria Next friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)).

Critically, "'it is the plaintiff's burden to demonstrate that qualified immunity is inappropriate' at the motion to dismiss stage." *Id.* at 478 (citation modified) (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023)). As such, absent "existing precedent" placing materially similar conduct unconstitutional "beyond debate," dismissal is required. *al-Kidd,* 563 U.S. at 741.

### a. Qualified Immunity bars Plaintiff's retaliation claims because the right is not clearly established.

The Supreme Court's decision in *Lane v. Franks* illustrates why qualified immunity applies here. 573 U.S. 228. While the *Lane* Court held that a plaintiff's subpoenaed testimony was entitled to protection from retaliation under the First Amendment, it also held that the defendant was entitled to qualified immunity "because the question was not 'beyond debate' at the time [defendant] acted." *Id.* at 246 (quoting *al-Kidd*, 563 U.S. at 741). This was true even though previous precedent in the underlying circuit held that subpoenaed testimony was protected speech and that the "relevant constitutional rules were so clearly established at the time that qualified immunity did not apply." *Id.* at 244–45 (citations omitted). The Supreme Court noted that the parties' "debate over" whether the previous precedent applied "highlights the dispositive point: At the time of Lane's termination, Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection." *Id.* at 245.

Here, unlike in *Lane,* there is no "existing precedent" that clearly establishes "beyond debate" that a lawsuit filed by a state Attorney General to remedy a suspected violation of a state's election laws violates the First Amendment. *al-Kidd*, 563 U.S. at 741. It is certainly not true that "every reasonable official would have understood" the Attorney General's actions violated the First Amendment. *Santander*, 133 F.4th at 480 (quoting *Mullenix*, 577 U.S. at 11).

Rather, the Fifth Circuit has expressly held that "the constitutional tort of retaliation against an individual for having filed and won a lawsuit was not so clearly established that a reasonable official would understand that actions taken with this intent violated the First Amendment," and therefore qualified immunity is appropriate. *Hale v. Townley*, 45 F.3d 914, 919–20 (5th Cir. 1995). In *Hale*, the Fifth Circuit explained that the right of access to the courts was a "facilitative right to institute a suit without official resistance, blocks, or delay to filing." *Id.* at 919. And subsequent cases have not identified any caselaw that have "clearly established" the constitutional tort of First Amendment retaliation is broader than what the Fifth Circuit described

in *Hale*. *See, e.g.*, *Grisham v. Valenciano*, 2023 WL 367216, at *6 (W.D. Tex. Jan. 20, 2023) (finding no subsequent authority after *Hale* established broader rights).

Nor can Jolt show that the Attorney General's conduct violated "a general constitutional rule already identified in the decisional law" that applies with "obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). While "'[i]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law,'" if the case is "not an obvious case" then Plaintiff "must identify a case that put [defendants] on notice that this specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). In *Rivas-Viegas*, the Supreme Court ultimately concluded that the plaintiff had "not done so" because he had not "identified any Supreme Court case that addresses facts like the ones at issue here." *Id.*

Jolt's case suffers from the same defect. The "obviousness standard"—first applied by the Supreme Court in *Taylor* and announced as dicta in *Hope*—does not apply to the present case. This case is not like *Taylor*, and it is certainly not obvious that the Attorney General must have sufficient evidence to satisfy his ultimate burden of proof on the merits, without any discovery, before he can file a motion for leave to file a quo warranto proceeding. Therefore, the traditional qualified immunity test applies. See *supra* at 11–12 (describing and applying the traditional test).

### b. Qualified immunity bars Plaintiff's claims of harms not properly attributable to the Attorney General.

Furthermore, Jolt has failed to show that any of its alleged harms are properly attributable to the Attorney General, and not other actors. *See, e.g.*, ECF 39 at ¶¶ 84–89; *Murray v. Earle*, 405 F.3d 278, 289–93 (5th Cir. 2005) (showing proximate cause required to overcome qualified immunity); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (requiring personal participation, or personal implementation of a policy, that was the moving force behind the injury).

