# EXHIBIT B

**TO PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
AMANDED MOTION TO DISMISS**

**CAUSE NO. 352-371410-25**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
|     *Plaintiff,* | § | |
| | § | |
| V. | § | 352nd JUDICIAL DISTRICT |
| | § | |
| JOLT INITIATIVE, INC., | § | |
|     *Defendant.* | § | TARRANT COUNTY, TEXAS |

**DEFENDANT JOLT INITIATIVE, INC'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, DENY LEAVE TO FILE DUE TO IMPROPER VENUE**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Jolt Initiative, Inc. (hereinafter, "Jolt" or "Defendant") files this Motion to Transfer Venue pursuant to Texas Rules of Civil Procedure 86 and 87.[1] Subject to this Motion to Transfer Venue, Defendants will also file a general denial. Given the myriad facial defects with the State's Petition, if the Court will not promptly transfer venue to Harris County or deny leave, Defendant respectfully requests the opportunity to submit a substantive response and evidence in opposition to the Motion for Leave, demonstrating why leave must be denied.

**SUMMARY OF ARGUMENT**

This lawsuit represents an impermissible attempt to forum shop in Tarrant County. Accordingly, Defendant asserts that venue should be transferred to Harris County or, alternatively, that the State's Motion for Leave be denied due to improper venue.

"Chapter 66 of the Civil Practice and Remedies Code governs the procedural aspects of quo warranto proceedings." *Paxton v. FIEL Houston, Inc.*, No. 15-24-00110-CV, 2025 WL

---

[1] Defendant reserves all of its rights to challenge the propriety of this lawsuit, including requests for dismissal, sanctions, attorneys fees, and counterclaims, and expressly make any subsequent requests for the Court's action subject to and subordinate to this first-filed Motion to Transfer Venue.

2857332, at *2 (Tex. App.—15th Court Oct. 9, 2025). A quo warranto proceeding must be filed in "the proper county," Tex. Civ. Prac. & Rem. Code § 66.002(a), "according to the general venue statute," *Woodson Indep. Sch. Dist. v. State ex rel. Cox*, 130 S.W.2d 1038, 1039 (Tex. Civ. App.— Eastland 1939, writ dism'd); *see also City of Wichita Falls v. State ex rel. Vogtsberger*, 509 S.W.2d 661, 663 (Tex. Civ. App.—Fort Worth 1974), *rev'd on other grounds*, 533 S.W.2d 927 (Tex.), (transferring *quo warranto* action filed "in a county other than where the defendant resides" after applying general venue rules). For venue to be proper in any county other than Harris County, where Jolt maintains its "principal office," the State must demonstrate that "all or a substantial part of the events or omissions giving rise to the claim occurred" in Tarrant County. Tex. Civ. Prac. & Rem. Code § 15.002(a).

But Texas asserts no venue facts related to Tarrant County whatsoever, much less does its Petition show that a "substantial part" of relevant alleged events occurred in Tarrant County. *See generally State's Pet. and Info. in the Nature of Quo Warranto*, attached as Ex. A to *State's Motion for Leave* ("Petition"). Thus, if this case is to proceed, it must be transferred to Harris County, where Jolt maintains its principal office and where it focuses its voter registration activities. *See* Decl. of Jacqueline Bastard dated Sept. 13, 2024, ¶ 11, attached as Ex. B to Pet. ("Bastard 2024 Decl.") (affirming that Jolt's voter registration drives are concentrated in Dallas, Harris, and Bexar counties).

Texas' failure to seek leave to file in the proper county renders its Motion for Leave facially defective and thus also provides grounds for outright denial. The Texas Supreme Court has recently cautioned courts against "a mere rubber stamp on the attorney general's motion for leave," explaining that leave should be denied "if the face of the filing shows a violation of an

unambiguous venue requirement." *Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 581 (Tex. 2025), reh'g denied (Sept. 26, 2025).

Further, any closer look at the filings shows that the Attorney General has indeed filed a *meritless* suit in the wrong county. "[T]he requested quo warranto filing alleges no conduct that Texas law actually proscribes," providing a separate ground for denial of leave. *Paxton v. FIEL Houston, Inc.*, No. 15-24-00110-CV, 2025 WL 2857332, at *3 (Tex. App. Oct. 9, 2025) (quoting *State ex rel. Manchac v. City of Orange*, 274 S.W.2d 886, 888 (Tex. App.—Beaumont 1955, no writ)). Here, the State provides very few particularized factual allegations in its Petition to support its Motion for Leave, instead relying upon sweeping but unsupported claims about Jolt's motives, beliefs and activities. The few factual allegations provided do not demonstrate any wrongdoing at all—much less "systematic conduct that is unlawful" and could give rise to any legitimate quo warranto action, Pet. ¶ 42—rather, they rely upon demonstrably incorrect statements about Texas election law. Moreover, the State essentially admits that it seeks to use quo warranto for impermissible reasons, namely to punish Jolt for previously availing itself of federal court protection rather than producing nonpublic, sensitive information about its First Amendment protected activities and associations. Pet. ¶¶ 26-30.

For all of these reasons, venue is improper in Tarrant County. If this case is to proceed at all, it must be transferred to Harris County.

## LEGAL STANDARD FOR VENUE

The "proper county" for a quo warranto action is determined by Texas' general venue statute. *See, e.g.*, *Woodson Independent School Dist.*, 130 S.W.2d 1038; *City of Wichita Falls*, 509 S.W.2d 661; *City of Bridge City v. City of Port Arthur*, 792 S.W.2d 217, 237-38 (Tex. App.—Beaumont 1990, writ denied) (Burgess, J. dissenting) (collecting cases); *In Denison v. State*, 61

3

S.W.2d 1017, 1020-21 (Tex. Civ. App.—Austin 1933, writ ref'd). Under the general venue statute, a suit may be brought in: the county in which "all or a substantial part of the events giving rise to the claim occurred," or the county of the defendant's "principal office if the defendant is not a natural person." Tex. Civ. Prac. & Rem. Code § 15.002(a).

Because venue may be proper in numerous counties, a plaintiff is given the first choice to fix venue in a proper county and do so by filing suit in the county of his choosing. *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). If, as is the case here, the plaintiff files suit in an improper county and venue is challenged by the defendant, the plaintiff bears the burden of proving that its chosen venue is maintainable. *Id*. (citing Tex. R. Civ. P. 87(2)). "If the plaintiff fails to meet this burden, the trial court *must* transfer the lawsuit to another specified county of proper venue." *Id*. (emphasis added).

