# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| JOLT INITIATIVE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> KEN PAXTON, in his individual and official capacity as Attorney General of Texas, <br><br> *Defendant*. | CASE NO. 1:25-cv-001808 |

**DEFENDANT'S REPLY IN SUPPORT OF HIS AMENDED MOTION TO DISMISS**

## TABLE OF CONTENTS

Introduction ...........................................................................................................................................1

Argument ..............................................................................................................................................1

    I.   The Court should apply *Younger* abstention. ....................................................................1

    II.  Jolt has failed to state a claim for relief under § 11(b) of the Voting Rights Act. ..................3

    III. Jolt has failed to state a claim for relief for its freedom of association claim. ...................... 6

    IV. Qualified immunity bars Jolt's claims for damages. ............................................................7

Conclusion .........................................................................................................................................10

Certificate of Service.........................................................................................................................11

ii

INTRODUCTION

This case centers around the Attorney General's investigation and subsequent attempt to sanction Jolt Initiative, Inc. (Jolt) for alleged violations of the Texas Election Code. Jolt has been accused of facilitating and inducing illegal immigrants to register to vote in Texas elections—a violation of both state and federal law. Each of Jolt's claims is without merit and should be dismissed for the following reasons:[1]

ARGUMENT

### I. The Court should apply *Younger* abstention.

This Court has already ruled that *Younger* abstention ought not apply to this case. ECF 44 at 9–16. The Attorney General understands and acknowledges this ruling, but would respectfully make the following points in rebuttal to Jolt's Response (ECF 45).

**1.** When considering the applicability of *Younger* abstention, courts look at whether there is an "ongoing state judicial proceeding" that would preclude federal court intervention. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). Whether there is an ongoing state judicial proceeding is a two-pronged analysis: first, "a state action is 'ongoing' if it's actually pending on the day the federal suit is filed," and second, a state proceeding will be deemed to be ongoing for *Younger* purposes if it is filed "before any proceedings of substance on the merits have taken place in federal court." *See New Ga. Project, Inc. v. Att'y Gen. of Ga.*, 106 F.4th 1237, 1243 (11th Cir. 2024) (citation modified) (indicating that *For Your Eyes Alone, Inc. v. City of Columbus,* 281 F.3d 1209 (11th Cir. 2002) aligns with this analysis). "The relevant inquiry, in examining the history of the case, is the extent of the district court's involvement in the merits." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017). Among the factors courts consider "are the time that the district court has spent considering the case, any motions ruled on, any

---

[1] The Attorney General understands and acknowledges that the Court has made certain findings relating to the validity of Jolt's claims and the Attorney General's defenses in its Order granting a preliminary injunction (ECF 44). The Attorney General respectfully makes the following arguments not to argue with the Court or second-guess its ruling, but simply to reply to Jolt's response and preserve arguments should they become material in future phases of this litigation.

discovery, the number of conferences held, and any change in the parties' positions as a result of the federal litigation." *Id.* at 728–29. Courts "focus not on the raw time that a federal case has spent on a district court's docket but, rather, on whether the court has meaningfully engaged the merits of the claims before it." *New Ga. Project, Inc.,* 106 F.4th at 1243. As such, the court's analysis is anchored to whether abstaining would result in "*reverse removal,*" allowing the state court to effectively ignore the considerations and decisions of the federal courts. *Id.* at 1245–46. Courts may "for good measure" "also consider motions that the parties filed, even if the district court hadn't ruled on them." *Id.* at 1243–44.

