IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOLT INITIATIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:25-CV-1808-RP |
| | § | |
| KEN PAXTON, *in his individual and official capacity as Attorney General of Texas*, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Ken Paxton's ("Defendant") Amended Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, filed on January 20, 2026. (Dkt. 42). Plaintiff Jolt Initiative, Inc. ("Plaintiff") filed a response, (Dkt. 45), to which Defendant replied, (Dkt. 46). Having considered the briefing before the Court, the record, and the relevant law, the Court will deny Defendant's Amended Motion to Dismiss, (Dkt. 42).

**I. BACKGROUND**

This case stems from a series of actions taken by Defendant, acting as the Attorney General of the State of Texas, to investigate the activities of Plaintiff, a non-profit organization that "engages in a wide range of expressive and associative acts encouraging Texans to vote," including voter-registration drives. (Am. Compl., Dkt. 39 at 3). On January 22, 2026, the Court held a hearing on Plaintiff's Motion for a Preliminary Injunction ("PI Motion"), (Dkt. 2). (Dkt. 43). On January 29, 2026, the Court issued an Order Granting Plaintiff's PI Motion. (Dkt. 44). The Court preliminarily enjoined Defendant, including his officers, officials, agents, employees, and any other persons or entities acting on his behalf, from proceeding with his quo warranto action, Cause No. 352-371410-25, in Texas state court. (*Id.* at 27). The Court incorporates by reference its description of the facts

and procedural history of this case in the Court's Order Granting Plaintiff's PI Motion. (Dkt. 44, at 1–8).

The Court will, however, briefly summarize Plaintiff's allegations supporting its First Amendment freedom of association claim, which Plaintiff added in its First Amended Complaint, (Am. Compl., Dkt. 39, at 27–30). Plaintiff alleges that Defendant's discovery requests in his quo warranto action—which are "purportedly for the purpose of ascertaining whether the Tarrant County District Court is the proper venue" for Defendant's quo warranto action—are, in reality, a "fishing expedition to retrospectively justify bringing the proceeding in Tarrant County." (*Id.* at 29–30). Plaintiff alleges that Defendant's discovery requests seek "far broader and more invasive disclosure of [Plaintiff's] associations with employees, volunteers, and voters" than Defendant's previous Request to Examine ("RTE") issued to Plaintiff, which was the subject of Plaintiff's first lawsuit against Defendant in front of this Court. (*Id.* at 15). "For example, the propounded discovery requests demand [Plaintiff] identify the locations, dates, and times of all voter-registration drives that it has organized and the names of the [Volunteer Deputy Registrars ('VDRs')] who participated in each of those drives." (*Id.* at 16). Plaintiff also alleges that Defendant's discovery requests require Plaintiff "to produce other sensitive information that bears on its associational activity, including its payroll information; rosters; emails and text messages directing the activities of individuals involved with voter registration; and tax returns." (*Id.* (quotations omitted)). Plaintiff contends that "[e]ven if the discovery requests were made for a sufficiently important interest, they are not substantially related or narrowly tailored to the putative purpose of ascertaining whether the Tarrant County District Court is the proper venue for Defendant's retaliatory quo warranto proceeding" and therefore Defendant's discovery requests violate Plaintiff's freedom of association rights under the First Amendment. (*Id.* at 30).

Alongside Plaintiff's First Amendment freedom of association claim, Plaintiff brings two additional claims against Defendant: retaliation under the First Amendment and intimidation under the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b). (Am. Compl., Dkt. 39, at 24–30). Defendant filed an Amended Motion to Dismiss each of Plaintiff's claims against it under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (Am. Mot. Dismiss, Dkt. 42). In addressing Plaintiff's First Amendment retaliation and VRA intimidation claims, Defendant raises many of the same arguments in his Amended Motion to Dismiss, (Dkt. 42), as in his Response to Plaintiff's PI Motion, (Dkt. 24); thus, the Court incorporates by reference much of its analysis from the Court's Order Granting Plaintiff's PI Motion, (Dkt. 44), as to those arguments. In the Court's Order Granting Plaintiff's PI Motion, the Court concluded that it could not decline to reach Plaintiff's PI Motion on the grounds of the *Younger* abstention doctrine, (Dkt. 44, at 9–16), and that Plaintiff was likely to succeed on the merits of its First Amendment retaliation and VRA intimidation claims, (*id.* at 16–25).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not

consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Abstention

Defendant argues that *Younger* abstention bars Plaintiff's claims for declaratory and injunctive relief. (Am. Mot. Dismiss, Dkt. 42, at 10–17). Defendant incorporates by reference his arguments concerning abstention in his Response to Plaintiff's PI Motion, (Dkt. 24, at 11-15), and restates many of those same arguments in his Amended Motion to Dismiss, (Dkt. 42, at 10–17). As alluded to previously, the Court incorporates by reference its prior analysis and concludes again that *Younger* abstention does not bar Plaintiff's claims against Defendant. (*See* Order Granting PI Mot., Dkt. 44, at 9–16).

### B. Sovereign Immunity

Defendant argues that sovereign immunity bars any claims for money damages Plaintiff brings against him in his official capacity. (Am. Mot. Dismiss, Dkt. 42, at 17). Plaintiff responds that it is only seeking damages from Defendant in his *individual* capacity, and that sovereign immunity "does not erect a barrier" to such claims under 42 U.S.C. § 1983 against an officer in his individual capacity. (Resp., Dkt. 45, at 16 (quoting *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991)). Plaintiff only brings claims against Defendant in his official capacity for declaratory and injunctive relief. (*Id.*). Therefore, the Court finds Defendant's assertion of sovereign immunity to be immaterial and concludes that sovereign immunity does not bar Plaintiff's claims for money damages against Defendant in his *individual* capacity. *See Davis v. Passman*, 544 F.2d 865, 877 (5th Cir. 1977), *on reh'g*,

571 F.2d 793 (5th Cir. 1978), *rev'd*, 442 U.S. 228 (1979) ("When, as here, an action seeks to impose liability upon a government official in an individual capacity, sovereign immunity poses no bar.").

### C. Qualified Immunity

**Next,** Defendant argues that qualified immunity precludes Plaintiff's individual capacity claims against him. (Am. Mot. Dismiss, Dkt. 42, at 17–23). However, "qualified immunity protect[s] only *individuals* from claims for *damages*; [it does] not bar official-capacity claims or claims for injunctive relief." *Escobarrivera v. Whitaker*, 2022 WL 17352178, at *5 (5th Cir. Dec. 1, 2022) (emphasis in original) (citing *Singleton v. Cannizzaro*, 956 F.3d 773, n.3 (5th Cir. 2020)). Plaintiff seeks declaratory and injunctive relief on all of its claims, but Plaintiff seeks damages for its First Amendment retaliation claim only. (Resp., Dkt. 45, at 16). Thus, the Court need not consider Defendant's qualified immunity arguments as to Plaintiff's claims for declaratory and injunctive relief. *See Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) (finding that "qualified personal immunity [does not] extend[] to suits for injunctive or declaratory relief under § 1983"). The Court will only analyze Defendant's arguments as to Plaintiff's First Amendment retaliation claim, for which Plaintiff seeks damages.[1]

#### 1. Plaintiff's First Amendment Retaliation Claim

The qualified immunity defense serves to shield "government officials performing discretionary functions [] from liability for civil damages insofar as their conduct does not violate

[1] Defendant raises only the defense of qualified immunity to argue for dismissal of both Plaintiff's First Amendment retaliation and freedom of association claims; he does not contest the sufficiency of those claims in his Amended Motion to Dismiss. (Am. Mot. Dismiss, Dkt. 42, at 17–20, 21–23). Given that "an argument cannot be raised for the first time in a reply brief, *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023), the Court will not consider Defendant's arguments for dismissal, raised only in his Reply, that Plaintiff failed to state a claim for relief for its freedom of association claim, (Reply, Dkt. 46, at 8–9). Defendant only moved to dismiss Plaintiff's freedom of association claim on the grounds of qualified immunity. (Am. Mot. Dismiss, Dkt. 42, at 21–23). And as explained in the preceding paragraph, Defendant's asserted defense of qualified immunity for Plaintiff's First Amendment freedom of association claim is inapplicable, because Plaintiff seeks only declaratory and injunctive relief for that claim. (Resp., Dkt. 45, at 16).

clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver,* 367 F.3d 337, 349 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To overcome qualified immunity at the motion to dismiss stage, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). Courts have the discretion to decide the order in which to consider these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While there need not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12. (quoting *al–Kidd*, 563 U.S. at 741). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341). However, in the Fifth Circuit, it is not a "condition precedent" to denying qualified immunity that "officers in this circuit have faced this precise factual situation before," because "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

As to the first prong of this standard, Defendant's Amended Motion to Dismiss did not directly contest that Plaintiff pleads that Defendant violated a statutory or constitutional right. *See al-Kidd*, 563 U.S. at 735 (internal quotation marks omitted). And, the Court has already found that

Plaintiff has plausibly alleged a First Amendment retaliation claim.[2] (Order Granting PI Mot., Dkt. 44, at 16–22). Next, concerning the second prong, Defendant argues that qualified immunity bars Plaintiff's retaliation claim because there is no existing precedent that clearly establishes beyond debate that a lawsuit filed by a state Attorney General to remedy a suspected violation of a state's election laws violates the First Amendment. (Am. Mot. Dismiss, Dkt. 42, at 19). Defendant contends it is "certainly not true that every reasonable official would have understood" his actions in this case to have violated the First Amendment. (*Id.*) (citations and quotation marks omitted).

Plaintiff responds by arguing that "at the time Defendant sought leave to file [his] quo warranto petition in 2025, it was clearly established that a state official could not use civil enforcement powers to retaliate against a nonprofit advocacy organization for its disfavored First Amendment Activity." (Resp., Dkt. 45, at 19). Plaintiff cites to the Supreme Court's recent decision in *National Rifle Association of America v. Vullo*, in which the court claims it "d[id] not break new ground" in holding that "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech." 602 U.S. 175, 197–98 (2024). Plaintiff also analogizes to various Fifth Circuit case law to support its position that "filing bad faith enforcement actions in retaliation for expressive activity [clearly] violates the First Amendment." (Resp., Dkt. 45, at 19–20). Finally, Plaintiff points out that the filing of its first federal lawsuit is "not the only protected activity at issue"—Plaintiff "also claims retaliation based on its expressive voter-registration activity, which Defendant does not contest involves core political speech." (*Id.* at 22).

The Court finds that Plaintiff adequately pleads that Defendant violated its First Amendment rights in a manner that was "clearly established at the time of the challenged conduct."

---

[2] Again, Defendant in his Reply presents arguments contesting whether Plaintiff plausibly pleads that Defendant's actions violated Plaintiff's constitutional right. (Reply, Dkt. 46, at 10–11). "[A]n argument cannot be raised for the first time in a reply brief," *Allen*, 65 F.4th at 746. Regardless, the Court has already found that Plaintiff plausibly states a claim upon which relief can be granted for retaliation under the First Amendment. (Order Granting PI Mot., Dkt. 44, at 16–22).

*See al-Kidd*, 563 U.S. at 735. In *Vullo*, the claims before the Supreme Court concerned whether the then-Superintendent of New York's Department of Financial Services ("DFS") Maria Vullo "violated the First Amendment by coercing DFS-regulated parties to punish or suppress the [National Rifle Association of America's ('NRA')] pro-Second Amendment viewpoint and core political speech." 602 U.S. at 185 (quotation marks omitted). The NRA's complaint alleged both censorship and retaliation First Amendment claims against Vullo. *Id.* The Supreme Court concluded that the NRA had stated a First Amendment violation—despite Vullo's invocation of the qualified immunity defense—because while "Vullo was free to criticize the NRA and pursue the conceded violations of New York insurance law" at issue in the case, Vullo could not "wield her power" to "threaten enforcement actions against DFS-regulated entities in order to punish or suppress the NRA's gun-promotion advocacy." *Id.* at 187.