Jolt's amended complaint includes six newly added social media posts describing online criticism and threats. ECF 39 at ¶¶ 84–89. These posts are obscene, horrid, and morally and legally

14

reprehensible. To be clear, the Attorney General condemns any calls for violence or harassment against Jolt or any other person or entity. This fact notwithstanding, these posts do not plausibly show that the Attorney General caused the alleged harms. Plaintiff does not allege that the Attorney General authored, directed, or exercised control over any platform or user; or that these posts are anything but the independent, condemnable speech of private third parties. A government official is not liable for the independent actions of third parties responding to public events or litigation. *Cf. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–86 (1977) (requiring a showing that the allegedly constitutionally violative conduct, and not independent factors, caused the injury for retaliation claims); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explaining the harm is not fairly traceable to the defendant if the harm is caused by independent third parties).

Plaintiff's amended allegations underscore the absence of proximate causation. Because the asserted harms flow from the independent speech of third parties rather than action attributable to the Attorney General, Plaintiff fails to state a claim that overcomes qualified immunity.

### c.  Qualified immunity bars Plaintiff's First Amendment Association claims.

Jolt's newly asserted associational-rights theory fails at the threshold of qualified immunity as well. Even assuming *arguendo* that the Attorney General's discovery requests implicate associational interests, no clearly established law would have put a reasonable official on notice that seeking venue discovery concerning election officials in a quo warranto action investigating election-law compliance violates the First Amendment.

*Nat'l Ass'n for the Advancement of Colored People v. State of Ala. ex rel. Patterson* is instructive in this case. 357 U.S. 449, 462 (1958). In *NAACP,* the state sought to compel disclosure of a civil-rights organization's rank-and-file membership lists, under the predicate of investigating compliance with a business qualification statute. *Id.* at 451–53. The Court found "that compelled disclosure of affiliation with groups engaged in advocacy may constitute . . . a restraint on freedom of association" and that "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association." *Id.* at 462. However, the court

emphasized that the NAACP was not entitled to "absolute immunity from state investigation, and [have] no right to disregard [state] laws." *Id*. at 463; *see also Vullo,* 602 U.S. at 183, 198 (quoting *NAACP*, 357 U.S. at 463 for the same proposition). Indeed, the Court reminded that this inquiry depends upon the justification provided. *NAACP,* 357 U.S. at 464 ("Whether there was 'justification' . . . turns solely on the substantiality of [the State]'s interest in obtaining the membership lists."). Where the requested disclosure has no discernable "bearing" "upon the merits of these issues" it ought to be refused to prevent "the deterrent effect on the free enjoyment of the right to associate." *Id*. at 464, 466.

Here, however, the facts are materially different. Jolt is not a membership-based civil-rights or partisan advocacy organization engaged in core political expression; it is a non-partisan voter registration entity operating pursuant to, and constrained by, state election law. Discovery requests seeking information about VDRs are highly relevant to compliance with election law and the applicability of venue in Tarrant County. Each of these topics is currently in dispute in the Quo Warranto Action. *See* ECF 24-1, 39-2. Establishing facts such as residence or conduct allegedly violative of state law within that venue are not requested disclosures with no discernable "bearing" "upon the merits of the[] issues" before the court, particularly when Jolt itself placed venue at issue. *See NAACP,* 357 U.S. at 464, 466; *see generally* ECF 24-1 ( Jolt Initiative, Inc.'s Motion to Transfer Venue, or, in the Alternative, Deny Leave to File Due to Improper Venue, *State of Texas v. Jolt Initiative, Inc.,* Cause No. 352-371410-25 (352nd Dist. Ct., Tarrant Cnty., Nov. 10, 2025)).

Further, the Supreme Court "requires that there be a *substantial relation* between the disclosure requirement and a sufficiently important government interest, and that the disclosure requirement be narrowly tailored to the interest that it promotes." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (*AFP*) (emphasis added) (internal quotation marks and citation omitted). Election integrity is, without question, an important state interest. *Crawford v. Marion Cnty. Election Bd*., 553 U.S. 181, 196 (2008). Disclosure of the locations where VDRs have distributed voter registration applications and the certificates of appointment and identities of the VDRs who participated in those drives are substantially related to the dispute regarding the

applicability of venue. ECF 39-5 at 12–13. That the disclosure requests are limited in scope by location and time establishes that the requests are narrowly tailored. ECF 39-5 at 13–14.