"All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact." Tex. R. Civ. P. 87(3). If a defendant asserts venue facts that the plaintiff never specifically denies, then the defendant's venue facts are taken as true. *See* Tex. R. Civ. P. 87(3)(a). To hold otherwise would be to promote forum-shopping, a practice long prohibited in Texas. *See In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008).

<u>**VENUE FACTS**</u>

**A.     NO FACTS SUPPORT VENUE IN TARRANT COUNTY.**

To establish that venue is maintainable in the county of suit, the State of Texas must provide *prima facie* proof, which is only "made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading. Affidavits shall be made on personal knowledge, shall set

forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." Tex. R. Civ. P. 87(3)(a). Here, the State of Texas has offered *no* specific pleadings or factual evidence establishing that *any* concrete act, much less "all or substantially all" of the acts giving rise to its claims, occurred in Tarrant County.

The State's Motion and the accompanying Petition provide only one statement directly related to venue: "Venue is proper in Tarrant County because a substantial part of the events or omissions giving rise to the State's claims occurred in Tarrant County." Pet. ¶ 6. This entirely conclusory legal statement does not set forth any factual basis supporting proper venue in Tarrant County. In fact, the State's specific allegations of wrongdoing committed by Jolt *contradict* the conclusion that venue is proper in Tarrant County.

The State's Petition alleges that the "Texas Attorney General, Ken Paxton, initiated an investigation and dispatched an undercover investigator to a DMV location in Universal City" who subsequently "reported to the State that JOLT's conduct at the voter registration location was unlawful pursuant to the Texas Election Code."[2] Pet. ¶¶ 16-17. University City is in Bexar County. Thus, this allegation does not support proper venue in Tarrant County.

The next allegation states that "[d]uring one widely viewed encounter, a JOLT VDR informed an individual that illegal alien[s] could submit a voter registration application "if they really wanted to." Pet. ¶ 22. This video was taken in San Antonio, which is likewise located in Bexar County, not Tarrant County.

The State also discusses the Requests to Examine ("RTE") it served last year on Jolt in Austin, concerning voter registration practices and the same incidents discussed in the Petition. On October 22, 2025, before a federal court in the Western District of Texas, the State agreed to

---

[2] As discussed below, this allegation depends on a misreading of Texas election law. *See* Tex. Elec. Code § 13.003.

withdraw that RTE and affirmed to the federal court that it would not reissue the RTE or any other RTE concerning voter registration practices. These events also do not support venue in Tarrant County, as Tarrant County is located in the Northern District of Texas. *See* Pet. ¶¶ 26-30.

Finally, the State alleges that "Maria Bartimoro [sic] publicly posted that Texas Department of Motor Vehicle ("DMV") locations '[h]ad … massive line[s] of immigrants getting licenses' and voter registration setups stationed outside of the DMV locations." *Id.* Whether this allegation is true is irrelevant (it is not)[3] because neither the State's allegation nor Ms. Bartiromo's social media post identifies Jolt, or any organization other than possibly the DMV, as being responsible for any act that would support any action in any venue at all. Pet. ¶ 15.

In sum, there is *not a single* factual allegation supporting an actual event or omission committed by Jolt in Tarrant County, let alone a "substantial part" of events or omissions giving rise to the State's claims. Thus, the State of Texas's factual basis for maintaining suit in Tarrant County is unsupportable.

### B.     FACTS SUPPORTING VENUE IN HARRIS COUNTY.

Jolt maintains its principal office and place of business in Harris County. Decl. of Jaqueline Bastard dated Nov. 10, 2025, ¶ 3, attached as Ex. A ("Bastard 2025 Decl."). Indeed, public records from the Secretary of State's website, on which the State relied for its service paragraph in the Petition, confirm a Houston office address for Jolt Initiative. *Compare* attachment to Bastard 2025 Decl. *with* Pet. ¶4. Jolt's chief executive and key decisionmaker, Jacqueline Bastard, lives and works in Harris County, as does the majority of Jolt's current staff. Bastard 2025 Decl. ¶¶ 5-7. The

---

[3] Berenice Garcia, *A Fox News Host's Debunked Election Conspiracy Appears to Have Prompted a State Investigation*, Tex. Trib. (Aug. 26, 2024), https://perma.cc/9PM6-H9YS. The State of Texas does not dispute that the substance of this post was immediately debunked by the Parker County Republican chair and election administrator. *See Jolt Initiative, Inc. v. Paxton*, No. 1:24-cv-01089 (W.D. Tex. 2024), ECF No. 1 ("Complaint").

second highest decisionmaker at Jolt is its Director of Programs; she also lives and works in Harris County. *Id.*

## SPECIFIC DENIALS

Jolt offers these specific denials. *See generally* Bastard 2025 Decl. ¶¶ 10-15.

1. Jolt specifically denies that "[v]enue is proper in Tarrant County." *See* Pet. ¶ 6.

2. Jolt specifically denies that "a substantial part of the events or omissions giving rise to the State's claims occurred in Tarrant County." *See* Pet. ¶ 6.

3. Jolt specifically denies that any of its activities violate the Texas Election Code, including and especially any activities in Tarrant County.

4. Jolt specifically denies setting "forth false information about the ability of individuals to register as voters," or "enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in voter registration applications" (systematically or otherwise) in Tarrant County or anywhere else. *See* Pet. ¶¶ 39, 42(a), (c), (e).

5. Jolt specifically denies that any "substantial part" of Jolt's activities to recruit, train and/or hire VDRs occurs or has ever occurred in Tarrant County. Moreover, Jolt's processes to recruit, train and hire VDRs follow the requirements of the Texas Election Code and all other applicable laws. Thus, Jolt does not engage in: "[r]ecruiting, training, and hiring VDRs to assist and encourage individuals with submitting false statements in voter registration applications," "[r]ecruiting, training, and hiring VDRs to assist individuals with submitting untruthful voter registration applications," "[r]ecruiting, training, and hiring VDRs to assist individuals with submitting false statements in voting registration applications," or "[r]ecruiting, training, and hiring VDRs to solicit and accept voter

registration applications for individuals that are not present" in Tarrant or any other county. *See* Pet. ¶ 42(b), (d), (f), (g).

6. Jolt specifically denies that it engages in any partisan political efforts, much less any partisan efforts to undermine election integrity or "circumvent the opportunity for Republican and Conservative political candidates to get elected in the State violating the principles of democracy." *See* Pet. ¶¶ 40-41. Jolt is strictly nonpartisan.