However, here, as in *New Georgia Project, Inc.,* "it's clear beyond reasonable dispute that the court never addressed itself to the merits of [Plaintiff's] First Amendment claim[s]." *Id.* at 1244–45. In the original federal litigation, the court did not rule on any motions related to the merits of the case. *Jolt Initiative, Inc. v. Paxton,* No. 1:24-cv-1089-RP (W.D. Tex. Sept. 13, 2024) (*Jolt I*). Prior to the agreed motion to stay case proceedings, the litigation was only "active" for 40 days, which produced two substantive motions at the time of the stay: plaintiff's amended preliminary injunction, and defendant's motion to dismiss—neither was ruled on. *See id.* (Agreed Motion to Stay Case Proceedings (Oct. 23, 2024), Dkt. 25; Amended Motion for Preliminary Injunction (Sep. 20, 2024), Dkt. 15; Response in Opposition to Motion for Preliminary Injunction, and Motion to Dismiss (Oct. 4, 2024), Dkt. 19). After the stay was lifted, the only substantive action was a Joint Stipulation of Dismissal, effective automatically, requiring no judicial action. *See id.* (Notice of Joint Stipulation of Dismissal (Oct. 22, 2025), Dkt. 38; Order (Oct. 23, 2025), Dkt. 39 (order closing case)). Thus here, like in *New Georgia Project, Inc.,* "[t]he evidence here gives rise to no compelling inference that the state was strategically seeking to evade federal-court jurisdiction; rather, the state seems simply to have been pursuing its enforcement action in the normal course, from investigation to prosecution." 106 F.4th at 1246 (describing how *For Your Eyes Alone*'s concerns of *reverse removal* are not implicated simply by a state's ongoing course of enforcement).

**2.** The Attorney General maintains that the Quo Warranto Action was not instituted in bad faith. A finding of bad faith prosecution to support enjoining the prosecution requires that the

2

Attorney General have "no reasonable hope of obtaining a valid conviction." *See Netflix, Inc. v. Babin*, 88 F.4th 1080, 1085 (5th Cir. 2023). First, it is not "upping the ante" in bad faith for the Attorney General to "pursu[e] its enforcement actions in the normal course, from investigation to prosecution" as it did in this case, issuing first an investigation order (RTE) and then the Quo Warranto Action. *See id; see also New Ga. Project, Inc.*, 106 F.4th at 1246. Similarly, settling the RTE litigation to preserve the resources of the state and federal judiciary is not indicative of bad faith but indicates adherence to the state's "normal course, from investigation to prosecution." *New Ga. Project, Inc.*, 106 F.4th at 1246. Notably, the Attorney General could not have brought the Quo Warranto Action as a counterclaim or defense in the RTE claim. Tex. Civ. Prac. & Rem. Code § 66.002(a) (requiring the petition be filed in the district court of the proper county).

That the state has not marshalled all the evidence necessary to prevail on the merits of the Quo Warranto Action is not indicative of bad faith. There is no requirement that the state marshal sufficient evidence to succeed on the merits before initiating a lawsuit. *Id.* § 66.002(d) (requiring that the state establish only "a probable ground for the proceeding"). Indeed, the current case posture demonstrates an evidentiary paradox aimed to be avoided by abstention doctrine: (1) this Court's injunction prevents the state from obtaining good-faith-vindicating discovery supportive of the state's burden to show reasonable hope, and (2) the inability to receive such discovery impairs the state's capacity to overcome the court's finding of bad faith, thereby insulating the federal analysis from countervailing good-faith evidence. As such, this unnatural posture creates a catch-22 where vindicating discovery is necessary to resolve this Court's questions but impossible to obtain due to the interlocking nature of the two cases. Because neither the proceedings of substance on the merits nor bad faith exception apply, abstention remains proper.

## II.   Jolt has failed to state a claim for relief under § 11(b) of the Voting Rights Act.

Jolt failed to state a plausible claim for relief under § 11(b) of the VRA, and Jolt's arguments to the contrary are meritless for several reasons. *First*, and contrary to Jolt's arguments, the Attorney General *has* identified insufficiencies in Jolt's allegations supporting its § 11(b) claims. ECF 45 at 7 (claiming the Attorney General alleged no insufficiencies in Jolt's allegations); ECF 42

3

at 24 (alleging Jolt has not pled facts showing Jolt was actually intimidated by the Quo Warranto Action or facts showing a plausible claim of attempted intimidation). *Second*, Jolt's interpretation of the elements required to sustain a § 11(b) claim is incorrect. *See* ECF 45 at 8–11. When these are properly understood, Jolt has not adequately pled a § 11(b) claim.

    **1.** The Attorney General has identified several insufficiencies in Jolt's allegations supporting its § 11(b) claims. "Specifically, Jolt claims the Quo Warranto Action violates § 11(b) because it 'has the purpose and effect of intimidating, or attempting to intimidate, Jolt and its associates from engaging in these federally protected activities.'" ECF 42 at 23 (quoting ECF 39 at 27). In his Amended Motion to Dismiss, the Attorney General stated "Jolt has not shown a plausible claim of intimidation because the Amended Complaint does not contain facts showing the Quo Warranto Action reasonably intimidated a person from voting or helping others vote[,]" but instead "rests entirely on conjecture," and that Jolt "has not alleged facts showing a plausible claim of attempted intimidation." ECF 42 at 24. As such, Jolt's allegation that "Defendant identifies no insufficiency in Jolt's allegations supporting its § 11(b) claim" is false. ECF 45 at 7.