The Court finds the analysis and conclusion of *Vullo* to directly control the case at bar, and that Plaintiff's allegations concerning Defendant's quo warranto action against Plaintiff make especially clear that Plaintiff has met its burden to overcome Defendant's qualified immunity defense. Here, the Court has already found that, based on the evidence in the record, Defendant has not been pursuing legitimate violations of Texas election law in his actions against Plaintiff, (Order Granting PI Mot., Dkt. 44, at 14), as opposed to in *Vullo*, where the Court recognized the NRA *had* violated the New York insurance law provisions at issue, 602 U.S. at 187. Rather, the only credible conclusion supported by the record in this case is that Defendant is seeking to suppress Plaintiff's core political speech, which he disfavors. And, unlike in *Vullo*, Defendant is not merely threatening enforcement action against third parties "in order to punish or suppress" Plaintiff's advocacy, *id.*; Defendant is seeking to revoke Plaintiff's corporate charter—and therefore ability to exist in the state of Texas—through a quo warranto action in state court. (Order Granting PI Mot., Dkt. 44, at 18, 26). Plaintiff faces a direct, tangible threat to its existence and, accordingly, to its voter-

registration activities protected by the First Amendment. Therefore, the Court finds that, in line with the Supreme Court's reasoning, Plaintiff adequately pleads that Defendant violated clearly established constitutional rights by allegedly wielding his power to take enforcement actions against Plaintiff for its constitutionally-protected voter-registration activities. *Vullo*, 602 U.S. at 187–88 ("A government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead. . . . What she cannot do, however, is use the power of the State to punish or suppress disfavored expression.").

The Court also finds that Fifth Circuit case law clearly establishes that Defendant should have been on notice that his alleged conduct would violate the First Amendment. For example, in *Izen v. Catalina*, plaintiff Joe Alfred Izen Jr., a tax attorney, alleged that Internal Revenue Service ("IRS") agent Terrance Catalina embarked on a money laundering investigation against him—after dropping a prior income tax investigation against him—due to Catalina's "desire to retaliate against [Izen] for his history of association with tax protestors, his representation of criminal tax defendants, and his representation of taxpayers utilizing foreign trusts to reduce their federal income tax." 382 F.3d 566, 569 (5th Cir. 2004), *on reh'g*, 398 F.3d 363 (5th Cir. 2005). Catalina eventually "testified before a grand jury in May 1995, and it returned a four-count indictment of Izen for conspiracy to commit money laundering and aiding or abetting or attempting money laundering," although "Izen allege[d] that the indictment was secured in part due to alleged misrepresentations made by Catalina to the grand jury." *Id.* at 570. The Fifth Circuit concluded that "[s]ubjecting an attorney to criminal investigation and prosecution with the substantial motivation of dissuading him from associating with and representing clients opposing the IRS would violate the First Amendment." *Id.* at 571. The circuit court confirmed that "[i]t has long been the law of this circuit that government officials violate the First Amendment by undertaking a prosecution 'in retaliation for or to deter the exercise

of constitutionally protected rights.'" *Id.* at 574 (quoting *Wilson v. Thompson*, 593 F.2d 1375, 1377 (5th Cir. 1979)).

Here too, the Court finds that Defendant is undertaking his quo warranto action—which the Court has found is sufficiently similar to a criminal proceeding as to chill a person of ordinary firmness from exercising their First Amendment rights, (Order Granting PI Mot., Dkt. 44, at 19)—in retaliation for or to deter the exercise of Plaintiff's constitutional rights, and therefore Plaintiff has sufficiently met its burden to demonstrate the inapplicability of Defendant's qualified immunity defense to its First Amendment retaliation claim. *See Hope*, 536 U.S. at 741 (finding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). *See also Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999) ("[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms.").