Even assuming *arguendo* that a discovery request exceeded the proper scope of venue-related inquiry, that contention cannot overcome qualified immunity. *AFP* does not clearly establish *ex ante* the precise contours of permissible tailoring in the context of discovery, much less venue discovery. Whether something is narrowly tailored is a context-specific inquiry that turns on the government's interests and the practical realities of enforcement and the current posture of litigation. *Cf. Grutter v. Bollinger,* 539 U.S. 306, 327 (2003)(recognizing that "[c]ontext matters" when reviewing "narrow-tailoring" of "governmental action" subject to strict scrutiny); *Gomillion v. Lightfoot*, 364 U.S. 339, 343–44, (1960) ("[I]n dealing with claims under broad provisions of the Constitution, which derive content by an interpretive process of inclusion and exclusion, it is imperative that generalizations, based on and qualified by the concrete situations that gave rise to them, must not be applied out of context in disregard of variant controlling facts."). There is no controlling precedent that delineates, with the clarity required to "clearly establish" the right or render the answer "obvious" to defeat qualified immunity. *See al-Kidd*, 563 U.S. at 735; *see also Rivas-Viegas*, 595 U.S. 1, 5–6. At a minimum, reasonable officials could disagree about whether the challenged requests were appropriately tailored to determining proper venue and statutory compliance, and therefore qualified immunity applies.

## IV.    Jolt has not sufficiently alleged a violation of § 11(b) of the Voting Rights Act.

Last, Jolt has not sufficiently alleged a violation of § 11(b) of the Voting Rights Act (VRA), 52 U.S.C. § 10307(b). Jolt's § 11(b) "claim" is actually more like two claims, one claim alleging the Attorney General's actions had the "purpose and effect of intimidating" and one alleging the Attorney General "attempted to intimidate." Specifically, Jolt claims the Quo Warranto Action violates § 11(b) because it "has the purpose and effect of intimidating, or attempting to intimidate, Jolt and its associates from engaging in these federally protected activities." ECF 39 at 27. To plead a plausible claim of intimidation, Jolt must show a person was reasonably intimidated from voting

17

or helping others vote due to the Quo Warranto Action. *See* 52 U.S.C. § 10307(b). To plead a claim of *attempt* to intimidate, Jolt must show the Attorney General attempted to intimidate a person from voting or helping others to vote by filing the Quo Warranto Action and that a reasonable person would be intimidated from voting or helping others vote. *See Nat'l Coal. on Black Civic Participation v. Wohl,* 512 F.Supp.3d 500, 509 (S.D.N.Y. 2021) (reasoning that "threaten" and "intimidate" under 11(b) includes conduct that a "reasonable [person] . . . would interpret as a threat . . . intended to deter individuals from exercising their voting rights"). Jolt has not sufficiently alleged facts showing either claim.

Jolt has not shown a plausible claim of intimidation because the Amended Complaint does not contain facts showing the Quo Warranto Action reasonably intimidated a person from voting or helping others vote. Instead, Jolt's § 11(b) claim rests entirely on conjecture and fails to meet the pleading standard required under Federal Rule of Civil Procedure 12(b)(6). Jolt has not alleged facts showing Jolt or its members *actually were* intimidated from voting or helping others vote by the Quo Warranto Action. As such, Jolt has not pled a plausible cause of action for intimidation under § 11(b).

Jolt also has not alleged facts showing a plausible claim of attempted intimidation. Section 11(b) does not convert every governmental enforcement action related to election law into actionable intimidation. The statute's jurisprudential context reflects that it targets voter-suppression conduct, such as threats of violence, dissemination of false information, or public exposure of sensitive voter data to deter participation. *See generally Nat'l Coal. on Black Civic Participation v. Wohl,* 498 F. Supp. 3d 457 (S.D.N.Y. 2020); *Council on American-Islamic Relations—Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371 (D. Minn. 2020); *LULAC v. Public Interest Legal Found.*, No. 1:18-cv-00423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018). Jolt has presented no case where a court has interpreted § 11(b) to impose liability upon state officials for the lawful enforcement of state election law.

Jolt attempts to sidestep this issue by alleging fears of VDR's private information being released to the public and of retaliation and harassment by third parties on the internet. ECF 39 at

18

23. Both allegations fail for several reasons. First, Jolt has not alleged facts showing a Jolt member or employee (or Jolt, itself) was *actually* intimidated from voting or helping others vote because of these acts. Second, Jolt's alleged fear of public disclosure is speculative. Jolt has not alleged that the Attorney General threatened to disclose confidential information, nor that any such disclosure has occurred. *See* ECF 39 at 23. Jolt's speculation that the Attorney General might release information, absent a concrete threat or legal basis, cannot not amount to intimidation under § 11(b). *See Wohl,* 512 F.Supp.3d at 509 (reasoning that "threaten" and "intimidate" under 11(b) includes conduct that a "reasonable [person] . . . would interpret as a threat . . . intended to deter individuals from exercising their voting rights"). Third, the Attorney General cannot be held liable under § 11(b) for statements made by third parties on the internet.

This Court should not find Section 11(b) imposes liability on the Attorney General for the independent and intervening actions of third parties absent plausible allegations that the Attorney General directed, encouraged, or participated in that conduct. *See e.g., Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752, 2016 WL 8669978 at *10 (D. Ariz. Nov. 4, 2016) (concluding that Plaintiff's failure to produce evidence that Defendant controlled, "organized, trained, or otherwise facilitated" the third party's behavior resulted in a failure to show a likelihood of success on the merits); *Nat'l Coal. on Black Civic Participation v. Wohl,* 661 F.Supp.3d 78, 125 (S.D.N.Y. 2023) (recognizing that where defendants hired a third party, the connection was sufficient). Here, Jolt does not allege that the Attorney General engaged in or coordinated any of the alleged third-party threats. Thus, Jolt's allegations relating to third party statements do not support a plausible § 11(b) claim.

Moreover, hostile rhetoric or threatening speech by private actors, even if temporally related to government action, does not transform an otherwise lawful enforcement action into an unlawful act of voter intimidation. *Cf.* 2016 WL 8669978 at *10 (finding a plaintiff unlikely to succeed on the merits of their voter intimidation claim when they had provided no evidence that, among other things, Defendant controlled, "organized, trained, or otherwise facilitated" the third party behavior the plaintiff feared). To hold otherwise would improperly subject government

19

officials to liability whenever discourse surrounding an enforcement action becomes contentious. However, the Amended Complaint relies upon generalized assertions that the public attention caused by the Quo Warranto Action has emboldened hostile actors to threaten violence against Jolt. ECF 39 at 18. Such speculative and attenuated causal allegations are insufficient to establish causation under § 11(b).

Defendant does not dispute, for purposes of this Motion, that Plaintiff has alleged Article III standing. However, standing alone does not relieve Plaintiff of its obligation to plead facts establishing a violation of § 11(b). *See e.g., Twombly*, 550 U.S. at 570 (holding that a complaint must plead "enough facts to *state a claim to relief* that is plausible on its face." (emphasis added)). Even where standing exists, a complaint must still plausibly allege that a defendant engaged in conduct that intimidated voters within the meaning of the statute. Even assuming § 11(b) does not require traditional proximate causation, it still requires a nexus between the defendant's conduct and voter intimidation. *See* 52 U.S.C. § 10307 (prohibiting a person from taking actions which intimidate, threaten, or coerce an individual). Section 11(b) does not impose strict liability for enforcement actions that coincide with public controversy or elicit reactions from third parties. *See id*.

Finding a plausible cause of action under § 11(b) based on third party statements would impose liability whenever a lawful enforcement action generates public opposition or hostile speech. Whether § 11(b) requires proof of causation or merely conduct capable of intimidating a reasonable voter, Plaintiff's claim fails because the alleged conduct, the lawful initiation of civil enforcement proceedings against the corporate existence of Jolt Initiative Inc., does not plausibly constitute intimidation of any voter under any standard. As such, Jolt has not adequately alleged a plausible cause of action under § 11(b) and Jolt's claims should be dismissed.

## CONCLUSION

For the Foregoing reasons, the Attorney General respectfully requests that this Court dismiss all Jolt's claims.

20

Dated: January 20, 2026

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy
**RYAN G. KERCHER**
Chief, Special Litigation Division

**OFFICE OF THE**
**ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2100

Respectfully submitted,

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
Zachary.Rhines@oag.texas.gov

**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
Ali.Thorburn@oag.texas.gov

**BRIAN B. TUNG**
Assistant Attorney General
Texas State Bar No. 24145179
Brian.Tung@oag.texas.gov

**GREY W. JOHNSTON**
Special Counsel
Texas State Bar No. 24149107
Grey.Johnston@oag.texas.gov

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 20, 2026, and that fall counsel of record were served by CM/ECF.

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel

21