## ARGUMENT AND AUTHORITIES

### A.    THE STATE OF TEXAS CANNOT ESTABLISH A PRIMA FACIE CASE THAT VENUE IS MAINTAINABLE IN TARRANT COUNTY.

Prior to 1995, the general-venue law permitted venue wherever any "part" of the cause of action accrued. *Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.). The law's current language—requiring a "substantial part" of the cause of action to have accrued in the proper venue—was meant to curb forum-shopping by "narrow[ing] the number of counties in which venue could be maintained to those with a substantial connection to the lawsuit." *Id*. Indeed, the relevant legislative history specifically notes that the purpose of the "substantial part" language was to "eliminate the many loopholes and legal strategies that promote forum shopping—allowing someone to choose the most favorable county despite its tenuous connection to the case." House Research Org., Bill Analysis, Tex. S.B. 32, 74th Leg., R.S. (1995) (cited in *Chiriboga*, 96 S.W.3d at 681 n.4). Accordingly, "Courts look to the nature of the dispute and whether the forum has a 'real relationship' to it when determining whether a particular event was a 'substantial part' of a claim." *Chiriboga*, 96 S.W.3d at 682.

The State's theory of the case is that Jolt engaged in some improper act or acts related to voter registration. *See* Mot. ¶ 10 ("The State request this Court to revoke the corporate charter and corporate registration for JOLT on the ground(s) that the nonprofit corporation systemically,

8

knowingly, willfully, deliberately, and recklessly misuses individuals and Volunteer Deputy Registrars ("VDR") to acquire and submit unlawful voter registration applications that violate the Texas Election Code and undermine the State's democratic processes."). As noted above, the Petition asserts that "a substantial part of the events or omissions giving rise to the State's claims occurred in Tarrant County," but provides no factual allegations to support that assertion. The Petition is thus devoid of *any* factual basis to link Jolt to Tarrant County, much less to show that a "substantial part" of Jolt's voter registration activities occur in Tarrant County.

Indeed, the State's own description of events underscores that Tarrant County has no "real relationship" to this lawsuit. The only specific voter-registration activity the State points to occurred in University City and San Antonio, both of which are located in Bexar County. Moreover, the events in University City and in San Antonio do not show any *wrongdoing* by Jolt on their face, and thus—even if assumed to be true—cannot support any credible claim of Election Code violations that could plausibly give rise to a valid quo warranto action in Tarrant County.

To start, the State's allegations rely on an "undercover" operation carried out in Bexar County by an agent of the Attorney General who is clearly unfamiliar with Texas Election Code. *See* Pet. ¶¶ 16-18. As described by the agent, Jolt's registrar explained that "since [the officer] ha[d] [his fictitious daughter's] information, [he] could register her to vote, alluding to being a parent and that [he] had that right." *Id.* Ex. A. The officer then expressed his belief that "[t]his is not only incorrect but illegal per election code." *Id.* However, Texas law *does* allow parents to register their children to vote. *See* Tex. Elec. Code § 13.003.[4] And the Jolt staff member ("A.R.") was *correct* to

---

[4] The law reads in full that: "(a) An applicant may appoint, either orally or in writing, an agent to perform one or more of the following acts for the applicant: (1) complete and sign a registration application . . . (b) To be eligible for appointment as an agent, a person must: (1) be the applicant's

tell the agent that parents may register to vote their eligible children under certain circumstances. *See* Tex. Elec. Code § 13.003; *see also* Decl. of A.R. dated Oct. 10, 2024, ¶¶ 20-21, attached as Ex. B ("A.R. Decl."). Thus, A.R. accurately abided by the State of Texas' VDR trainings, which explain that VDRs "may allow another registered voter (or anyone who has submitted a registration application) to fill out and sign an application for his/her spouse, parent or child," so long as the person "ha[s] the permission of the applicant" and "sign[s] the application as 'agent' and state[s] the relationship to the applicant on the application." Tex. Sec. of State, *Training for Texas Volunteer Deputy Registrars,* at 21, https://perma.cc/54WT-TCFG; *accord* A.R. Decl. ¶¶ 20–21. Had the officer more carefully "read the statements at the bottom of the card related to swearing and affirming the information on the card," Pet. Ex. A, he would have seen that the application in fact asks for the signature of the "Applicant *or Agent*," Ex. A to A.R. Decl. (emphasis added). But neither the officer nor the State has done so, because despite the accuracy of the Jolt staff member's statement, the Petition alleges A.R. violated the Texas Elections Code. Thus, the State of Texas is relying on a mistaken incident report to justify a quo warranto action in an improper venue.[5]

From this incident, wherein Jolt decidedly did not violate Texas Elections Code, the State extrapolates that "JOLT is engaged in systematic conduct that is unlawful and intended to interfere with Texas' elections and thwart the democratic process." Pet. ¶ 42. However, the State does not make a single specific factual allegation related to Tarrant County, and Defendant specifically

---

spouse, parent, or child; and (2) be a qualified voter of the county or have submitted a registration application and be otherwise eligible to vote." Tex. Elec. Code § 13.003.

[5] Even worse, this particular mistake was brought to the State's attention previously in the federal litigation that centered on these same (incorrect) allegations by the State. *See Jolt Initiative, Inc. v. Paxton*, No. 1:24-cv-01089 (W.D. Tex. 2024), ECF No. 20 at 14.

denies that any complained-of activity has occurred in Tarrant County. *See generally* Bastard 2025 Decl. ¶¶ 10-15.

In sum, the State's only specific factual allegations rely on conduct in Bexar County, with no factual allegations whatsoever related to Tarrant County. Its generalized allegation of "systematic conduct" could only support venue in Harris County, Jolt's principal office and main focal point of activity. *See* Texas Civil Prac. & Rem. Code § 15.001(a) ("Principal office" is defined as "a principal office of a corporation. . . .  in this State in which the decision makers for the organization within this state conduct the daily affairs of the organization."). But under no theory or factual allegations that the State advances would venue be proper in Tarrant County.

## B.    HARRIS COUNTY IS THE PROPER VENUE OF THIS PROCEEDING.

In a transfer motion, the party challenging venue must establish that venue is proper in the county to which transfer is sought. *See* Tex. R. Civ. Proc. 87(3). Here, Defendant requests that the Court transfer venue to Harris County, which is the location of its principal office and where Jolt's chief executive lives and works, and where its key decisionmakers reside. *See Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993) (upholding venue transfer to Conoco's principal office location in Harris County, after finding that plaintiffs' chosen county in south Texas had "nothing whatever to do with this litigation"); Tex. Civ. Prac. & Rem. Code § 15.002(a). Again, Harris County is also home to the majority of Jolt's staff and corporate activities.

## PRAYER

Defendant respectfully requests that venue be transferred to Harris County or, alternatively, that the State's Motion for Leave be denied due to improper venue. The State of Texas has not established any facts that support Tarrant County as a proper county for venue; therefore, this Court should enter a transfer order as soon as practicable. Given the myriad facial defects with the

State's Petition, if the Court will not promptly transfer venue to Harris County or deny leave, Defendant respectfully requests the opportunity to submit a substantive response and evidence in opposition to the Motion for Leave, demonstrating why leave must be denied.

Respectfully submitted,

*/s/ Mimi Marziani*
**Mimi Marziani**
Texas Bar No. 24091906
**Joaquin Gonzalez**
Texas Bar No. 24109935
**Rebecca (Beth) Stevens**
Texas Bar No. 24065381
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Phone: 210-343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com
bstevens@msgpllc.com


Jason C.N. Smith
State Bar No. 00784999
**LAW OFFICES OF JASON SMITH**
612 Eighth Avenue
Fort Worth, Texas 76104
Phone: 817-334-0880
jasons@letsgotocourt.com
Service: courtfiling@letsgotocourt.com


**ATTORNEYS FOR DEFENDANT JOLT INITIATIVE, INC.**

12

**CERTIFICATE OF CONFERENCE**

On November 10, 2025, I informed Ian Bergstrom, Emily Samuels and Pauline Sisson of Jolt's intent to file this motion and asked for consent via email. No response from the State was received by the time of this filing. A reasonable effort has been made to resolve the dispute without the necessity of court intervention and the effort failed. Therefore it is presented to the Court for determination.

*/s/ Mimi Marziani*
Mimi Marziani

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025 a true and correct copy of the foregoing document was served on all counsel of record as set forth below, in accordance with the Texas Rules of Civil Procedure:

> **Via e-service:** Ian.Bergstrom@oag.texas.gov
> **Via e-service:** Johnathan.Stone@oag.texas.gov
> Jonathan Stone, Chief
> Rob Farquharson, Deputy Chief
> Office of the Attorney General of Texas
> Consumer Protection Division
> P.O. Box 12548
> Austin, Texas 78711-2548
> *Attorneys for Plaintiff, State of Texas*

*/s/ Mimi Marziani*
Mimi Marziani

14

# EXHIBIT A

**CAUSE NO. 352-371410-25**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| V. | § | **352nd JUDICIAL DISTRICT** |
| | § | |
| **JOLT INITIATIVE, INC.,** | § | |
| *Defendant.* | § | **TARRANT COUNTY, TEXAS** |

**DECLARATION OF JACQUELINE BASTARD**

My name is Jacqueline Bastard, my date of birth is June 3, 1984, and my address is 3902 Hoffman St., Houston, TX 77026, United States. I am of sound mind, and capable of making this declaration. I am the Executive Director at Jolt Initiative, Inc. ("Jolt") and serve as an authorized representative of the organization. I have personal knowledge of the facts stated herein, and they are true and correct.

1. Jolt is a nonprofit that is federally exempt from taxes as a charitable nonprofit under section 501(c)(3) of the Internal Revenue Code. Jolt works to increase the civic participation of Latinos in Texas through voter education, voter registration and leadership development. Jolt focuses its efforts on young Latino voters between the ages of 18 and 32.

2. I have worked at Jolt for six years. Before assuming my position as Executive Director, I served as the Deputy Director and as the Operations and Human Resources Director.

3. Jolt's principal office is located at 241 North Milby Street, Suite D, Houston, TX 77003, in Harris County.

1

**Exhibit A**

4. Jolt has listed the 241 North Milby Street address with the Texas Secretary of State's office as the address for me, Jolt's registered agent. Ex. A.

5. I am the chief executive officer of Jolt and its key decisionmaker. I live and work in Harris County.

6. Jolt's Director of Programs is the key decisionmaker in my absence; she also lives and works in Harris County.

7. In total, Jolt has seven staff members. Two of those individuals live in the Austin area; the other five live in Harris County.

8. Jolt takes a number of steps, including regularly consulting with election law counsel, to ensure that the organization's processes to recruit, train and hire VDRs follow the requirements of the Texas Election Code and all other applicable laws.

9. Jolt Initiative is strictly nonpartisan. Jolt carefully complies with law and guidance from the Internal Revenue Service to ensure that it does not impermissibly intervene in any political campaign, including by regularly consulting with counsel.

10. I deny that "[v]enue is proper in Tarrant County because a substantial part of the events or omissions giving rise to the State's claims occurred in Tarrant County." *See* Pet. ¶ 6.

11. I deny that any of Jolt's activities violate the Texas Election Code, including and especially any activities in Tarrant County.

12. I deny that Jolt is setting "forth false information about the ability of individuals to register as voters," or "enabling, facilitating, directing, coercing, and attempting to induce individuals to submit false statements in voter registration applications"

2

(systematically or otherwise) in Tarrant County or anywhere else. *See* Pet. ¶¶ 39, 42(a), (c), (e).

13. I deny that any "substantial part" of Jolt's activities to recruit, train and/or hire VDRs occurs or has ever occurred in Tarrant County.

14. Again, Jolt's processes to recruit, train and hire VDRs carefully follow the requirements of the Texas Election Code and all other applicable laws. Thus, Jolt does not engage in: "[r]ecruiting, training, and hiring VDRs to assist and encourage individuals with submitting false statements in voter registration applications;" "[r]ecruiting, training, and hiring VDRs to assist individuals with submitting untruthful voter registration applications," "[r]ecruiting, training, and hiring VDRs to assist individuals with submitting  false statements in voting registration applications," or "[r]ecruiting, training, and hiring VDRs to solicit and accept voter registration applications for individuals that are not present." *See* Pet. ¶ 42(b), (d), (f), (g).

15. I deny that Jolt engages in any partisan political efforts, much less any partisan efforts to undermine election integrity or "circumvent the opportunity for Republican and Conservative political candidates to get elected in the State violating the principles of democracy." *See* Pet. ¶¶ 40-41. Again, Jolt is strictly nonpartisan.

I declare under penalty of perjury that the statements in the foregoing are true and correct.

Executed in ___Harris_____ County, State of Texas, on the _10th_ day of November, 2025.



Signed by:

1D8BABDECA35419...

Jaqueline Bastard

3

# TEXAS SECRETARY of STATE
# JANE NELSON

| BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY |
|---|

| | | | |
|---|---|---|---|
| **Filing Number:** | 802715903 | **Entity Type:** | Domestic Nonprofit Corporation |
| **Original Date of Filing:** | May 5, 2017 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | **Non-Profit Type:** | N/A |
| **Tax ID:** | 32063663952 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | Jolt Initiative, Inc. | | |
| **Address:** | PO BOX 4185 AUSTIN, TX 78765 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS |
|---|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| Jacqueline Bastard | 241 N Milby St. Ste. D Houston, TX 77003 USA | |

Order    Return to Search

---

Instructions:
🔴 To place an order for additional information about a filing press the 'Order' button.

**Exhibit A**

# EXHIBIT B

## DECLARATION OF A.R.

I, A.R., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have reviewed Exhibit A (the "Report") to the Attorney General's Motion to Dismiss and Response to Plaintiff's Request for Preliminary Injunction. Based on the information contained in the Report, including the date and Department of Public Safety ("DPS") location described, I understand myself to be the individual Volunteer Deputy Registrar ("VDR") discussed in it.

2. I was at the time of the Report employed by Jolt Action and Jolt Initiative (collectively, "Jolt") as a Canvasser. I began working for Jolt in June 2024.

3. I began my work as a Jolt Canvasser in Houston, Texas. In order to become a VDR, I had to successfully complete a training and certification process with the county. The training was approximately one-hour long. I then completed a written test, took an oath in which I swore to comply with Texas registration laws, and then received certification from Harris County.

4. Before acting as a VDR on my own, I shadowed other Jolt VDRs for approximately one week in order to learn the proper protocols to ensure that I knew how to do everything in compliance with Texas law.

5. I also completed a VDR certification test in Hays County, Texas, on or around July 23, 2024.

6. On or around July 23, 2024, I obtained reciprocal certification as a VDR in Bexar County, Texas, based on my Hays County certification. I went in person to the Bexar County office, presented my Hays County certification, and took the VDR oath.

1

Exhibit
B

7. I am currently a certified VDR in Harris County, Hays County, and Bexar County.

8. As part of my activities helping individuals register to vote, I went to many different busy public places, including college campuses, public events, and government offices.

9. Before DPS made an announcement prohibiting voter registration outside of their offices, I at times registered voters at the Universal City DPS location described in the Report. There, I regularly encountered a variety of people, including individuals new to Texas and many members of the armed forces, as San Antonio has a strong military presence. Although some of them were there to obtain drivers licenses, the DPS staff did not usually explain to them that they could register to vote or give any information on registration and elections in Texas. Other individuals were there for services other than drivers licenses or were accompanying somebody there.

10. I had a good relationship with the Universal City DPS office, and the workers there would occasionally come out to ask questions about voter registration, election information, or to offer me water. The workers expressed to me that they appreciated my presence because I could help answer people's questions about voter registration and elections in Texas.

11. When registering voters outside DPS, I would often receive questions about the voter registration process or a person's voter registration status. Some individuals expressed hesitation about registering to vote, and I would emphasize the

2

positive aspects of participating and explain that they should be on the rolls in case they change their minds about voting later. There were many individuals who did not register to vote inside the office or were unsure if they were registered and wanted me to check their status or help them register.

12. In these interactions, I would also provide information about upcoming election dates and where to find polling locations, often referring people to the Bexar County election office website.

13. On August 20, 2024, an individual posted a video online, which included footage of me acting as a VDR. I am aware that there were comments made about the video and that it was portrayed as if I had somehow given misinformation about registering to vote.

14. In the video, I accurately told the individual that I had never encountered anybody trying to register to vote illegally or trying to vote illegally, which was and is true to the best of my knowledge. In our interaction, I understood the individual to be asking whether VDRs have any way of ultimately preventing an ineligible person from attempting to register to vote if they are really intent on trying to do so. I attempted to explain that, as VDRs, by law, we are merely the messengers for voter registration, and it is the county's responsibility to verify eligibility. We are not in a position to verify anybody's eligibility. Although I always explain the legal requirements for eligibility to anybody seeking to register to vote, that it is a crime to register illegally, and highlight important requirements on the form, as a VDR I ultimately have no way of knowing if somebody is providing false information—just

3

as there is nothing to prevent them from using the State mail-in registration form on their own to provide false information if they are intent on doing so. I was in no way expressing to the person recording the video that it was legal or advisable for an ineligible person to register, but merely that VDRs do not ultimately have a way to determine somebody's eligibility or know if they are lying.

15. As a VDR, I have a legal responsibility to turn in every completed registration form to the county. It would be a violation of the law for me to not turn in a completed form, with potential criminal penalties. The county and the state then have the duty to verify eligibility.

16. I know the Texas voter registration eligibility requirements, including that a person registering must be at least 17 years and 10 months old and turning 18 by Election Day, and a United States citizen. I always inform individuals that they must meet these requirements in order to be eligible to vote. On the registration forms that I use, I highlight in yellow highlighter the question "Are you a United States Citizen?" to make sure that the voter pays attention to this important legal requirement.

17. On the date described in the Report, I was at the Universal City DPS registering voters and providing information on registration and elections. I do not specifically recall the interaction described in the Report. Again, it was commonplace for individuals to ask me questions about the voter registration rules.

18. I typically carry a red clipboard that is attached atop a container, which opens. I keep the highlighted voter registration forms on top and place completed

4

forms inside the container.  This is my normal practice.  I need to have a way to keep blank and filled out forms organized separately and to have a surface for the individuals registering to fill out the forms.  I do not have a folder or binder, but the Report may mistakenly be referring to my clipboard container as a folder or binder.

19.  The VDR forms I use to register voters have my VDR information on the legally required receipt portion of the form.  Therefore, I cannot just hand out these forms to somebody who asks because it would be illegal for that person to use them to register a voter.  Sometimes I have standard, blank mail-in registration forms that voters can take with them, but I often run out of these forms.  If someone asks for a form to take with them and I am out of mail-in forms, I would not give them one of the VDR forms with my VDR information on it because that would be illegal.  Attached as Exhibit A  is a copy of a sample VDR form with certain important fields highlighted to make sure the voter fills them out correctly.   In addition to me explaining the legal requirements to register to vote, the fields are highlighted so that the individuals do not miss any important information or unwittingly provide false information.

20.  Under Texas law, certain individuals, such as a parent, child, or spouse, can act as an agent for their child/parents/spouse to register them to vote, as long as they have permission.  This information is clearly referred to on the voter registration form where it says "Signature of Applicant *or Agent and Relationship to Applicant*."

21.  I learned this law as part of my VDR training.  The training presentation I reviewed was substantially the same as the one attached to this declaration as

5

Exhibit B. Specifically, the presentation explains on page 21 that an agent must sign the application as "agent," state their relationship to the applicant, and have permission to complete the form. It says clearly:

> You may allow another registered voter (or anyone who has submitted a registration application) to fill out and sign an application for his/her spouse, parent or child. That person must sign the application as "agent" and state the relationship to the applicant on the application. The "agent" must have the permission of the applicant to do this.

22. Since the DPS announcement in August prohibiting voter registration outside of their offices, I have not registered any voters outside any DPS location.

23. I do not wish to be publicly identified. I worked as a Canvasser for Jolt because I believe it is important for everybody to register to vote, and in particular that there are low voter registration rates in Latino communities that need to be addressed. Unfortunately, sometimes people want to try to make this into a controversial issue, make false accusations about what we are doing, and prevent us from encouraging registration and voting. Especially in the media and on social media there have been many stories spread—I believe falsely, based on my knowledge and experience—about ineligible individuals registering to vote. Some people try to blame VDRs, who are just following the law, for this. I do not wish to be the subject of any harassment, scrutiny, or investigation and worry that I will be if my information is released, especially after seeing the comments section of the video of me described above.

24. In the coming weeks, I plan to complete the process of enlisting in the United States Air Force and start boot camp. That is another reason I do not wish to be

6

publicly identified at this time. Any harassment, scrutiny, or investigation that could come from being identified might distract me from this important next step in my career, in which I hope to serve our country.

25. Based on the redacted Report, I do not know if the Attorney General or anyone in his office has my complete identifying information. To the extent they do not, I do not want my information released to them by an employer. The Report mistakenly claims that I did something illegal even though I did not do anything wrong and referred correctly to Texas laws as shown in the Secretary of State's own VDR training materials. I do not want myself or any of my colleagues to be the subject of any sort of unwarranted investigation. I would be less likely to work for or volunteer for an organization if I knew that a law enforcement agency was requiring them to turn over information on volunteers, voters, and employees, when there was no legitimate reason for requiring them to do so.

I declare under penalty of perjury that this declaration is true and correct. Executed on October 10, 2024.

 /s/A.R. 
A.R.

Signed copy maintained by Plaintiff's counsel.

# Exhibit A
# to A. R. Declaration

## Texas Voter Registration Application
Prescribed by the Office of the Secretary of State

For Official Use Only

Please complete sections by printing LEGIBLY. If you have any questions about how to fill out this application, please call your local voter registrar.
Please visit the Texas Secretary of State website, **www.sos.state.tx.us**, and for additional election information visit **www.votetexas.gov.**
Este formulario está disponible en español. Favor de llamar a su registrador de votantes local para conseguir una versión en español.

### Qualifications

- You must register to vote in the county in which you reside.
- You must be a citizen of the United States.
- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by Election Day.
- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.
- You must not have been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**1** THESE QUESTIONS MUST BE COMPLETED BEFORE PROCEEDING (Check one)

☐ New Application   ☐ Change of Address, Name, or Other Information   ☐ Request for a Replacement Card

Are you a United States Citizen? ☐ Yes  ☐ No    Will you be 18 years of age on or before election day? ☐ Yes  ☐ No

If you checked 'No' in response to either of the above, do not complete this form.

Are you interested in serving as an election worker? ☐ Yes  ☐ No

**2** Last Name Include Suffix if any (Jr, Sr, III) | First Name | Middle Name(If any) | Former Name (if any)

**3** Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address) | City | TEXAS
County | Zip Code

**4** Mailing Address: Street Address and Apartment Number. (If mail cannot be delivered to your residence address.) | City | State
Zip Code

**5** City and County of Former Residence in Texas

**6** Date of Birth: (mm/dd/yyyy)

**7** Gender (Optional)  ☐ Male  ☐ Female

**8** Telephone Number (Optional) Include Area Code
(       )        −

**9** Texas Driver's License No. or Texas Personal I.D. No.
(Issued by the Department of Public Safety)

If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number

XXX-XX-

☐ I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

**10** I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to one year in jail, a fine up to $4,000, or both. Please read all three statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.    Date:

### FOR VOLUNTEER DEPUTY REGISTRAR USE ONLY

Deputy Number

Application must be delivered to Voter Registrar no later than 5 days after receipt

Signature of Volunteer Deputy Registrar

Date

### REGISTRATION RECEIPT

Name of Applicant/Applicant's Agent (if applicable)

Receipt No.:

Name of Volunteer Deputy Registrar

Deputy No.:

Signature of Volunteer Deputy Registrar

Exhibit B

to A. R. Declaration

Case 1:25-cv-01808-RP   Document 45-2   Filed 02/02/26   Page 32 of 78

# TRAINING FOR TEXAS VOLUNTEER DEPUTY REGISTRARS



# TABLE OF CONTENTS



**BEFORE GETTING STARTED**

**QUALIFICATIONS**

**LENGTH OF APPOINTMENT**

**ROLE OF A VOLUNTEER DEPUTY REGISTRAR**

*Supplies Needed*

*Distributing and Accepting Applications*

*Assisting Applicants*

*Reviewing the Applications*

*Registration Receipt*

*Delivery of Applications and Receipts*

**VOTER REGISTRATION**

*Applicant Eligibility Requirements*

*Voter Name Changes*

*Voter Address Changes*

*Effective Date of Registration*

*Period of Effectiveness*

**UPCOMING ELECTIONS**

Next Slide

Case 1:24-cv-01089-DII    Document 20-1    Filed 10/11/24    Page 13 of 57

Next Slide

Previous Slide

Table of Contents

# BEFORE GETTING STARTED



- A person may not receive another person's registration application until satisfactorily completing training developed or approved by the Secretary of State and is appointed a volunteer deputy registrar.



Case 1:25-cv-01808-RP   Document 45-2   Filed 02/02/26   Page 35 of 78

- At the time of appointment, the county voter registrar will advise the volunteer deputy registrar of any county-specific procedures for processing voter registration applications and that the only requirements for voter registration are those prescribed by state law or by the Secretary of State.



# QUALIFICATIONS



# A Volunteer Deputy Registrar must:

- be 18 years of age or older

- be a United States citizen

- not have been determined by a final judgment of a court exercising probate jurisdiction to be:

  1. totally mentally incapacitated; or

  2. partially mentally incapacitated without the right to vote

- never have been convicted of failing to deliver a voter registration application to a voter registrar

- not have been finally convicted of a felony, or, if convicted, must have

  1. fully discharged the sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or

  2. been pardoned or otherwise released from the resulting disability to vote

Case 1:25-cv-01808-RP    Document 45-2    Filed 02/02/26    Page 38 of 78



- not have been finally convicted of identity theft under Section 32.51 of the Texas Penal Code

- be a Texas resident

NOTE:   A county voter registrar may not reappoint a person whose appointment as a volunteer deputy registrar is terminated either for a final conviction under (1) Section 13.043, Texas Election Code, relating to delivery of completed registration applications or (2) Section 13.008, Texas Election Code, relating to performance-based compensation for volunteer deputy registrars.



- NOTE:  Pursuant to Section 13.031(d)(3) of the Texas Election Code, to be eligible for appointment as a volunteer deputy registrar, a person must meet the requirements to be a qualified voter under Section 11.002 of the Code, except that the person **is not** required to be a registered voter.



# LENGTH OF APPOINTMENT



- A person who meets the qualifications may be appointed a volunteer deputy registrar at any time.

- All appointments expire on December 31st of every even-numbered year.

- A person who has previously taken the volunteer deputy registrar examination and received a certificate of appointment in one county is not required to take the examination again in another county.  The person should submit a Request for Appointment as a VDR with the new county.  The voter registrar in the new county will appoint the person as a VDR and advise of any county-specific procedures.



Your appointment as a volunteer deputy registrar **MAY** be terminated by the appointing authority if it is determined that you:

- failed to properly review a voter registration application;

- intentionally destroyed or physically altered a registration application; or

- engaged in any other activity that conflicts with your responsibilities as a volunteer deputy registrar.



Your appointment as a volunteer deputy registrar **WILL** be terminated by the county voter registrar if you are:

- finally convicted of an offense under the law relating to performance-based compensation for voter registration, Section 13.008, Texas Election Code; or

- finally convicted of an offense under the law relating to a failure to deliver a completed voter registration application to the county voter registrar, Section 13.043, Texas Election Code.



Table of Contents      Previous Slide      Next Slide

# ROLE OF A VOLUNTEER DEPUTY REGISTRAR



Case 1:24-cv-01089-DII   Document 20-1   Filed 10/11/24   Page 25 of 57

# SUPPLIES NEEDED

Next Slide

Previous Slide

Table of Contents



- Certificate of Appointment*

- Texas Volunteer Deputy Registrar Guide and any other handbook provided by your appointing authority*

- Voter Registration Applications*

- Receipt Book*

- Pens

*All election materials issued to a volunteer deputy registrar, including the Certificate of Appointment, receipt books, receipts, applications and other forms in the volunteer deputy registrar's possession, must be returned or accounted for upon termination of appointment, not later than the second day after the volunteer deputy registrar receives the termination notice.



Case 1:25-cv-01808-RP   Document 45-2   Filed 02/02/26   Page 48 of 78

# DISTRIBUTING AND ACCEPTING APPLICATIONS



A volunteer deputy registrar assists the county voter registrar who appointed him or her to encourage voter registration.  A volunteer deputy registrar:

- may **distribute** voter registration applications to anyone who requests one.

- may **distribute and accept** a completed voter registration application from any resident of the county who is:
  - a United States citizen;
  - a resident of the county;
  - at least 17 years and 10 months of age;
  - not a convicted felon (unless the person's sentence has been completed, including probation or parole or the person has been pardoned or otherwise released from the resulting disability to vote);
  - not a person determined by a final judgment of a court exercising probate jurisdiction to be (1) totally mentally incapacitated; or (2) partially mentally incapacitated without the right to vote.



- may **distribute and accept** a completed voter registration application from any resident of the county who wishes to change or correct information on his/her voter registration certificate (such as name or address).

Your county voter registrar should provide you with applications containing the county return address.  If your county voter registrar does not have enough applications to provide to you, you may print blank applications for volunteer deputy registrars from the Secretary of State's website. These applications should only be distributed to applicants residing in the county.  Should you receive generic applications containing the Secretary of State's return address, you can distribute to anyone residing in any county; however, you can only accept applications from those registering within the county in which you were appointed.



Case 1:24-cv-01089-DII    Document 20-1    Filed 10/11/24    Page 30 of 57

# ASSISTING APPLICANTS

Next Slide

Previous Slide

Table of Contents



- You may assist any resident of the county in completing a voter registration application, if he/she cannot read, or has a physical disability.

- If an applicant cannot sign his/her name on the application, the applicant may make a mark on the signature line. Print the name of the applicant beside the mark. If the applicant cannot make a mark, please state that fact on the application and print the applicant's name. Sign and print your name, and provide your residence address as the witness.

- You may allow another registered voter (or anyone who has submitted a registration application) to fill out and sign an application for his/her spouse, parent or child. That person must sign the application as "agent" and state the relationship to the applicant on the application. The "agent" must have the permission of the applicant to do this.

Case 1:24-cv-01089-DII   Document 20-1   Filed 10/11/24   Page 32 of 57

# REVIEWING THE APPLICATIONS

Next Slide

Previous Slide

Table of Contents



- Each voter registration application should be reviewed in the presence of the applicant.

- If the voter registration application does not contain all the required information, including the required signature, the volunteer deputy registrar shall return the application to the applicant for completion and resubmission.



# A voter registration application you accept from any resident of the county should include the following:

- Section 1: Applicant must select why they are submitting the application (new application, change of current information, or request for replacement). Applicant must also answer citizenship and age questions;

- Section 2: Full name, including any middle, maiden, or former name;

- Section 3: Residence address must be a street address or a description of the location of the residence;

- Section 4: Valid mailing address, if mail can't be delivered to the residence address;

- Section 5: City and County of Former Residence in Texas;

- Section 6: Date of birth, including month, day, and year;

- Section 9: Texas Driver's License No., Texas Personal I.D. No., or last 4 digits of social security number. If the applicant hasn't been issued any of these items, he or she must check the box in this section affirming this statement; and

- Section 10: Signature of applicant and date of signing. Be sure the applicant has read the statements that he/she is signing regarding qualifications to register and if an agent is registering for an applicant, be sure the agent provides his/her relationship to the applicant.

Table of Contents     Previous Slide     Next Slide

# A volunteer deputy registrar **MAY NOT**:

- determine if the applicant is actually qualified to register to vote; or

- make the applicant provide his/her gender or telephone number.



Case 1:25-cv-01808-RP Document 45-2 Filed 02/02/26 Page 57 of 78

## Texas Voter Registration Application

Prescribed by the Office of the Secretary of State

For Official Use Only

Please complete sections by printing LEGIBLY. If you have any questions about how to fill out this application, please call your local voter registrar.
Please visit the Texas Secretary of State website, **www.sos.state.tx.us**, and for additional election information visit **www.votetexas.gov**.
*Este formulario está disponible en español. Favor de llamar a su registrador de votantes local para conseguir una versión en español.*

### Qualifications

- You must register to vote in the county in which you reside.
- You must be a citizen of the United States.
- You must be at least 17 years and 10 months old to register, and you must be 18 years of age by Election Day.
- You must not be finally convicted of a felony, or if you are a felon, you must have completed all of your punishment, including any term of incarceration, parole, supervision, period of probation, or you must have received a pardon.
- You must not have been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

**1** THESE QUESTIONS MUST BE COMPLETED BEFORE PROCEEDING (Check one)

☒ New Application   ☐ Change of Address, Name, or Other Information   ☐ Request for a Replacement Card

Are you a United States Citizen? ☒ Yes   ☐ No   Will you be 18 years of age on or before election day? ☒ Yes   ☐ No

**If you checked 'No' in response to either of the above, do not complete this form.**

Are you interested in serving as an election worker? ☐ Yes   ☒ No

**2** Last Name Include Suffix if any (Jr, Sr, III): *Smith*   First Name: *Jane*   Middle Name (If any):   Former Name (if any): *Doe*

**3** Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address): *123 This way Lane*   City: *Here*   TEXAS   County: *There*   Zip Code: *77777*

**4** Mailing Address: Street Address and Apartment Number. (If mail cannot be delivered to your residence address.)   City   State   Zip Code

**5** City and County of Former Residence in Texas: *N/A*

**6** Date of Birth: (mm/dd/yyyy): *12 / 12 / 1912*

**7** Gender (Optional): ☐ Male ☐ Female

**8** Telephone Number (Optional) Include Area Code: ( )  -

**9** Texas Driver's License No. or Texas Personal I.D. No. (Issued by the Department of Public Safety): *0 1 2 3 4 5 6 7*   If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number: XXX-XX-

☐ I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

**10** I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to one year in jail, a fine up to $4,000, or both. Please read all <u>three</u> statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X *Jane Smith*   Date: *07/01/2015*

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

### FOR VOLUNTEER DEPUTY REGISTRAR USE ONLY

| Deputy Number | Application must be delivered to Voter Registrar no later than **5 days** after receipt |
|---|---|
| | Signature of Volunteer Deputy Registrar           Date |

### REGISTRATION RECEIPT

| Name of Applicant/Applicant's Agent (if applicable) | Receipt No.: |
|---|---|
| Name of Volunteer Deputy Registrar | Deputy No.: |
| Signature of Volunteer Deputy Registrar | Date: |

You should receive your Voter Registration Certificate within <u>30 days</u>. Please keep this receipt until you receive your ...

**REQUIRED**

**OPTIONAL**

**MUST BE SIGNED AND DATED**

Table of Contents   Previous Slide   Next Slide

# REGISTRATION RECEIPT



For each completed voter registration application you receive, you must:

- prepare a receipt in duplicate

- sign the receipt and give the original to the applicant



Case 1:25-cv-01808-RP    Document 45-2    Filed 02/02/26    Page 59 of 78

You should not keep copies of the completed voter registration applications because these documents contain information that is confidential by law.



Case 1:25-cv-01808-RP   Document 45-2   Filed 02/02/26   Page 60 of 78



# DELIVERY OF APPLICATIONS AND RECEIPTS

- You must deliver completed registration applications and receipts in person to the county voter registrar who appointed you no later than 5:00 p.m. of the 5th day after the date you receive them.

- Alternatively, you may deliver completed registration applications and receipts to the county voter registrar through another volunteer deputy registrar appointed by the county voter registrar no later than 5:00 p.m. on the 5th day after the date you receive them.

- You **MAY NOT** deliver the application and receipts by mail.

Table of Contents   Previous Slide   Next Slide

**NOTE**:

To be eligible to vote, a person must be registered 30 days before Election Day. Pursuant to Section 13.042(c) of the Election Code, when you receive a completed application after the 34th day before the date of an election and on or before the last day for a person to timely submit a registration application for that election as provided by Section 13.143 of the Code, you **MUST** deliver the application to the county voter registrar **no later** than 5:00 p.m. of the next regular business day after the date to timely submit a registration application for that election as provided by Section 13.143 of the Code.

Table of Contents     Previous Slide     Next Slide

- FAILURE TO DELIVER AN APPLICATION IN A TIMELY MANNER IS A **CRIMINAL OFFENSE**.





# VOTER REGISTRATION

*(INFORMATION THAT APPLICANTS MAY WISH TO KNOW)*





# APPLICANT ELIGIBILITY REQUIREMENTS

Table of Contents    Previous Slide    Next Slide

# To be eligible to register to vote a person must:

- be at least 17 years and 10 months of age;

- be a United States citizen;

- be a resident of the county where registering;

- not have been determined by a final judgment  of a court exercising probate jurisdiction to be

  (1) totally mentally incapacitated; or

  (2) partially mentally incapacitated without the right to vote

- not have been finally convicted of a felony or, if so convicted, must have:

  (1) fully discharged the person's sentence, including any incarceration, parole, or supervision, or completed a period of probation ordered by any court; or

  (2) been pardoned or otherwise released from the resulting disability to vote

Case 1:25-cv-01808-RP    Document 45-2    Filed 02/02/26    Page 68 of 78

# VOTER NAME CHANGES



If a voter's name changes, his/her voter registration can be updated by:

- making the change on the back of his/her voter registration certificate and mailing it to the county voter registrar;

- submitting a new application form to the voter registrar and checking the box for "change";

- writing a letter to the voter registrar explaining the name change; or

- updating information on their voter registration record through the Texas.gov online portal





VOTER ADDRESS CHANGES

# If the voter moves, his/her voter registration can be updated by:

- making the change on the back of the voter registration certificate and mailing it to the county voter registrar;

- submitting a new application form to the voter registrar and checking the box for "change";

- writing a letter to the voter registrar explaining the change of address; or

- updating information on their voter registration record through the Texas.gov online portal

# EFFECTIVE DATE OF REGISTRATION



- The applicant can vote as soon as the 30th day after submitting the application. This 30-day period starts when the volunteer deputy registrar receives the application form.

- If the applicant is under 18, the registration will become effective on the 30th day after the voter registrar receives the application or on the applicant's 18th birthday, whichever comes later.



Table of Contents      Previous Slide      Next Slide

Case 1:24-cv-01089-DII    Document 20-1    Filed 10/11/24    Page 53 of 57

# PERIOD OF EFFECTIVENESS

Next Slide

Previous Slide

Table of Contents



Voter registration will be automatically renewed every even-numbered year unless:

- the voter moves to another address;

- the voter is convicted of a felony and has not completed the sentence, probation, or parole or been pardoned or otherwise released from the resulting disability to vote; or

- the voter has been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote



# UPCOMING ELECTIONS



- Ask your county voter registrar about upcoming elections and deadlines to register to vote.

- For general voting information, please visit [www.votetexas.gov](http://www.votetexas.gov).

## Thank you for your service as a Texas Volunteer Deputy Registrar!




# Elections Division

P.O. Box 12060

Austin, Texas 78711-2060

512.463.5650 or

1.800.252.VOTE (8683)

Fax 512.475.2811

TTY 7.1.1

www.sos.state.tx.us

www.votetexas.gov

elections@sos.texas.gov