    **2.** Jolt's interpretation of the elements required to sustain a § 11(b) claim is incorrect in several ways. To begin, Jolt incorrectly claims that because the Attorney General took an action which "could have caused" a reasonable person to be intimidated, the action violates § 11(b). ECF 45 at 10. Under Jolt's theory of § 11(b), *any* action that could intimidate a reasonable person violates § 11(b) regardless of the reason it was taken or the effect it had. ECF 45 at 10 ("At most, any causation requirement should be limited to whether Defendant's conduct 'could have caused' a reasonable person to be intimidated."). Jolt's theory, when taken to its ultimate conclusion, would likely preclude any state action to enforce election law against bad actors. It ignores the text of § 11(b) which states "[n]o person . . . shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce . . . any person *for* urging or aiding any person to vote or attempt to vote." 52 U.S.C. § 10307(b) (emphasis added). But logically, "[s]ection 11(b) does not convert every governmental enforcement action related to election law into actionable intimidation." ECF 42 at 24. In response, Jolt states that "the quo warranto proceeding is *illegitimate* and conceived in bad

4

faith" and so it constitutes actionable intimidation. ECF 45 at 11. While the Attorney General acknowledges this Court's findings in the preliminary injunction hearing, Jolt's response illustrates, rather than refutes, the need for a showing of causal intent prior to establishing a § 11(b) violation predicated on official law enforcement actions.

Additionally, reasonable application of the statute requires the consideration of some sort of causal connection between the allegedly intimidating behavior and the alleged harm. Holding otherwise would amount to strict liability for every law enforcement action related to voting merely because law enforcement actions have the reasonable possibility of chilling activity, (ECF 44 at 18 (citing *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023))), and voting is a protected activity. The text of § 11(b) "does not impose strict liability for enforcement actions that coincide with public controversy or elicit reactions from third parties." ECF 42 at 26; *see* 52 U.S.C. § 10307(b).

As such, to plead a § 11(b) claim, Jolt must at least plausibly plead facts showing the Attorney General's action was taken or attempted *for* Jolt's *legal* voter registration activities and that action caused or could have caused a reasonable person to be chilled from engaging in those activities. *See* 52 U.S.C. § 10307; *Fair Fight Inc. v. True the Vote*, 710 F. Supp. 3d 1237, 1283 (N.D. Ga. 2024), No. 24-10372 (11th Cir. argued May 13, 2025). It has not sufficiently done so. At most, Jolt has provided conclusory allegations which this court need not take as true, *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)), accompanied by direct statements from the Attorney General asserting his lawful reason for pursuing the Quo Warranto Action. *E.g.,* ECF 39 at 8 (stating the Attorney General "opened an investigation into reports that organizations operating in Texas may be unlawfully registering noncitizens to vote in violation of state and federal law"); ECF 39 at 12. The Court should give weight to the direct factual allegations of the Attorney General's lawful reasons for initiating the Quo Warranto Action over Jolt's conclusory and circumstantial allegations to the contrary. *See Plotkin*, 407 F.3d at 696. For these reasons, Jolt has failed to state a plausible § 11(b) claim.

5

### III. Jolt has failed to state a claim for relief for its freedom of association claim.

Jolt relies quite heavily on the precedents in *NAACP* and *Americans for Prosperity* to claim that the Attorney General has violated its right to freedom of association. *See generally NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (*AFP*). But in doing so, it fundamentally mischaracterizes the nature of the Attorney General's discovery requests. Generally, Jolt objects to the State's requests for production and interrogatories aimed at identifying Jolt VDRs that operated in Tarrant County or otherwise conducted voter registration drives in Tarrant County. ECF 39-5 at 12–14. But each of these requests served an important purpose. Importantly, First Amendment jurisprudence requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Doe v. Reed*, 561 U.S. 186, 196 (2010) (citation modified). And "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 744 (2008)).

*First*, the Attorney General needs to show, for venue to be proper in Tarrant County, that Jolt engaged in voter registration activities in Tarrant County that may be violative of the Texas Election Code. *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). Discovery tending to show illicit acts or the potential for illicit acts in Tarrant County would be highly probative of the venue question before the state court.

*Second*, the State's discovery requests are aimed at uncovering illegal voter registration activity. But the only way to feasibly accomplish this feat is to examine Jolt's records relating to VDRs and voting registration. That the discovery requests seek the identities of VDRs and voter registration receipts is important. The State would need to cross-reference VDRs and voter registration receipts to determine if there is any sort of pattern tending to show illegal voter registration activity.

Here, the State sent Jolt requests pertaining to both the venue issue and the underlying merits of the action. Given that free and fair elections are the bedrock of our republic, election integrity is undoubtedly an important government interest that would imbue the State with the

power to seek information that would prove probative in a case about election integrity. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (noting that election integrity is an important state interest). Prohibiting the State from serving routine and mundane discovery would effectively obliterate the State's ability to investigate, prosecute, or sanction any group for election misconduct. In this case, Jolt holds all the cards. Jolt knows (or should know) what its VDRs are doing and how they conduct registrations. Yet it offers nothing but hollow platitudes in response, hoping that this Court will protect Jolt from itself.

*Last*, this case is not like *AFP*. In *AFP*, the State of California enacted a law that required disclosure, in part, of all donors who donated more than $5,000 in a taxable year to nonprofits in California. *AFP*, 594 U.S. at 602. This was a blanket requirement that applied to all nonprofit organizations, regardless of suspected criminal activity. *Id.* Here, however, the State is attempting to sanction *one* organization based on allegations that they have been attempting to register illegal aliens to vote in Texas elections. If Texas cannot examine the requested records, it cannot prove its case, creating a fundamental constitutional problem. Just as Jolt is free to defend itself, the State has a right to enforce its own laws, especially when they pertain to the integrity of its elections. The Court should not and cannot extend the *AFP* jurisprudence from a blanket disclosure requirement to discovery requests sufficient to expose illegal activity. And since there is an important governmental interest at play—namely the just enforcement of Texas law to uphold election integrity—the discovery requests at issue are not violative of Jolt's right to freedom of association. *See Doe*, 561 U.S. at 196–97.

### IV.  Qualified immunity bars Jolt's claims for damages.

Despite Jolt's pleas to the contrary, the Attorney General is entitled to qualified immunity from Jolt's first amendment retaliation claims.[2] Jolt, as the plaintiff, bears the burden to overcome qualified immunity, *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025), but to do so it must

---

[2] In its response, Jolt has clarified that it seeks money damages *only* for its claim for First Amendment retaliation. ECF 45 at 16. To that end, the Attorney General will only address qualified immunity in that context.

show that (1) the Attorney General "violated a statutory or constitutional right, and (2) that the right was 'clearly established.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). On both of these fronts, Jolt has come up short.

**1.** The Attorney General *has* made the point on several occasions that Jolt has not plausibly stated a valid First Amendment retaliation claim. *See* ECF 42 at 3, n.1 (incorporating by reference the arguments raised in the Attorney General's response to Jolt's motion for preliminary injunction); ECF 24 at 15–16; *contra* ECF 45 at 18 ("Defendant does not appear to contest, at the first prong of the qualified-immunity analysis, that Jolt has plausibly alleged First Amendment retaliation."). And the reason Jolt has not met the requirement to adequately plead the violation of a constitutional right is because it has chosen to disingenuously frame this matter to the Court.

A claim for First Amendment retaliation has three elements: "(1) [the plaintiff was] engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The third prong is the most important.

Jolt alleges that the Attorney General was motivated to file the Quo Warranto Action by Jolt's protected First Amendment activity—namely the act of engaging in lawful voter registration and the act of filing a lawsuit in response to the State's RTE. ECF 45 at 18. But this is not true. Jolt's first assertion—that the Attorney General filed the Quo Warranto Action because Jolt was registering voters in a legal fashion—is entirely specious. The Attorney General has maintained throughout the entire litigation, both in pleadings and in public statements, that the Quo Warranto Action was filed due to allegations of *illegal* voter registration activity on Jolt's behalf.[3] ECF 24 at 15. The Attorney General suspects Jolt of attempting to register illegal aliens to vote, or, at the very least, turning a blind eye to illegal immigrants who attempt to register at Jolt voter registration

---

[3] The Attorney General takes no issue with Jolt attempting to register individuals who are otherwise eligible to vote, and in fact encourages such activity.

drives. *E.g.*, ECF 27-2 at 4. And "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). That is the true, stated motivation behind the Quo Warranto Action. Any allegation to the contrary is conclusory and meritless, and Jolt cannot hide behind protected activity to immunize itself from accountability for other (related) illegal activity.

      Nor was the Quo Warranto Action motivated by Jolt's lawsuit challenging the RTE. Instead, as discussed above, the Quo Warranto Action was merely the next step of routine civil enforcement. That Texas filed the Quo Warranto Action shortly after the Parties settled their dispute over the RTE is a red herring; the Attorney General simply wanted to preserve the resources of both the State and the judiciary and believed that moving directly to the Quo Warranto Action was the most economic course of action. Put another way, the Quo Warranto Action was the only conceivable next step in the enforcement process, especially considering Jolt produced no evidence in response to the RTE that absolved it of illicit activity.

      Despite Jolt's framing, the Attorney General initiated the Quo Warranto Action based on allegations of illegal voter registration activity. Nothing more, and nothing less. The mere fact that Jolt has engaged in some protected conduct does automatically shield Jolt from liability. It must show that its *protected* activity, and not alleged *illegal* activity, was the but-for cause of the Quo Warranto Action. *See Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). Its allegations to that effect are merely conclusory and thus do not pass muster under federal pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Jolt has therefore failed to state a claim for First Amendment retaliation. It is doubly doomed, both under Federal Rule of Civil Procedure 12(b)(5) and under a qualified immunity analysis. *al-Kidd*, 563 U.S. at 735; *see also Iqbal*, 556 U.S. at 676–77 (2009).

      **2.** Jolt has likewise not demonstrated that its right in this case was clearly established. *Id*. In fact, it cannot do so. Begin with the simple fact that illegal activity is not and cannot be protected

9

speech. *Cf. Giboney*, 336 U.S. 490, 498 (rejecting the notion that free speech protections extend to criminal activity). Since the Attorney General seeks to sanction for alleged illegal activity, the Quo Warranto Action cannot conceivably infringe on Jolt's rights. Moreover, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 624 (1987)). And in no way could the Attorney General reasonably consider that civil sanction for violation of state criminal law is violative of any rights.

Jolt hangs its hat on *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023), to show that the Attorney General could have reasonably known his actions were violative of Jolt's constitutional rights. But this is wholly inapposite. In *Netflix*, after a year of prosecutorial inactivity, a state trial court ruled that a specific state criminal statute was unconstitutional. *Id.* at 1087, 1092. The prosecutor then filed four new—and wholly inapplicable—criminal charges in direct response to Netflix's protected activity. *Id.* at 1095. Not so here. The Attorney General has maintained throughout the pendency of both the RTE and the Quo Warranto Action that he is laser focused on one thing: protecting the integrity of Texas's elections from Jolt's alleged misconduct. He did not bring trumped-up claims unrelated to Jolt's alleged illegal activity. *See id.* Instead, he simply continued the investigation to litigation pipeline that is commonplace in state enforcement actions.

In short, Jolt's case is founded on baseless assumptions that the Attorney General was motivated to bring the Quo Warranto Action by legally protected activity. They offer nothing other than speculation and conclusory statements to support this, instead inferring bad faith where there is none to be found. And because Jolt fails both to adequately state a claim for violation of its First Amendment rights and show that the Attorney General's actions violated clearly established law, Qualified Immunity must bar Jolt's claims for money damages.

## Conclusion

For the foregoing reasons, the Attorney General respectfully requests that this Court dismiss all Jolt's claims.

Dated: February 9, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2100

Respectfully submitted,

/s/ Zachary L. Rhines
ZACHARY L. RHINES
Special Counsel
Texas State Bar No. 24116957
Zachary.Rhines@oag.texas.gov

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
Ali.Thorburn@oag.texas.gov

GREY W. JOHNSTON
Special Counsel
Texas State Bar No. 24149107
Grey.Johnston@oag.texas.gov

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 9, 2026, and that fall counsel of record were served by CM/ECF.

/s/ Zachary L. Rhines
ZACHARY L. RHINES
Special Counsel