Before concluding its analysis of this topic, the Court will briefly address one of the cases which Defendant primarily relies on to argue that his qualified immunity defense bars Plaintiff's First Amendment retaliation claim, *Hale v. Townley*, 45 F.3d 914, 915 (1995). In *Hale*, decided in 1995, the circuit court found that it was not clearly established that the First Amendment prohibited "retaliation against an individual for having filed and won a lawsuit." 45 F.3d at 920. In so finding, the circuit court reaffirmed that "if state officials in some way retaliate against an individual for seeking redress through the courts, they have violated that person's right of access to the courts." *Id.* (quoting *Crowder v. Sinyard*, 884 F.2d 804, 813 n.9 (1990)). Here, Plaintiff did not win its prior federal lawsuit, so the *Hale* court's conclusion does not control the outcome of this case. Rather, as the Court found previously, Defendant has been engaging in an ongoing, intentional course of conduct against Plaintiff starting with his initial RTE, which was the basis of Plaintiff's original federal lawsuit. (Order Granting PI Mot., Dkt. 44, at 4–6). Again, Plaintiff did not win that lawsuit; rather,

the parties agreed to dismiss the case based on Defendant's assurance that he would not issue another RTE concerning the same subject matter. (*Id.* at 5). On the same day on which the Court closed that first lawsuit based on the parties' joint stipulation of dismissal, Defendant filed a motion for leave to file a quo warranto action in the Tarrant County District Court seeking to revoke Plaintiff's corporate charter. (*Id.* at 5–6). The Court finds these facts to resemble much more closely a state official "retaliat[ing] against an individual for seeking redress through the courts," which the Fifth Circuit has conclusively held would be in violation of that person's First Amendment right of access to the courts. *Hale*, 45 F.3d at 920 (quoting *Crowder*, 884 F.2d at 813 n.9). As such, the Court concludes that *Hale* only provides further support for the Court's finding that Defendant's qualified immunity defense will not bar Plaintiff's First Amendment retaliation claim.[3]

**D. Plaintiff's VRA Intimidation Claim**

Finally, Defendant contends that Plaintiff has failed to plausibly state an intimidation claim under Section 11(b) of the VRA. (Am. Mot. Dismiss, Dkt. 42, at 23–26). The Court previously found in its Order Granting Plaintiff's PI Motion that Plaintiff was likely to succeed on the merits of its Section 11(b) of the VRA claim. (Dkt. 44, at 22–25). The Court incorporates its prior analysis by

---

[3] Defendant also points to the six social media posts describing online criticism and threats to Plaintiff and argues that those posts "do not plausibly show that [Defendant] caused [Plaintiff's] alleged harms." (Am. Mot. Dismiss, Dkt. 42, at 20–21). Defendant argues that "[b]ecause [Plaintiff's] asserted harms flow from the independent speech of third parties rather than action attributable to [Defendant], Plaintiff fails to state a claim that overcomes qualified immunity." (*Id.* at 21). Plaintiff responds that it included allegations concerning those posts "to establish the chilling effect that disclosure of the information that Defendant seeks in his discovery requests would have on [Plaintiff], its VDRs, and voters with whom they associate." (Resp., Dkt. 45, at 15). The Court finds first that if Defendant intended for this argument to support dismissal of Plaintiff's First Amendment freedom of association or VRA intimidation claims, the Court has already found that Defendant's asserted defense of qualified immunity does not extend to those claims for declaratory and injunctive relief. *See Escobarrivera*, 2022 WL 17352178, at *5. If Defendant intended for this argument to support dismissal of Plaintiff's First Amendment retaliation claim, the retaliation Plaintiff alleges is Defendant's quo warranto action. (Am. Compl., Dkt. 39, at 26). While other individuals may have expressed opinions about or threatened Plaintiff, the Court is unconvinced that Plaintiff's allegations concerning those posts suggest that Defendant is not responsible for the quo warranto action undertaken by his own office. The Court therefore finds Defendant's argument to be immaterial.

reference and concludes again that Plaintiff has plausibly stated a claim upon which relief may be granted under Section 11(b) of the VRA. (*Id.*).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendant's Amended Motion to Dismiss, (Dkt. 42), is **DENIED**.

**SIGNED** on August 31, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE